David A. Foraker, OSB #812280
Greene & Markley, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434
E-mail: david.foraker@greenemarkley.com

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| | ) Case No. 11-62723 |
| Olsen Agricultural Enterprises LLC, | ) |
| an Oregon limited liability company, | ) Chapter 11 |
| | ) |
| Debtor. | ) DECLARATION OF JAMES E. OLSEN |
| | ) IN SUPPORT OF FIRST DAY MOTIONS |
| | ) |
| | ) |

I, James E. Olsen, declare as follows:

## I.

## __INTRODUCTION__

1.     I am competent to testify to the matters in this Declaration.  Except as otherwise indicated, the statements herein are based on my personal knowledge or on information learned from my review of the books and records of Olsen Agricultural Enterprises LLC (the "Debtor"). I am authorized to submit this Declaration on behalf of the Debtor and, if called upon to testify, I could and would testify competently to the facts set forth herein.

2.     I am the Marketing Director, a manager and a member of the Debtor.  Prior to the merger described in paragraph 7 below, I was the President and Chief Executive Officer, a director and a shareholder of Olsen Agricultural Company, Inc., an Oregon corporation

\G:\Clients\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1  ("OAC").  I am familiar with the day-to-day operations, business affairs, and books and records

2  of the Debtor.

3       3.  This Declaration will provide the court with background information about the

4  Debtor as well as a context for the relief being sought in the Debtor's "first day" motions (each a

5  "First Day Motion").  To that end, this Declaration is organized into three parts:  (a) an overview

6  of the Debtor and its business; (b) a summary of the events leading up to this Chapter 11 case;

7  and (b) an explanation of the grounds for the relief sought by the First Day Motions.

8  **II.**

9  **<u>COMPANY OVERVIEW</u>**

10       4.  OAC was incorporated in Oregon on January 1, 1988, under the name Pinnacle

11  Grass Seed Farm Company.  It changed its name to Jenks-Olsen Farms, Inc. on March 24, 1988,

12  and conducted operations under that name until February 7, 2006, when it changed its name to

13  Olsen Agricultural Company, Inc.  OAC was at all times prior to the merger described in

14  paragraph 7 below an S corporation for federal income tax purposes.

15       5.  The founders of OAC and the current beneficial owners of the Debtor's

16  ownership interests are descendants of Oregon Trail pioneers who settled in the Willamette

17  Valley.  The Jenks and Olsen families have owned and operated farms in the Willamette Valley

18  for five generations.

19       6.  The Debtor operates an agricultural enterprise on approximately 7,762 acres of

20  owned and leased land located in Benton, Linn and Polk Counties.  Its business

21  is comprised principally of three divisions:  (a) Olsen Seed Company, which produces and sells a

22  variety of grass seed and grains on approximately 5,934 acres; (b) Olsen Agriculture, which

23  grows and sells peppermint, nursery stock, squash, hazelnuts and blueberries on approximately

24  1,334 acres; and (c) Olsen Family Vineyards, which grows a variety of grapes on approximately

25  494 acres and produces and sells quality wines under the "Viridian" label as well as private

26  labels.  As of the date hereof, the Debtor has 45 employees, including management personnel.

\G:\Clients\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    The Debtor's headquarters are located in Monmouth, Oregon.

2         7.        The Debtor is the surviving entity of a merger transaction that was consummated

3    on June 1, 2011.  In the merger transaction, OAC, Jenks-Olsen Land Co., an Oregon general

4    partnership ("JOLC"), Olsen Vineyard Company, LLC, an Oregon limited liability company

5    ("OVC"), and The Olsen Farms Family Limited Partnership, an Oregon limited partnership

6    ("OFFLP") were merged with and into the Debtor.  OAC, JOLC, OVC and OFFLP were co-

7    borrowers under the term loan made by AXA Equitable Life Insurance Company ("AXA"), and

8    OAC, JOLC and OVC were co-borrowers under the line of credit loans made by Rabo

9    Agrifinance, Inc. ("Rabo").  In connection with the merger transaction, I and other related parties

10   that pledged real estate collateral to support the line of credit loans agreed to contribute such

11   property to the Debtor in exchange for the right to receive ownership interests in the Debtor.

12   The Debtor's ownership interests are owned by me, certain relatives, a family trust and Olsen

13   Land Holding, LLC.

14        8.        For the fiscal year ended December 31, 2010, OAC reported total revenues of

15   $6,428,880 and a net loss of ($5,791,310).  At the time of the merger, on a consolidated basis,

16   the books and records of OAC, JOLC and OVC reflected assets totaling approximately $29.8

17   million and liabilities totaling approximately $37.2 million.  The fair market value of the

18   Debtor's assets is significantly greater than their book values, particularly in the case of fixed

19   assets.  In my opinion, the fair market value of the Debtor's assets, on a going concern basis, is

20   approximately $50 million.

21                              **III.**

22              **EVENTS LEADING TO THE CHAPTER 11 FILING**

23        9.        Historically, OAC's core business was growing and selling grass seed and other

24   crops.  Beginning in 2004, OAC entered the winery business and planted its first vineyard.

25   Additional vineyards were planted in 2005, 2006 and 2007.  Together, OAC and OVC invested

26   more than $15 million in the winery business.

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

10.     In order to fund capital expenditures and provide needed working capital, OAC sought financing in 2007.  The financing was obtained from AXA, for which Rabo originated a $15 million term loan as AXA's investment advisor, and from Rabo, which initially extended a $10 million line of credit facility.  The AXA term loan and the Rabo line of credit loan are collectively referred to as the "Rabo Loans."

(a)     The AXA term loan is (i) evidenced by a promissory note dated September 7, 2007, executed by OAC, JOLC, OVC and OFFLP, (ii) secured by deeds of trust that encumber all or substantially all of the Debtor's real property, and (iii) supported by the personal guaranties of Carolyn A. Olsen, Roger P. Olsen, and James E. Olsen.  On March 18, 2011, the AXA term loan was purchased by and assigned to Rabo.  As of the date hereof, the amount payable under the AXA term loan is approximately $14,240,000.

(b)     The Rabo line of credit facility was made pursuant to a credit agreement dated February 19, 2008.  It is (i) evidenced by a line of credit note dated February 19, 2008, in the original principal amount of $10 million, which was amended and restated by a replacement note dated September 23, 2010, in the principal amount of $14,641,757.21, executed by OAC, OVC, JOLC, James E. Olsen, Roger P. Olsen and Robin G. Olsen, and (ii) secured by a security interest in substantially all of the Debtor's personal property pursuant to a security agreement dated as of February 19, 2008, and by deeds of trust that encumber all or substantially all of the Debtor's real property.  As of the date hereof, the amount payable under the Rabo line of credit loan is approximately $15,580,000.

11.     The grass seed industry has strong ties to the homebuilding industry.  The "Great Recession" of 2007 created a crisis of epic proportions in the homebuilding industry which, in turn, caused a significant and sustained decrease in demand for grass seed.  Those difficulties harmed grass seed growers by further increasing the supply of grass seed and negatively impacting pricing conditions.  The market prices of OAC's grass seed products dropped precipitously in 2008, 2009 and 2010 as compared to the market prices during the prior three

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  year period.  As a result, OAC's revenues declined significantly and it suffered operating losses

2  in 2008, 2009 and 2010.

3      12.    The confluence of these events profoundly affected OAC's performance during

4  the past three fiscal years.  OAC struggled financially since 2008 due to reduced sales and

5  inadequate working capital.  The Rabo line of credit facility fell into default just months after

6  that loan closed, and the parties entered into a series of forbearance agreements beginning on

7  November 28, 2008.  On April 25, 2011, Rabo gave OAC and the other co-borrowers and

8  guarantors formal notice of default under the Rabo Loans.

9                                    **IV.**

10                          **THE FIRST DAY MOTIONS**

11      13.    The Debtor commenced this Chapter 11 case in order to allow it to develop and

12  implement a comprehensive financial and operational restructuring strategy using the tool box

13  and protections of the Bankruptcy Code.  The prime objectives of these proceedings are to (i)

14  continue the Debtor's business operations uninterrupted during the restructuring process, (ii)

15  obtain secured credit under section 364 to fund working capital and operational needs, (iii) sell

16  non-essential assets, free and clear of liens, for the purpose of generating additional cash to help

17  fund its obligations (including the administrative expenses of the Chapter 11 case) going forward

18  and to provide adequate capitalization for the reorganized Debtor, (iv) restructure the payment

19  terms of the Debtor's debts pursuant to a plan of reorganization that will provide for payment in

20  full of its debts over time, and (v) preserve significant value for the Debtor's equity interest

21  holders.

22      14.    A smooth and seamless transition into Chapter 11 is essential for the Debtor.  It is

23  critically important for the Debtor to remain on favorable terms with its employees, lessors,

24  vendors, suppliers and distributors to insure that current operations continue uninterrupted.  It is

25  also crucial for the Debtor to maintain the loyalty and goodwill of its employees, customers and

26  others with whom it does business.  To achieve these objectives, the Debtor must be able to

*Page 5 of 9 -*    DECLARATION OF JAMES E. OLSEN IN SUPPORT OF FIRST DAY MOTIONS
                    \G:\Clients\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    continue farming operations and related activities in the ordinary course of business.

2        15.    The First Day Motions seek relief that will allow the Debtor to continue its

3    business operations without undue disruption or loss of productivity as a result of the Chapter 11

4    filing, thereby preserving and maximizing the value of the bankruptcy estate.

5        16.    I am generally familiar with the contents of each First Day Motion.  Based on that

6    familiarity and on my knowledge of the Debtor's business, I believe that the relief sought in each

7    First Day Motion (i) is necessary to enable the Debtor to operate in Chapter 11 with minimal

8    disruption or loss of productivity and value, (ii) constitutes a critical element to achieving a

9    successful reorganization of the Debtor, and (iii) best serves the interests of the estate.  The

10   failure to obtain the relief sought by the First Day Motions, taken as a whole, could immediately

11   and irreparably harm the Debtor's business and the value of the estate.

12   **A.    Debtor's Motion for Authorization to Use Cash Collateral on Interim and Final**

13        **Basis (the "Cash Collateral Motion")**

14       17.    The Debtor needs the immediate ability to use cash collateral for, among other

15   things, continuing the operation of its business in an orderly manner, making deposits with utility

16   service providers, paying payroll and other postpetition operating expenses, and satisfying other

17   working capital and operational needs -- all of which are vital to preserving and maintaining the

18   value of the Debtor's estate and, ultimately, effectuating a successful reorganization for the

19   benefit of all parties in interest.

20       18.    The Debtor is seeking immediate authority to use up to $450,000 of cash

21   collateral on an interim basis to insure that it is able to continue business as usual pending a final

22   hearing on the Cash Collateral Motion.  A cash collateral budget which details the projected

23   sources and uses of the Debtor's cash for the period May 30, 2011, through December 31, 2011,

24   is attached to the Cash Collateral Motion as Exhibit A.  I believe that the Debtor's use of cash

25   collateral on an interim basis is necessary to avoid immediate and irreparable harm to the estate.

26   Absent the court's approval of this request, the Debtor will have to curtail or terminate its

\G:\Clients\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    business operations to the detriment of all parties in interest.  Among other things, the

2    termination of business operations would result in the loss of a sizable investment made in the

3    Debtor's growing crops.

4          19.      The Debtor's use of cash collateral will not harm the interests of Rabo or of the

5    other creditors whose interests might be affected by such use if such creditors are provided the

6    adequate protection offered by the Debtor in the Cash Collateral Motion.

7  **B.      Motion for Authorization to (1) Pay Prepetition Priority Claims for Wages and**

8          **Salaries and Related Payroll Taxes, (2) Pay Prepetition Priority Employee Benefit**

9          **Plan Contributions, and (3) Continue Employee Benefits Postpetition (the "Wages**

10         **Motion")**

11         20.      The Debtor's employees perform a wide variety of critical functions and provide

12   essential services without which the Debtor would be unable to function.  The employees' skills

13   and their knowledge and understanding of the Debtor's operations, customer relations, and

14   infrastructure are vital to the Debtor's efforts to reorganize.

15         21.      Just as the Debtor depends on its employees to operate its business, the employees

16   depend on the Debtor.  I understand that the vast majority of employees rely exclusively on their

17   wages or salaries to pay their daily living expenses.   The employees will be exposed to extreme

18   personal hardship if the Debtor does  not obtain the authority

19   to pay promptly the full amount of their accrued wages and salaries and to continue existing

20   employee benefits.  The likely consequence of an interruption in pay to employees would be

21   employee defections, unmanageable turnover, resentment, loss of goodwill and disintegration of

22   employee morale.  For these reasons, I believe that the granting of the relief sought by the Wages

23   Motion is necessary to avoid immediate and irreparable harm to the estate.

24         22.      In the ordinary course of its business, the Debtor pays its employees bi-weekly, in

25   arrears, on every other Friday.  The next regular payroll date is June 3, 2011, for services

26   performed but unpaid through June 2, 2011.  The last regularly scheduled payroll date was May

**Page 7 of 9 -**     DECLARATION OF JAMES E. OLSEN IN SUPPORT OF FIRST DAY MOTIONS
                    \G:\Clients\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1

2    20, 2011.  On May 27, 2011, in anticipation of the commencement of this case, the Debtor made

3    a special payroll for the estimated amounts of salaries and wages that had accrued during the

4    period May 21, 2011 through May 31, 2011.  In connection with that special payroll, the Debtor

5    also paid all withholding and payroll taxes related to the salaries and wages that were paid.  As a

6    result of that special payroll, the only amounts that remain owing and unpaid to employees for

7    prepetition services -- absent error in the estimation procedure and assuming that all payroll

8    checks and electronic funds transfers have cleared or been completed -- are those for accrued

9    vacation, sick leave and other "paid time off."  Attached to the Wages Motion as Exhibit A is a

10   schedule that lists, for each employee, the employee's name, the total amount of earned but

11   unused paid time off benefits, and the amount that the Debtor has determined is entitled to

12   priority under section 507(a)(4) of the Bankruptcy Code.

13        23.    The Debtor has no employee benefit plan or program under which it is obligated

14   to pay contributions for benefits other than its workers' compensation insurance policies.  The

15   Debtor estimates that the total amount of accrued but unpaid prepetition obligations under its

16   workers' compensation insurance policies does not exceed $5,000.  Those insurance obligations

17   will not become payable in the ordinary course of business until a later date.

18   **C.    Motion for Determination that Adequate Assurance of Payment has been Furnished**

19           **to Utility Companies (the "Utilities Motion")**

20        24.    In connection with the operation of its business, the Debtor obtains electricity,

21   gas, water, sewer services, waste management services, telephone services, internet services, and

22   similar services from numerous utility companies.  Attached to the Utilities Motion as Exhibit A

23   is a schedule that lists, for each utility provider, the name of the utility, the service it provides,

24   the total amounts billed by that provider to the Debtor during the last service period immediately

25   preceding the bankruptcy filing, and the amount of the Debtor's proposed cash deposit.

26        25.    It is essential that utility services continue to be provided to the Debtor

Page 8 of 9 -      DECLARATION OF JAMES E. OLSEN  IN SUPPORT OF FIRST DAY  MOTIONS

\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1

2  uninterrupted.  If utilities companies are permitted to terminate utility services, even for a brief

3  period of time, substantial harm to the Debtor's business could occur.  To avert that harm, the

4  Debtor could be forced to provide whatever assurance of payment that might be demanded by its

5  utility service providers.  For these reasons, I believe the granting of the relief sought by the

6  Utilities Motion is necessary to avoid immediate and irreparable harm to the estate.

7         I declare under penalty of perjury that the foregoing is true and correct to the best of my

8  knowledge.

9         Dated:  June 1, 2011.

10                                    _____/s/ James E. Olsen_____.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

\7095\P Dec in Support of 1st Day Motion - JE Olsen.wpd      GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that the foregoing DECLARATION OF JAMES E. OLSEN IN

3

SUPPORT OF FIRST DAY MOTIONS, was served by electronic notice through the bankruptcy court's ECF system on the U.S. Trustee (Eugene):

4

USTPRegion18.eg.ecf@usdoj.gov

5

6

and on all parties listed on the attached List of Interested Parties by the methods indicated.

7

Unless another method of service is indicated, service was made by placing a copy thereof in a sealed, first-class, postage prepaid envelope, addressed to each party's last known address and depositing the same into the United States mail at Portland, Oregon on the date set forth below.

8

9

      Dated:  June 1, 2011.

10

11

                        /s/ David A Foraker

                        David A. Foraker, OSB #812280

                        Attorney for Debtor

12

\7095\P COS James Olsen Declaration re 1st day Motions.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 1 of 1** - CERTIFICATE OF SERVICE

<u>List of Interested Parties</u>

(Olsen Agricultural Enterprises LLC)

<u>Secured Creditors (Special List):</u>

Rabo Agrifinance, Inc.                                          (Via First Class Mail)
c/o CT Corporation System
Registered Agent
388 State St., Ste. 420
Salem, OR 97301-3581

Tom Schofield                    (Via First Class Mail and E-mail: tom.schofield@raboag.com)
Special Asset Manager
Rabo Agrifinance, Inc.
POB 668
6919 Chancellor Dr.
Cedar Falls, IA 50613

Dean Gisvold, Esq.              (Via First Class Mail and E-mail: deang@mcewengisvold.com)
Barry Groce, Esq.               (Via First Class Mail and E-mail: barryg@mcewengisvold.com)
McEwen Gisvold LLP
1100 SW 6th Ave., Ste. 1600
Portland, OR 97204
        Attorneys for Rabo Agrifinance, Inc.

BFS International, LLC                                          (Via First Class Mail)
c/o David E. Grein, Esq.
Registered Agent
1030 SW Morrison St.
Portland, OR 97205

Tim Miller                      (Via First Class Mail and E-mail: tim@beaverfreight.com)
BFS International, LLC
3835 NE Hancock St. Ste. 203
Portland, OR 97212

David E. Grein, Esq.              (Via First Class Mail and E-mail: dgrein@pfglaw.com)
Parsons Farnell & Grein
1030 SW Morrison St.
Portland, OR 97205
        Attorneys for BFS International, LLC

Internal Revenue Service                                          (Via First Class Mail)
PO Box 7346
Philadelphia, PA 19101-7346

The Attorney General of the United States                        (Via First Class Mail)
Department of Justice
10th & Constitution NW
Washington, DC 20530

US Attorney for the District of Oregon                           (Via First Class Mail)
1000 SW 3rd Ave., #600
Portland, OR 97204

Susan Anderson, Specialist              (Via First Class Mail and Facsimile (541) 302-0971)
Internal Revenue Service
211 E. 7th Ave., Ste. 301
Eugene, OR 97401

Ledeboer Seed, LLC                                               (Via First Class Mail)
c/o Hannelore Ledeboer
Registered Agent
22068 Case Rd NE
Aurora, OR 97002-9727

Hagen Ledeboer              (Via First Class Mail and E-mail: hagen.ledeboer@ledeboerseed.com)
Ledeboer Seed, LLC
22068 Case Rd NE
Aurora, OR 97002-9727

Hunter B. Emerick, Esq.              (Via First Class Mail and E-mail: hemerick@sglaw.com)
Saalfeld Griggs PC
PO Box 470
Salem, OR 97308
        Attorneys for Ledeboer Seed, LLC

Callisons, Inc. (dba I.P. Callisons and Sons)                    (Via First Class Mail)
c/o CT Corporation System
Registered Agent
388 State St., Ste. 420
Salem, OR 97301-3581

Richard Robinson                                          (Via First Class Mail)
I.P. Callisons and Sons
2400 Callison Rd NE
Lacey, WA 98516

Charles C. Robinson, Esq.          (Via First Class Mail and E-mail: crobinson@gsblaw.com)
Garvey Schubert Barer
1191 Second Ave., 18th Floor
Seattle, WA 98101-2939
        Attorneys for I.P. Callisons and Sons

20 Largest Unsecured Creditors (Via First Class Mail):

Kim Bible
Oregon Vineyard Supply Co.
2700 St. Joseph Rd.
McMinnville, OR 97128

Susan Anderson
Internal Revenue Service
211 E 7th Ave., Ste. 301
Eugene, OR 97204

Howard Pope
ORCO, Inc.
12680 SW Pacific Hwy
Monmouth, OR 97361

David Stork
Jeld-Wen Tradition Foundation
3250 Lakeport Blvd
Klamath Falls, OR 97601

Julie Springer
Davis Wright Tremaine
1300 SW 5th Ave., Ste. 2300
Portland, OR 97201

Justin Fisher
Peter Jacobsen's Legends of Oregon
2727 Leo Harris Pkwy
Eugene, OR 97401

**Page 3 of 5**    List of Interested Parties (Master Service List)

Linda Collins
HSR Architecture LLC
838 NW Bond St., Ste. 2
Bend, OR 97701

Eric Rogers
Eola Hills Wine Cellars
501 S Pacific Hwy
Rickreall, OR 97371

Dennis Combs
Dennis Combs AG Consultants, Inc.
POB 1051
Lake Oswego, OR 97034

Travis Hill
Silver Dome Farms
7091 Springhill Dr.
Albany, OR 97321

John Coleman
255 SW Madison Ave.
Corvallis, OR 97333

Dean Underwood
Underwood Farms
8756 Springhill Dr.
Albany, OR 97321

Employment Department
c/o Carolyn G. Wade, Esq.
Department of Justice
1162 Court St. NE
Salem, OR  97301

Jeffrey O'Banion
NW Natural Gas
222 NW 2nd
Portland, OR 97208

ODR Bkcy
c/o Carolyn G. Wade, Esq.
Department of Justice

**Page 4 of 5**    List of Interested Parties (Master Service List)

1162 Court St. NE
Salem, OR 97301

Collotype Labels
c/o Greg Pfister, Esq
720 SW Washington St., Ste. 750
Portland, OR 97205

Jane Anderson
Credit Collections Services Inc
POB 755
Yankton, SD 57078

Tony Blair
Brenner & Company
POB 907
Salem, OR 97308

Ben C. Fetherston, Jr.
Fetherston Edmonds LLP
POB 2206
Salem, OR 97308

Tom Bracken
Sunridge Nurseries, Inc.
441 Vineland Rd
Bakersfield, CA 93307

Other Parties:

Cliff E. Spencer, Esq.            (Via First Class Mail and E-mail: spencerc@lanepowell.com)
Lane Powell P.C.
501 SW 2nd Ave., Ste. 2100
Portland, OR 97204
        Attorneys for Oregon Vineyard Supply Co.

\7095\O List of Interested Parties (Master Service List).wpd

**Page 5 of 5**    List of Interested Parties (Master Service List)