**James Ray Streinz,** OSB No. 794107
    Direct Dial: (503) 412-3512
    E-mail:    rays@mcewengisvold.com
**Barry L Groce,** OSB No. 802477
    Direct Dial: (503) 412-3501
    E-mail:    barryg@mcewengisvold.com
**McEWEN GISVOLD LLP**
1600 Standard Plaza
1100 SW Sixth Avenue
Portland, Oregon 97204

Of Attorneys for Rabo Agrifinance, Inc.

<br>

### UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Olsen Agricultural Enterprises LLC,<br>an Oregon limited liability company,<br><br>                    Debtor. | Bankruptcy Case No. 11-62723<br><br>**MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL** |

Rabo Agrifinance, Inc. ("Rabo") files this Memorandum in Opposition to

Debtor's Motion for Preliminary Motion to Use Cash Collateral. Rabo is a creditor

holding secured claims against the debtor in excess of $30,000,000, and it is Rabo's cash

collateral that the Debtor is attempting to use. While Rabo does not oppose the use of

cash collateral to temporarily pay the operating expenses associated with operation of the

Debtor's business operations (the "Business"), Rabo is opposed to the proposed use of

Page 1 of 8 - **MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

funds in excess of the true operating expenses as set forth in the "Interim Budget" set forth as Exhibit A to Debtor's Motion (the "Budget"), and is opposed to the Court granting Debtor final authority to use cash collateral unless true adequate protection is provided.

## BACKGROUND

1.      As set forth by Debtor, Rabo holds two substantial secured claims against the Debtor, secured by essentially all of Debtor's assets, including the accounts, profits, rents crops and proceeds generated by the Business. These revenues from the Business are the cash collateral at issue herein.

2.      On or about September 7, 2007, AXA Equitable Life Insurance Company ("AXA") entered into an Adjustable Interest Rate Promissory Note (the "AXA Note") with the Debtor's predecessors, among others, (collectively  the "AXA Borrowers") whereby AXA agreed to loan the AXA Borrowers the principal sum of $15,000,000 ("AXA Loan") upon the terms and conditions set forth in the AXA Note.

3.      To secure repayment of the AXA Note, the AXA Borrowers, for valuable consideration, on or about September 7, 2007, made, executed, and delivered for the benefit of AXA Oregon Deeds of Trust, Security Agreement, Fixture Filing and Financing Statement ("AXA Trust Deeds") covering certain real property in Benton, Linn, and Polk Counties, Oregon (the "AXA Real Property"), all building materials, fixtures, fittings, and personal property used or useful in the operation of

**Page 2 of 8 - MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

the Real Property, and all rents, accounts, farm products, crops and proceeds derived from the Real Property ("AXA Personal Property").

4.      On or about March 2, 2011, Rabo purchased the AXA Note from AXA and took assignment of AXA's interest in the AXA Trust Deeds, pursuant to a Mortgage Loan Purchase and Sale Agreement.

5.      The AXA Borrowers, including Debtor, are in default of the AXA Loan Agreement and the AXA Note by failing to make the January 1, 2011, payment required by the AXA Note.  The AXA Borrowers failed to pay the cure the AXA default and the balance due on the loan was accelerated on May 10, 2011.  As of that date there was due and owing principal, default interest, attorneys' fees, prepayment penalties, costs and expenses in the amount of $14,883,600.65 (the "AXA Debt").  Default interest accrues on the AXA Debt at the rate of $4,754.48 per diem from and after May 10, 2011.

6.      On or about February 19, 2008, Rabo entered into a credit agreement (the "Credit Agreement") with the Debtor's predecessors, among others (collectively the "RABO Borrowers") whereby Rabo agreed to loan the Rabo Borrowers the principal sum of $10,000,000 upon the terms and conditions set forth in the Credit Agreement.  As part of the Credit Agreement, the Rabo Borrowers executed a Line of Credit Note dated February 19, 2008, and a Security Agreement dated February 19, 2008 (collectively the "Original Rabo Note").  The Credit Agreement was modified by a forbearance Agreement dated November 28, 2008 (the "2008 Forbearance

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

Agreement"), and an agreement dated July 23, 2009 (the "July 2009 Agreement").
The Credit Agreement, as amended, is referred to herein as the "Original Rabo Loan."

7.    To secure repayment of the Original Rabo Loan, on or about January
27, 2009, for valuable consideration, the Debtor's predecessors, for the benefit of
Rabo, made, executed, and delivered an Oregon Line of Credit Deed of Trust,
Security Agreement, Fixture Filing and Financing Statement (the "First Rabo Trust
Deed") covering the real property in Polk County, Oregon, all building materials,
fixtures, fittings, and personal property used or useful in the operation of the such real
property, and all rents, accounts, farm products, crops and proceeds derived from the
real property.

8.    The Rabo Borrowers promptly defaulted under the terms of the
Original Rabo Loan.  On or about October 22, 2009, Rabo and the Rabo Borrowers
entered into another agreement (the "Restated Rabo Loan Agreement") whereby Rabo
agreed to forebear from exercising its remedies against the Rabo Borrowers for
defaults under the Original Rabo Loan and agreed to loan the Rabo Borrowers up to
the principal sum of $14,641,757.21 (the "Restated Rabo Loan") upon the terms and
conditions set forth in the Restated Agreement.  The Restated Rabo Loan Agreement
was subsequently amended three times.

9.    As additional security for the  Restated Rabo Loan, on or about
October 22, 2009, the Debtor's predecessors, for the benefit of Rabo, made, executed,
and delivered Oregon Line of Credit Deeds of Trust, Security Agreement, Fixture
Filing and Financing Statement ("Second Rabo Trust Deeds") covering the AXA Real

**MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

Property in Benton, Linn, and Polk Counties, Oregon and the AXA Personal Property.  The First Rabo Trust Deed also secures repayment of the Restated Rabo Note.

10.    The Rabo Borrowers, including Debtor, defaulted on the Restated Rabo Loan Agreement:

(a)    By failing to make the weekly remittances of cash receipts as required by the Restated Rabo Loan Agreement, beginning with the payment due October 25, 2010, and continuing weekly thereafter, except for a payment of $10,000 received February 28, 2011.  The aggregate amount of unpaid and past due weekly remittances, as of the week of April 25, 2011, was $ 757,207.48; and

(b)    By failing to make monthly payments due under the Agreement in the months of August 2010 through December 2010, in the aggregate amount of $1,249,279.77.

11.    On April 25, 2011, Rabo made demand on the Rabo Borrowers to pay the delinquent amount on or before May 10, 2011. The Rabo Borrowers failed to pay and the Restated Rabo Loan was accelerated..  As of May 10, 2011, there was due and owing principal, default interest, attorneys' fees and costs expenses in the amount of $15,595.339.20 (the "Rabo Debt"). The Rabo Debt accrues default interest at a rate of $5,631.65 per diem from May 10, 2011.

12.    The Debtor has a long and predictable history of not performing on its obligations to Rabo.  Although Debtor claims the going concern value of its assets is $50 million, Debtor admits that the book value of its assets is $29.8 million, which is

Page 5 of 8 - **MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

less than the combined total of the AXA Debt and the Rabo Debt which exceeds $30 million and which accrues interest at a rate of more than $10,000.00 per day.  Rabo believes the fair market value of Debtor's assets to be less than $29 million and the liquidation value of its assets to be less than $25 million.

## DISCUSSION

13.    Debtor has admitted that the revenues from the Business are "cash collateral", so the only issue is whether the Debtor has satisfied the test to allow it to use cash collateral when the entity with an interest in the cash collateral does not consent. Debtor admits that the Rabo Debt is secured by the cash collateral.  Debtor overlooks that the AXA Debt, by virtue of the AXA Trust Deeds, is also secured by the cash collateral. Thus, Rabo has $30 million in debt secured partially by the cash collateral.  Because the assets of Debtor are insufficient to secure the combined AXA Debt and Rabo Debt, Rabo has a vested interest in preserving the cash collateral as part of its security.  As such, Rabo does not consent to the use of cash collateral that the Debtor proposes in its Budget except for the temporary use of cash collateral necessary for true operation of the Business.   Specifically, Rabo objects to Debtor's intent to use cash collateral to pay professional fees and for the DIP loan when neither the hiring of professionals or the making of the DIP loan has been approved by the court.

14.    In order to use cash collateral over the objection of the secured party, the debtor must provide adequate protection for the use of the cash.  In this case, Debtor has offered two forms of adequate protection – a "replacement lien" on the same kinds or categories of personal property that the creditor had prepetition and a "superpriority"

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

administrative expense claim subject to major exceptions, including the unknown liens granted to a DIP lender identified only in press releases- neither of which is any protection at all.

15.    The "replacement lien" is no lien at all.  Rabo's current security interests already includes all post-petition property pursuant to 11 USC §552(b)(1) since its security agreement specifically includes all property of the estate and to proceeds, products and profits of such property.  Giving Rabo what it already has is not adequate protection.  The Sixth Circuit Bankruptcy Appellate Panel recently answered "no" to the question of "whether a lender is adequately protected by a replacement lien on rents in which the lender has an independent security interest".  *Buttermilk Towne Center, LLC*, 442 B.R. 558, 565-67 (6th Cir. B.A.P. 2010).  *See also, In re Griswold Bldg., LLC*, 420 B.R. 666, 699-700 (Bankr. E.D. Mich. 2009)( Emphasized that where the lender is undersecured, the debtor's use of rents decreases the value of the collateral and that decrease must be protected by funds or security from another source.)

16.    The superpriority administrative expense claim is no more comforting as adequate protection.  As Debtor has noted, Rabo "has a blanket security interest in essentially all of the Debtor's assets."  By (properly) excepting claims of the estate under Chapter 5 of the Bankruptcy Code, there are no assets to pay the administrative expense claim.  Thus, the Debtor is providing no adequate protection to Rabo.

17.    Given that the Debtor lost a staggering $5.8 million in 2010, and its consistent failure to make good on its loan obligations to AXA and Rabo, spending $1.3 million of cash collateral on professional fees in the next 6 months seems little more than

Page 7 of 8 - **MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

a fool's errand.  The Court should authorize just enough use of cash collateral to keep the

Business in operation until there can be a fair assessment of whether there is an

opportunity to reorganize the Debtor or whether this case is more properly a liquidation.

18.    Based on the Budget submitted by Debtor, Rabo believes that $200,000 is

sufficient cash collateral to finance Debtor's business operations until the Court can

carefully consider the DIP financing and employment of professionals sought by Debtor.

## CONCLUSION

The funds that Debtor wishes to use are admittedly cash collateral of Rabo.

Since Debtor cannot show that Rabo is adequately protected if the Debtor is allowed to

use the funds, the funds may only be used with the consent of Rabo as set forth above.

Dated: June 2, 2011

**Respectfully submitted,**

**McEwen Gisvold LLP**

By  */s/ James Ray Streinz*_____
        James Ray Streinz, OSB No. 794107
        Telephone:  (503) 412-3512
        E-mail: rays@mcewengisvold.com
    Attorneys for Creditor Rabo Agrifinance, Inc.

Page 8 of 8 - **MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
AUTHORITY TO USE CASH COLLATERAL**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687