UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No. _____
)
) NOTICE OF ***PRELIMINARY***
) HEARING ON MOTION
)     FOR USE OF CASH COLLATERAL
)     TO OBTAIN CREDIT
Debtor(s) ) *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

    a.  The immediate and irreparable harm that will come to the estate pending a final hearing is _____.

    b.  The amount of     cash collateral     credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.    A ***PRELIMINARY*** HEARING on the motion WILL BE HELD ON _____ AT _____ IN _____.
Testimony will be received if offered and admissible.

4.    If you WISH TO OBJECT to the motion, YOU MUST DO ONE OR BOTH OF THE FOLLOWING: (1) ATTEND the preliminary hearing; AND/OR (2) FILE with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (a) a written response, which states the facts upon which you will rely, AND (b) a certificate showing a COPY of the response was given DIRECTLY TO the Judge, and served on the U.S. Trustee and the party named in pt. 2 above. See Local Form #541.51 for details.

5.    On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:

_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (2/13/09)    **LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER**

1   David A. Foraker, OSB #812280
    Greene & Markley, P.C.
2   1515 SW Fifth Avenue, Suite 600
    Portland, OR 97201
3   Telephone: (503) 295-2668
    Facsimile:   (503) 224-8434
4   E-mail: david.foraker@greenemarkley.com

5       Attorneys for Debtor

6

7

8
                    UNITED STATES BANKRUPTCY COURT
9
                          DISTRICT OF OREGON
10
    In re                                )
11                                       )   Case No. 11-62723-fra11
    Olsen Agricultural Enterprises LLC,   )
12   an Oregon limited liability company, )   Chapter 11
                                         )
13              Debtor.                   )   DEBTOR'S MOTION FOR
                                         )   AUTHORIZATION TO OBTAIN
14                                       )   SECURED CREDIT ON INTERIM AND
                                         )   FINAL BASIS
15                                       )
                                         )   EXPEDITED HEARING REQUESTED
16                                       )

17          Olsen Agricultural Enterprises LLC (the "Debtor"), as debtor in possessioin, hereby

18   moves this Court for entry of interim and final orders authorizing it to obtain secured credit for

19   the purposes and on the terms set forth herein.

20              Concise Statement Pursuant to Bankruptcy Rule 4001(c)(1)(B)

21          The Debtor seeks authorization to borrow $3,000,000 from Bacchus Capital, L.P. (the

22   "DIP Lender") subject to and in accordance with the terms and conditions set forth in the debtor

23   in possession credit agreement (the "DIP Loan Agreement" and, together with the other

24   documents entered into in connection therewith, the "DIP Loan Documents") to be entered into

25   by the Debtor and the DIP Lender pursuant to the term sheet attached hereto as Exhibit A (the

26   "Term Sheet"). By this motion, the Debtor seeks entry of (i) an interim order in the form

Page 1 of 18 -   DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                 AND FINAL BASIS
                                                        \G:\Clients\7095\P Motion Auth Interim Credit.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1    attached hereto as <u>Exhibit B</u> (the "Interim Order") (A) authorizing it to borrow on an interim

2    basis the amount of $500,000, which is the estimated amount necessary to avoid immediate and

3    irreparable harm to the estate for the period June 13, 2011, to July 10, 2011, and (B) scheduling a

4    final hearing on this motion, and (ii) a final order (the "Final Order") authorizing it to borrow on

5    a final basis the aggregate principal amount of $3,000,000 in accordance with the terms and

6    conditions set forth in the DIP Loan Documents.  In connection with the postpetition financing to

7    be made available to the Debtor under the DIP Loan Agreement (the "DIP Facility"), the Debtor

8    requests authority to do the following:

9        (1)    Subject to the terms and limitations set forth in the DIP Loan Agreement, Interim

10   Order and Final Order, to grant to the DIP Lender superpriority administrative expense status

11   pursuant to section 364(c)(1) of the Bankruptcy Code with respect to any and all obligations of

12   the Debtor under the DIP Loan Agreement, the Interim Order, and the Final Order (collectively,

13   the "DIP Loan Obligations"), with priority over any and all other costs and expenses of the

14   Debtor's estate of the kinds specified in or ordered pursuant to sections 503(b), 507(b), or any

15   other provision of the Bankruptcy Code, subject to the Carve-Out (as described in the Interim

16   Order);

17       (2)    Subject to the terms and limitations set forth in the DIP Loan Agreement, Interim

18   Order and Final Order, to grant to the DIP Lender (a) pursuant to section 364(d)(1) of the

19   Bankruptcy Code, perfected, first-priority, senior liens on all property of the estate (tangible and

20   intangible, real, personal or mixed), whenever acquired or arising, other than claims and causes

21   of action of the estate arising under Chapter 5 of the Bankruptcy Code (collectively, the

22   "Collateral"), with such liens to prime and be senior in priority to all existing security interests in

23   and liens on property of the estate other than (A) statutory liens that secure claims of

24   governmental units for ad valorem property taxes or similar impositions, and (B) validly

25   perfected purchase money security interests in equipment extant as of the Petition Date (as

26   defined below) (each a "Non-Primed Lien" and collectively the "Non-Primed Liens"), (b)

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1 pursuant to section 364(c)(2) of the Bankruptcy Code, perfected, first-priority liens on

2 unencumbered property of the Debtor, if any, and (c) pursuant to section 364(c)(3) of the

3 Bankruptcy Code, perfected, junior liens on that portion of the Collateral subject to Non-Primed

4 Liens;

5     (3)    To grant adequate protection to those creditors whose interests will be affected by

6 the proposed DIP Loan (as identified in paragraph 5 of the motion below and collectively

7 referred to herein as the "Existing Secured Creditors" and the liens of the Existing Secured

8 Creditors referred to as the "Existing Liens"), consisting of (a) administrative expense claims

9 under section 503(b) of the Bankruptcy Code that will have superpriority as provided in section

10 507(b) of the Bankruptcy Code, and (b) perfected liens  (the "Adequate Protection Liens") on all

11 property of the estate (tangible and intangible, real, personal or mixed), whenever acquired or

12 arising, other than claims and causes of action of the estate arising under Chapter 5 of the

13 Bankruptcy Code, to the extent necessary to protect the Existing Secured Creditors against any

14 diminution in the value of their interests in the Debtor's prepetition property resulting from the

15 grant of the "priming" lien to the DIP Lender, provided that such superpriority administrative

16 expense claims and Adequate Protection Liens will be junior to the superpriority claims and liens

17 granted to the DIP Lender and subject to the Replacement Liens granted to such creditors as

18 adequate protection for the Debtor's use of cash collateral under the Interim Order Authorizing

19 Debtor to Use Cash Collateral and Scheduling a Final Hearing entered herein on June 3, 2011, as

20 Document # 23 (the "Interim Cash Collateral Order") and under any subsequent cash collateral

21 orders; and

22     (4)    To modify the automatic stay under section 362 of the Bankruptcy Code to the

23 extent necessary to implement the transactions contemplated by the DIP Loan Documents,

24 including exercise of the remedies set forth therein.

25 / / /

26 / / /

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    <u>Disclosures Pursuant to Bankruptcy Rule 4001(c)(1)(B) and Court's Guidelines</u>

2    In accordance with Bankruptcy Rule 4001(c)(1)(B) and the Court's Guidelines Regarding

3    Motions to Obtain Credit set forth in LBF 541.7, the following is a summary of the types of

4    provisions described in those rules that will be included in the DIP Loan Agreement, the Interim

5    Order and the Final Order:

6    **(i) Provisions Re Priming Liens Without the Consent of Lienholders.** The DIP Loan

7    will be secured by priming liens on the Collateral to which the Existing Secured Creditors have

8    not consented pursuant to section 364(d)(1) of the Bankruptcy Code. However, the Interim

9    Order and Final Order will provide for adequate protection of the interests of the Existing

10   Secured Creditors in the Collateral.

11   **(ii) Superpriority Claim and Non-Priming Liens Re: DIP Loan Obligations.** As

12   security for the DIP Loan Obligations, and subject to the Carve-Out, the DIP Lender will receive

13   (x) a superpriority claim under section 364(c)(1) of the Bankruptcy Code, (y) a lien on

14   unencumbered property included in the Collateral under section 364(c)(2) of the Bankruptcy

15   Code, and (z) a junior lien on that portion of the Collateral subject to Non-Primed Liens.

16   **(iii) Superpriority Claims and Replacement Liens as Adequate Protection of**

17   **Existing Liens.** As adequate protection for the Existing Liens, the Existing Secured Creditors

18   will receive (x) superpriority claims  as provided in section 507(b) of the Bankruptcy Code, and

19   (y) Adequate Protection Liens on the Collateral, to the same extent, validity, enforceability and

20   relative priorities as their prepetition liens; provided, however, that such superpriority claims and

21   Adequate Protection Liens will be junior to the superpriority claims and liens granted to the DIP

22   Lender to secure the DIP Loan Obligations.

23   **(iv) Remedies and Relief from Stay.** Upon the occurrence of an Event of Default under

24   and as defined in the DIP Loan Agreement, (x) the automatic stay will be deemed vacated and

25   modified to the extent necessary to permit the DIP Lender to  immediately (A) deliver a notice of

26   an Event of Default, and (B) terminate or suspend any outstanding advance, and (y) after five (5)

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1  business days' written notice (within which period the Debtor may only dispute the DIP

2  Lender's declaration of an Event of Default in the Bankruptcy Court on an expedited basis), the

3  automatic stay of section 362 of the Bankruptcy Code will terminate, without further order of the

4  Court and without the need for filing any motion for relief from the automatic stay or any other

5  pleading, for the limited purpose of permitting the DIP Lender to do any one or more of the

6  following:  (A) charge the default rate of interest on the DIP Loan; and (B) declare the principal

7  of and accrued interest, fees and expenses constituting the DIP Loan Obligations to be due and

8  payable.  Upon and after the occurrence of an Event of Default, except as provided in the

9  preceding sentence, the DIP Lender will be required to file a motion seeking relief from the

10  automatic stay (a "Stay Motion") to enforce any of its other rights or remedies.  The Stay Motion

11  will be heard on no more than five (5) days' notice and the only issue to be adjudicated on the

12  Stay Motion will be whether an Event of Default occurred under the DIP Loan Documents.  The

13  Debtor will waive any right to enjoin the exercise of the rights and remedies by the DIP Lender

14  following an Event of Default.

15  **(v) Deadlines for Filing an Acceptable Plan.**  The affirmative covenants in the DIP

16  Loan Agreement will require the Debtor to use its best efforts to file a plan on terms acceptable

17  to the DIP Lender in its sole and absolute discretion (an "Acceptable Plan") within 90 days of

18  the Petition Date, but in no event will an Acceptable Plan be filed later than 120 days after the

19  Petition Date.

20  **(vi) Indemnification and Limitations on Liability.**  The DIP Loan Agreement will

21  require the Debtor to indemnify and hold harmless the DIP Lender and its agents and will

22  provide limitations on their liability (including a waiver of consequential damages) in connection

23  with the DIP Facility and related matters, subject to limitations for gross negligence and willful

24  misconduct.

25  **(vii) Breakup Fee.**  The Debtor will agree to pay the DIP Lender a break-up fee of

26  $125,000 upon the occurrence of any of the events described in the Break-Up Fee provision in

**Page 5 of 18 -**    DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                     AND FINAL BASIS                    \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1   the Term Sheet.  The Debtor submits that by virtue of the DIP Lender's commitments and

2   efforts, it has made a substantial contribution to the Debtor's estate within the meaning of section

3   503(b)(3) of the Bankruptcy Code.

4   **(viii)  Use of DIP Proceeds/Approved Budget.**  Proceeds from advances under the DIP

5   Facility will be used in accordance with the budget attached to the Interim Cash Collateral Order

6   (the "Interim Budget"), as it may be revised from time to time with the DIP Lender's approval,

7   which approval will not be unreasonably withheld. Court approval of revisions to the Interim

8   Budget will not be required.  The Debtor will be permitted variances, on a line-item basis, up to

9   10 percent of the total budgeted expenses (exclusive of legal or professional fees and expenses)

10  through the end of the applicable period, and will be permitted to carry forward from a prior

11  four-week period to the next two succeeding four-week periods any unused portion of the

12  aggregated actual amounts attributable to the prior four-week period.

13  **(ix)  DIP Loan Fees.**  The DIP Lender will be entitled to (x) a commitment fee equal to

14  4.0 percent of the maximum principal amount of the DIP Loan, and (y) an exit fee equal to 2.0

15  percent of the maximum principal amount of the DIP Loan, which will be due and payable upon

16  the Maturity Date.

17  **(x)  Payment of IRS' Secured Claims.**  Subject to the entry of a Final Order, the Debtor

18  will be authorized to pay the IRS' prepetition secured claims, in each case to the extent the

19  statutory lien securing such claim has priority over the security interests that secure the claims of

20  Rabo Agrifinance, Inc.

21                                              Jurisdiction

22  This Court has jurisdiction over this matter pursuant to 28 USC §§ 157 and 1334 and LR

23  2100.1.  Consideration of this motion constitutes a core proceeding within the meaning of 28

24  USC § 157(b)(2)(D).  The statutory predicates for the relief sought by this motion are sections

25  105, 361 and 364 of the Bankruptcy Code.  Venue is proper under 28 USC § 1408.

26  / / /

**Page 6 of 18 -**    DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                     AND FINAL BASIS                                    \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Statement of Facts

A.    General Background and the Debtor's Business

1.    On June 1, 2011 (the "Petition Date"), the Debtor filed herein a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing in the management and possession of its business and properties as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been requested or appointed in this case, and the United States trustee has not appointed an official committee of creditors.

2.    The Debtor operates an agricultural enterprise on approximately 7,762 acres of owned and leased land located in Benton, Linn and Polk Counties.  Its business is  comprised principally of three divisions:  (a) Olsen Seed Company, which produces and sells a variety of grass seed and grains on approximately 5,934 acres; (b) Olsen Agriculture, which grows and sells peppermint, nursery stock, squash, hazelnuts and blueberries on approximately 1,334 acres; and (c) Olsen Family Vineyards, which grows a variety of grapes on approximately 494 acres and produces and sells quality wines under the "Viridian" label as well as private labels.  As of the date hereof, the Debtor has 45 employees, including management personnel.

3.    The Debtor is the surviving entity of a merger transaction that was consummated on June 1, 2011.  In the merger transaction, Olsen Agricultural Company, Inc., an Oregon corporation ("OAC"), Jenks-Olsen Land Co., an Oregon general partnership ("JOLC"), Olsen Vineyard Company, LLC, an Oregon limited liability company ("OVC"), and The Olsen Farms Family Limited Partnership ("OFFLP") were merged with and into the Debtor.  OAC, JOLC, OVC and OFFLP were co-borrowers under the term loan made by AXA Equitable Life Insurance Company, and OAC, JOLC and OVC were co-borrowers under the line of credit loans made by Rabo Agrifinance, Inc.  In connection with the merger transaction, other related parties that pledged real estate collateral to support the line of credit loans agreed to contribute such property to the Debtor in exchange for the right to receive ownership interests in the Debtor.

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

4.      For the fiscal year ended December 31, 2010, OAC reported total revenues of $6,428,880 and a net loss of ($5,791,310).  At the time of the merger, on a consolidated basis, the books and records of OAC, JOLC and OVC reflected assets totaling approximately $29.8 million and liabilities totaling approximately $37.2 million.  The fair market value of the Debtor's assets is significantly greater than their book values, particularly in the case of fixed assets.  The fair market value of the Debtor's assets, on a going concern basis, is approximately $50 million.

5.      The following creditors have or may claim to have a security interest in or lien on property of the estate that will be affected by the "priming" lien to be granted to the DIP Lender:

(a)      Rabo Agrifinance, Inc. ("Rabo"), which has a blanket security interest in and trust deed liens on essentially all of the Debtor's assets, pursuant to a series of deeds of trusts and a security agreement dated February 19, 2008, to secure (i) a term loan in the approximate amount of $14,240,000, and (ii) line of credit loans in the approximate amount of $15,580,000;

(b)      BFS International, LLC ("BFS"), which has a security interest in the Debtor's accounts and payment intangibles, pursuant to an assignment and security agreement dated January 19, 2009, to secure a claim of $21,134.58 or less;

(c)      United States of America, acting by and through the Internal Revenue Service (the "IRS"), which has a statutory lien on all of the Debtor's personal property, pursuant to federal tax lien notices filed with the Oregon Secretary of State on January 8, 2010 and on January 14, 2011, to secure 941 tax claims in the total approximate amount of $122,000;

(d)      Ledeboer Seed, LLC ("Ledeboer"), which has a security interest in certain of the Debtor's grass seed and in all accounts and general intangibles that arose out of a sale or other disposition of such grass seed, pursuant to a security agreement dated January 20, 2011, to secure a claim of $20,000; and

(e)      Callisons Inc. d/b/a I.P. Callisons and Sons ("Callisons"), which has (i) a security interest in the Debtor's 2011 peppermint crops, pursuant to a crop production loan and

Page 8 of 18 -    DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                 AND FINAL BASIS
                                                              \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1 security agreement dated February __, 2011, to secure a claim of $425,432, and (ii) a statutory

2 agricultural services lien on the Debtor's 2011 peppermint crops, pursuant to an ASL-1 lien

3 notice filed with the Oregon Secretary of State on May 19, 2011, to secure a claim of

4 $308,559.43 (which is included in the claim described in clause (i) above).

5      6.      Under this Court's Interim Cash Collateral Order, the Debtor is authorized to use

6 cash collateral on an interim basis pending the final hearing scheduled for June 13, 2011.

7 **B.**     <u>The Debtor's Need for Cash and DIP Financing</u>

8      7.      As reflected in the Interim Budget, the Debtor anticipates that from the Petition

9 Date through December 31, 2011, it will be required to spend, on a cumulative basis,

10 approximately $6.2 million for its operational needs (approximately $3.5 million) and for

11 restructuring costs and other non-operating items (approximately $2.7 million).  Over that

12 period, the Debtor projects that it will generate approximately $4.3 million in cash from its

13 operations.  Without additional funding, the Debtor will have a negative cash position during the

14 week of June 13, 2011, and for subsequent periods.

15      8.      The Debtor requires approximately $500,000 under the DIP Facility from June

16 13, 2011 through July 10, 2011, for, among other things, continuing the operation of its business

17 in an orderly manner, paying payroll and other postpetition operating expenses, and satisfying

18 other working capital and operational needs.  Absent authority to obtain the needed financing,

19 the Debtor will have to curtail or terminate its business operations, which will result in

20 significant loss in value to the estate and irreparable harm to all parties in interest.

21 **C.**     <u>The Absence of Feasible Alternatives to the DIP Financing</u>

22      9.      The Debtor is unable to obtain the needed financing from any source other than

23 the DIP Lender on the terms set forth in the Term Sheet either on an unsecured basis under

24 section 364(b) or 364(c)(1) of the Bankruptcy Code or on a secured basis under section 364(c)(3)

25 of the Bankruptcy Code.  Despite the Debtor's diligent efforts to obtain the needed postpetition

26 financing, only the DIP Lender has indicated an ability and willingness to provide it to the

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Debtor.

D.      The DIP Financing Was Negotiated in Good Faith and at Arms' Length

        10.     The Term Sheet was negotiated at arms' length, following extensive negotiations. As a result of these negotiations, the Term Sheet reflects give-and-take on both sides.  For instance, while the use of the DIP Loan proceeds is subject to budgetary constraints, the budget is subject to significant variance and carryforward provisions.  Likewise, although the DIP Loan proceeds will be secured by liens on all property of the estate, none of the liens to be granted under the DIP Facility will encumber any avoidance actions.

                                        Points and Authorities

A.      The Debtor Cannot Obtain Financing on More Favorable Terms

        11.     Section 364 of the Bankruptcy Codes states that a debtor in possession that is authorized to operate its business may obtain financing either in the ordinary course of business or outside the ordinary course of business. Section 364(a) allows a debtor in possession to obtain unsecured credit and to incur unsecured debt in the ordinary course of business without court authorization.  Under section 364(b), the court may authorize a debtor in possession to obtain unsecured credit and to incur unsecured debt outside the ordinary course of business. This type of financing is allowable as an administrative expense under section 503(b)(1). 11 USC § 364(b).

        12.     If a debtor in possession is unable to obtain unsecured credit on this basis, section 364(c) permits the court to authorize the debtor in possession to obtain credit or to incur debt that has priority over "ordinary" administrative expenses and, in particular, "(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 USC § 364(c)(1)-(3).

        13.     Other than the requirement of notice and a hearing, the only statutory prerequisite under section 364(c) for obtaining credit on a secured basis and superpriority basis is that the

**Page 10 of 18 -**   DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                AND FINAL BASIS                                    \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1   debtor in possession must be unable to obtain credit allowable as an "ordinary" administrative

2   expense. 11 USC § 364(c)(2); see also In re Garland Corp., 6 BR 456, 461 n.11 (BAP 1st Cir

3   1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon

4   showing that unsecured credit cannot be obtained); In re Ames Dep't Stores, Inc., 115 BR 34, 37-

5   39 (Bankr SDNY 1990) (debtor must show that it has made a reasonable effort to seek other

6   sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

7       14.    Under section 364(d)(1), a court may authorize a debtor in possession to obtain

8   credit or incur debt secured by a senior or equal lien if "(A) the trustee is unable to obtain such

9   credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on

10  the property of the estate on which such senior or equal lien is proposed to be granted." 11 USC

11  § 364(d)(1).

12      15.    To demonstrate that the requisite credit is not obtainable on more favorable terms,

13  a debtor need only demonstrate "by good faith effort that credit was not available" without the

14  protections afforded to potential lenders by section 364(d). Bray v. Shenandoah Fed. Sav. &

15  Loan Ass'n (In re Snowshoe Co.), 789 F2d 1085, 1088 (4th Cir 1986). Thus, "[t]he statute

16  imposes no duty to seek credit from every possible lender before concluding that such credit is

17  unavailable." Id.; see also In re Ames, 115 BR at 40 (holding that debtor made a reasonable

18  effort to secure financing when it selected the least onerous financing option from the two

19  remaining lenders); In re Reading Tube Indus., 72 BR 329, 332 (Bankr ED Pa 1987) ("Given the

20  'time is of the essence' nature of this type of financing, we would not require this or any debtor to

21  contact a seemingly infinite number of possible lenders."). Where few lenders are likely to be

22  able and willing to extend the necessary credit to a debtor, "it would be unrealistic and

23  unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re

24  Sky Valley, Inc., 100 BR 107, 113 (Bankr ND Ga 1988).

25      16.    This threshold test is satisfied here. The Debtor's senior management and its

26  financial advisors have explored various, alternative financing options, but have found no party

**Page 11 of 18 -**   DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
AND FINAL BASIS
                                        \G:\Clients\7095\P Motion Auth Interim Credit.wpd

1  willing to advance sufficient credit on more favorable terms than the DIP Facility.

2  ///

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 12 of 18 -**  DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
AND FINAL BASIS                                                         \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    B.    The Existing Secured Creditors Are Adequately Protected

2        17.    The DIP Facility provides that DIP Lender will obtain a "priming" lien on the

3    Collateral senior to the Existing Secured Creditors except with respect to the Non-Primed Liens

4    (i.e., liens with respect to real property taxes and purchase money security interests on the

5    Debtor's equipment).  Section 364(d)(1)(B) requires that the interests of the Existing Secured

6    Creditors in the Collateral securing their respective claims be adequately protected.

7        18.    Section 361 of the Bankruptcy Code describes permissible means of adequate

8    protection.  Under section 361, adequate protection may be provided by cash payments,

9    replacement liens, and other relief "as will result in the realization by such entity of the

10   indubitable equivalent of such entity's interest in such property." 11 USC § 361; see United Sav.

11   Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 US 365, 369-73 (1988) (the "interest in

12   property" entitled to protection is "the value of the collateral" that secures the claim).  The

13   legislative history of section 361 makes clear that bankruptcy courts are given broad flexibility

14   in deciding what constitutes adequate protection on a case-by-case basis, stating:

15               This section specifies the means by which adequate protection may be
                 provided. It does not require the court to provide it. To do so would place the
16               court in an administrative role. Instead, the trustee or debtor-in-possession
                 will provide or propose a protection method. If the party that is affected by
17               the proposed action objects, the court will determine whether the protection
                 provided is adequate. The purpose of this section is to illustrate means by
18               which it may be provided and to define the contours of the concept.

19   HR Rep No 95-595, at 338 (1977), reprinted in 1978 USCCAN 6295; see also Resolution Trust

20   Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F3d 552, 564 (3d

21   Cir 1994) ("[A] determination of whether there is adequate protection is made on a case by case

22   basis."); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F2d 1393, 1396-97 (10th Cir

23   1987) (same); Martin v. United States (In re Martin), 761 F2d 472, 474 (8th Cir 1985) (same);

24   accord FDIC v. Mathis (In re Mathis), 64 BR 279, 284 (ND Tex 1986) ("[T]he form of the

25   adequate protection may vary on a case-by-case basis.").

26   / / /

**Page 13 of 18** -   DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                      AND FINAL BASIS                    \G:\Clients\7095\P Motion Auth Interim Credit.wpd

19.     The essential purpose of adequate protection is just that: to adequately protect the interests for which creditors bargained prepetition. As the House Report accompanying the Bankruptcy Code explained:

> It is not intended to be confined strictly to the constitutional protection required. . . . The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

HR Rep No. 95-595, at 339; see also In re Worldcom, Inc., 304 BR 611, 618-19 (Bankr SDNY 2004) ("[T]he purpose of providing adequate protection is to insure that the secured creditor receives the value for which the creditor bargained prior to the debtor's bankruptcy.") (citing additional authorities). "However, neither the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties." Id at 619. Indeed, the "[c]ourt is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." In re Heatron, Inc., 6 BR 493, 496 (Bankr WD Mo 1980). The interest to be protected by virtue of the adequate protection requirement is the lesser of the value of the debt or the value of assets securing the debt. See In re Triplett, 87 BR 25, 27 (Bankr WD Tex 1988) ("[U]nder the concept of adequate protection — only the preservation of the value of the lien is required.") (citing In re Alyucan Interstate Corp., 12 BR 803, 808 (Bankr D Utah 1981)); see also 11 USC § 506.

20.     The Existing Secured Creditors' interests are adequate protected here for two reasons. First, there is a significant equity cushion available to them. The evidence will show that the value of the Debtor's property that secures the Existing Secured Creditors' claims greatly exceeds the amounts of their respective secured claims. In the case of Rabo, there is an equity cushion of approximately 40 percent where the value of its collateral is determined on a

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1  going concern basis.  See <u>United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.</u>, Ltd.,

2  484 US 365, 370, 108 SCt 626, 630, 98 L Ed 2d 740 (1988); <u>In re Mellor</u>, 734 F2d 1396, 1401

3  (9th Cir 1984).  In <u>Mellor</u>, the Ninth Circuit Court of Appeals recognized that an "equity

4  cushion," while not specifically mentioned in the Bankruptcy Code, is the classic form of

5  adequate protection that, standing alone, may suffice as adequate protection of a creditors'

6  interests.  <u>Id.</u>  Moreover, other bankruptcy courts have commented that the existence of an equity

7  cushion is "the preferred test in determining whether priming of a senior lien is appropriate

8  under section 364." <u>In re YL West 87th Holdings I LLC</u>  423 BR 421, 441-442 (Bankr SDNY

9  2010); <u>In re Strug–Div. LLC</u>, 380 BR 505, 513 (Bankr ND Ill 2008); see <u>In re Dunes Casino</u>

10  <u>Hotel</u>, 69 BR 784, 795–96 (Bankr DNJ 1986); <u>In re Reading Tube Indus., Inc.</u>, 72 BR 329,

11  333–34 (Bankr ED Pa 1987).

12       21.    Second, the DIP Facility is necessary to continue the Debtor's business operations

13  and thereby preserve the going concern value of its property.  Where, as here, a debtor's use of

14  debtor in possession financing protects creditors from loss, the secured creditors are adequately

15  protected without any need for other forms of adequate protection.  See, e.g., <u>Orix Credit</u>

16  <u>Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)</u>, 54 F 3d 722, 730 (11th Cir 1995), <u>cert</u>

17  <u>denied</u>, 516 US 980 (1995); <u>Westchase I Assocs. v. Lincoln Nat'l Life Ins. Co. (In re Westchase</u>

18  <u>I Assocs. L.P.)</u>, 126 BR 692, 694 (WDNC 1991); see <u>also</u> <u>In re 499 W. Warren St. Assocs., Ltd.</u>

19  <u>P'ship</u>, 142 BR 53, 56-57 (Bankr NDNY 1992) (finding secured creditor's interest in collateral

20  adequately protected when cash collateral applied to normal operating maintenance expenditures

21  on collateral property); <u>In re Willowood E. Apartments of Indianapolis II, Ltd.</u>, 114 BR 138, 143

22  (Bankr SD Ohio 1990) (finding secured creditor's interest in assigned rents extended only to net

23  rents after payment of ordinary, necessary expenses required to maintain and operate the

24  property to preserve its value).  Courts have held that adequate protection may be demonstrated

25  by a showing that the going concern value of a debtor is preserved by the debtor's continuing

26  operations and use of collateral.  See, e.g., <u>In re Snowshoe Co.</u>, 789 F2d 1087-89 (finding that

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1   ski resort would lose 50% to 90% of its fair market value if it ceased operations); <u>In re Constable

2   Plaza Assocs., L.P.</u>, 125 BR 98, 105 (Bankr SDNY 1991) (debtor entitled to use cash collateral

3   to operate and maintain office building thereby protecting secured lender's collateral and

4   existing equity cushion).

5   C.    <u>The Debtor's Entry into the DIP Loan Agreement Is a Sound Exercise of Business
         Judgment and Is Reasonable Under the Circumstances</u>

6

7       22.    Courts generally give broad deference to the business decisions of a debtor. See,

8   e.g., <u>Stephens Indus., Inc. v. McClung</u>, 789 F2d 386, 390 (6th Cir 1986); <u>Institutional Creditors

9   of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Air Lines, Inc.)</u>, 780 F2d 1223, 1226

10  (5th Cir 1986); <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F2d

11  1063, 1070 (2d Cir 1983); <u>Walter v. Sonwest Bank (In re Walter)</u>, 83 BR 14, 19-20 (BAP 9th

12  Cir. 1987) (quoting <u>In re Cont'l</u>, 780 F2d at 1226). In particular, a bankruptcy court should defer

13  to a debtor's reasonable business judgment regarding the need for funds so long as the proposed

14  financing agreement does not contain terms that leverage the bankruptcy process or that benefit a

15  third party rather than the bankruptcy estate. This was explained by the bankruptcy court in <u>In re

16  Ames</u>:

17          [A] court's discretion under section 364 is to be utilized on grounds that
            permit reasonable business judgment to be exercised so long as the financing
18          agreement does not contain terms that leverage the bankruptcy process and
            powers or its purpose is not so much to benefit the estate as it is to benefit a
19          party-in-interest.

20  115 BR at 40.

21      23.    Here, the Debtor's decision to enter into the DIP Loan Agreement represents a

22  sound exercise of business judgment.  Without the financing, the Debtor cannot maintain its

23  operations and business.  If it is unable to do so, its going concern value and the value of its

24  assets will be substantially and irreparably impaired.  The DIP Facility addresses these problems

25  by providing the Debtor with the funding it needs to meet its operational needs and to fund its

26  restructuring costs.

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1   24.    The terms of the DIP Facility are similar to those often included in complex

2   financing arrangements.  The DIP Facility provides, among other things, that the Debtor's

3   postpetition obligations will be secured by liens on its assets, that claims for advances thereunder

4   will be entitled to superpriority, and that the DIP Lender will receive certain other

5   accommodations with respect to the protection of its interests.

6   25.    Courts have recognized that a debtor often must make significant concessions in

7   exchange for financing. See, e.g., In re Ellingsen MacLean Oil Co., 65 BR 358, 365 n.7 (Bankr

8   WD Mich 1986) (chapter 11 postpetition financing is "fraught with dangers for creditors"), aff'd,

9   834 F2d 599 (6th Cir 1987). Accordingly, courts recognize that a debtor may need to "enter into

10  a 'hard' bargain with a creditor in order to acquire the needed funds to complete reorganization."

11  Id.

12  26.    Lenders often agree to subordinate or "carve-out" from their collateral funds to

13  pay professionals. See Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re

14  BlackwoodAssocs., L.P.), 187 BR 856, 860 (Bankr EDNY 1995) (court advised that if

15  professionals really want to be paid they had best insist upon a "real carve out"), aff'd, 153 F3d

16  61 (2d Cir 1998); In re Ames, 115 BR at 40 (noting practice of district to insist on carve-out for

17  fees in order to preserve adversary system). Here, the Carve-Out covers not only the professional

18  fees of the Debtor, but of any Committee appointed in the Debtor's case.

19  27.    Nor is it atypical for a lender to receive enhanced enforcement remedies. See,

20  e.g., Resolution Trust Corp. v. Official Unsecured Creditors' Comm. (In re Defender Drug

21  Stores, Inc.), 145 BR 312, 317-18 (BAP 9th Cir 1992) (approved postpetition financing

22  arrangement providing that upon event of default under postpetition financing order, debtor

23  would be given 30 days to find alternative financing for, or a buyer of, the business, and if the

24  debtor sold its assets, the lender would be entitled to an enhancement fee of 10% of the gross

25  consideration for the assets). Here, although the automatic stay will be modified to allow the DIP

26  Lender to charge default interest and accelerate the DIP Loan, the DIP Lender will not be

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1  permitted to exercise other enforcement rights or remedies with respect to its Collateral without

2  first obtaining an order of the Court granting it relief from the automatic stay to do so.

3      28.     In short, the terms of the DIP Facility are not only common in chapter 11 cases,

4  but also are balanced by limitations and restrictions negotiated by the Debtor for the benefit of

5  the estate, its creditors and other parties in interest.

6                                    Notice

7      29.     Notice of this motion has been given to, among other parties, (i) Rabo and its

8  attorneys, (ii) BFS, (iii) the IRS, through the United States Attorney for the District of Oregon,

9  the Attorney General of the United States at Washington, D.C. and the IRS Special Procedures

10  Unit, (iv) Ledeboer, (v) Callisons, (vi) the United States trustee, and (vii) the creditors holding

11  the 20 largest unsecured claims.  Further notice is impractical in the circumstances.  The Debtor

12  submits that the foregoing constitutes good and sufficient notice and that no other or further

13  notice need be given in the circumstances.

14      WHEREFORE, the Debtor requests entry of an order granting the relief requested herein

15  and such other and further relief as is appropriate.

16      Dated:  June 7, 2011.

17                          Greene & Markley, P.C.

18                          By ____/s/ David A. Foraker_____.
                                David A. Foraker, OSB #812280
19                              Attorneys for Debtor

20

21

22

23

24

25

26

**Page 18 of 18 -**   DEBTOR'S MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                       AND FINAL BASIS                              \G:\Clients\7095\P Motion Auth Interim Credit.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

<u>Exhibit A – DIP Loan Term Sheet</u>

See attached.

Preliminary Indicative Term Sheet
for
Debtor in Possession Credit Loan

May 27, 2011

*The following is a summary of proposed terms and conditions for the establishment of a secured loan to the Borrower identified below in its capacity as a Chapter 11 debtor in possession in a case to be commenced in the United States Bankruptcy Court for the District of Oregon, Eugene Office. This Term Sheet is subject to (i) completion of due diligence with respect to the Borrower's business, collateral, assets, financial condition and prospects and (ii) completion of definitive documentation. Further, this Term Sheet, and the terms and conditions hereof, are being provided on a confidential basis and should not be disclosed to any third party other than the attorneys, accountants and financial advisors of the parties hereto, unless required by an order of a court of competent jurisdiction.*

| | |
|---|---|
| **Borrower/Debtor In Possession** | Olsen Agricultural Enterprises LLC, an Oregon limited liability company, and its affiliates or subsidiaries ("**Borrower**") |
| **DIP Lender** | Bacchus Capital, L.P. and/ or its affiliates ("**DIP Lender**" or "**Lender**") |
| **Bankruptcy Court** | United States Bankruptcy Court for the District of Oregon, Eugene Office (the "**Bankruptcy Court**"). |
| **Bankruptcy Case** | The chapter 11 case to be commenced by the Borrower in the Bankruptcy Court (the "**Bankruptcy Case**"). |
| **Use of Proceeds** | Proceeds from the DIP Loan (as defined herein) shall be used exclusively for funding the following expenses: (x) normal operating expenses consistent with past practices subject to the Approved Budget (as defined herein); (y) fees of the United States Trustee and allowed professional fees (subject to the Carve-Out as defined herein) for the Borrower not to exceed that set forth in the Approved Budget and accrued and unpaid prior to the occurrence of an Event of Default (as defined herein); and (z) the fees and expenses of DIP Lender as set forth herein. None of the proceeds of the DIP Loan, the collateral securing the DIP Loan or the Carve-Out (as defined herein) may be used by the Borrower or any committee of unsecured creditors to investigate or challenge the validity, perfection, priority, extent or enforceability of the DIP Loan, the liens securing the DIP Loan, or the claims of DIP Lender with respect to the foregoing. |
| **DIP Loan** | The DIP Lender shall make available to the Borrower a term loan, which term loan shall not exceed USD $3.0 million in aggregate principal amount (including all Borrower obligations thereunder, the "**DIP Financing**" or "**DIP Loan**"), and with the proceeds of such term loan or loans to be applied pursuant to the limitations on the Use of |



BACCHUS CAPITAL

| | |
|---|---|
| | Proceeds described above. Such term loan shall be subject to the Conditions Precedent to Closing and Conditions to the advance. The DIP Loan may be in multiple advances subject to DIP Lender's due diligence, court orders and approval of the DIP Lender.

The DIP Financing shall be subject to, among other things, the entry by the Bankruptcy Court of an interim and final order finally and unconditionally approving the DIP Financing pursuant to Section 364 of the Bankruptcy Code on terms and conditions reasonably satisfactory to the DIP Lender (the "**Final Order**"). No advances shall be made if there is an Event of Default that has occurred and has not been cured or waived. |
| **Closing Date** | The first date practicable following the entry of an interim order by the Bankruptcy Court approving the DIP Financing on terms and conditions reasonably satisfactory to the DIP Lender (the "**Interim Order**"), anticipated to be on or prior to June 17, 2011. The Interim Order and the Final Order are collectively the "**DIP Orders**". |
| **Interest Rate** | Interest shall be payable monthly in cash in arrears at a rate equal to 12% per annum. All calculations of interest and fees shall be made on the basis of actual number of days elapsed in a 360 day year. |
| **Default Interest Rate** | During the continuance of an event of default, a default rate shall apply on all obligations under the DIP Loan at a rate per annum of 4.0% above the then applicable interest rate. |
| **Commitment and Other Fees** | A commitment fee equal to 4.0% of the maximum principal amount of the DIP Financing will be fully earned and due and payable to the DIP Lender upon the Closing Date. Additional fees are subject to Lender's due diligence which may include, without limitation, collateral monitoring or exit fees. |
| **Priority** | In addition to the priority with respect to the Collateral set forth below, all amounts owing by the Borrower under the DIP Financing in respect thereof at all times will constitute allowed super-priority administrative expense claims in the Borrower's chapter 11 case (the "**Chapter 11 Case**") having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of title 11 of the Untied States Code (the "**Bankruptcy Code**"), subject only to the Carve-Out (as defined below). |
| **Collateral** | All amounts owing by the Borrower will be secured pursuant to sections 364(c) and (d)(1) of the Bankruptcy Code by a fully perfected priming, first lien priority |

SV 346,702,013v6 5-27-11

| | |
|---|---|
| | security interest and liens in substantially all assets (tangible, intangible, real, personal or mixed) of the Borrower, whether now owned or hereafter acquired, including, without limitation, accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks, causes of action, including general intangibles, and all products and proceeds thereof, including all unencumbered assets of the Borrower and, subject only to the Carve-Out (as defined below). |
| **Term** | The period from the Closing Date to the earliest to occur of (i) a mutually acceptable period (which shall expire on or before February 15, 2012), (ii) the closing of a merger, sale of stock, change of control, or sale of substantially all of the assets of Borrower, or any other debt or equity issuance by the Borrower, or any other transaction similar to the foregoing, or (iii) the date of the occurrence of an Event of Default under the DIP Financing, (iv) the date the Borrower pays all of the DIP Lender in full and terminates the DIP Financing, or (v) conversion or dismissal of the Bankruptcy Case, or the appointment of a trustee in the Bankruptcy Case (such earliest date, the "**Termination Date**"). |
| **Mandatory Repayments** | In addition to payments on the Termination Date, mandatory repayments of the DIP Financing shall be required in an amount equal to (i) 100% of the net sale proceeds from all asset sales outside the ordinary course of business and (ii) 100% of insurance and condemnation proceeds received by the Borrower, except for customary exceptions for Borrower to re-build upon a casualty subject to qualifications in the definitive loan documents. |
| **Conditions Precedent to Closing** | The loan documentation in respect of the DIP Financing will contain the following conditions precedent to closing as determined in Lender's sole and absolute discretion:<br><br>• All due diligence, financial review, loan documentation, collateral and opinions shall be in form and substance reasonably satisfactory to the DIP Lender and their counsel.<br><br>• The Borrower and the DIP Lender shall have agreed upon an Approved Budget.<br>• With respect to the initial closing, entry of the Interim Order (with no stay thereof) in form and substance acceptable to DIP Lender. |

BACCHUS CAPITAL

- The Borrower shall have provided evidence of insurance reasonably satisfactory to the DIP Lender, naming the DIP Lender as additional insured and loss payee.

- The Borrower shall have provided collateral audits, reports and appraisals as are requested by and in form and substance reasonably satisfactory to the DIP Lender.

- All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Financing (including, without limitation, the Interim Order and Final Order, as the case may be) shall be in form and substance reasonably satisfactory to the DIP Lender.

- All governmental and third party consents and approvals necessary in connection with the DIP Financing and the transactions contemplated thereby shall have been obtained and shall remain in effect.

- The Borrower shall provide customary representations and warranties, and financial and negative covenants.

- Final approval by Lender's Investment Committee.

- No material adverse changes or misrepresentations, misstatements in or omissions from, material furnished to DIP Lender.

- There shall have been no material adverse change since the date of this letter in the capital markets generally or in subordinate debt markets.

- The making of such loan and advance shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily or permanently by any governmental authority

- The Bankruptcy Court shall have entered an Interim Order in form and substance reasonably satisfactory to the DIP Lender, which order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the DIP Lender (such consent not to be unreasonably withheld) (i) authorizing and approving the transactions

BACCHUS CAPITAL

|  | contemplated thereby, including, without limitation, the granting of the super-priority status, security interests and liens, and the payment of all fees referred to herein, and (ii) lifting the automatic stay to permit the Borrower to perform their obligations under the loan documents and the DIP Lender to exercise their rights and remedies with respect to the DIP Financing provided that the DIP Lender shall provide the Borrower with five (5) business days prior written notice before exercising right and remedies.<br><br>• Borrower will waive, and the DIP Orders shall not effect Borrower's waiver of, any right to obtain alternative post-petition financing senior to the DIP Loan pursuant to Section 364 of the Bankruptcy Code or otherwise unless the proceeds of any such financing are to be applied to the indefeasible payment, in full, in cash, of the DIP Loan.<br><br>• Key man and other insurance acceptable to DIP Lender, naming DIP Lender as additional insured. |
|---|---|
| **Carve Out** | The "**Carve-Out**" shall mean the following sums having priority ahead of the super priority claims and liens securing the DIP Financing: (i) the payment of any unpaid fees payable to the United States Trustee pursuant to 28 U.S.C. §1930 and (ii) the payment of unpaid claims (whether then or subsequently allowed) for fees and expenses incurred by professionals retained by an order of the Bankruptcy Court, including fees and expenses incurred prior to, and after, the occurrence of an Event of Default, not to exceed $350,000 in the aggregate, or such other event subject to Lender's due diligence and approval (the "**Professional Expense Cap**"). No portion of the Carve-Out may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, objection or other litigation against the DIP Lender. |
| **Representations and Warranties** | The loan documentation will contain representations and warranties customary for loans of this size, type and purpose. |



SV 346,702,013v6 5-27-11

| | |
|---|---|
| **Affirmative Covenants** | The loan documentation will contain affirmative and financial reporting covenants customary for loans of this size, type and purpose.<br><br>The Borrower shall use its best efforts file a plan on terms acceptable to the DIP Lender in its sole and absolute discretion (an "**Acceptable Plan**") within 90 days of the commencement of the Chapter 11 Case (the "**Petition Date**"); however, such Acceptable Plan shall be filed no later than 120 days after the Petition Date. Any Acceptable Plan must provide for, inter alia, payment in full of all DIP Loan obligations, together with customary releases and exculpations and such other and further provisions as the DIP Lender shall require in its sole and absolute discretion. |
| **Negative Covenants** | The loan documentation will contain negative covenants customary for loans of this size, type and purpose, which may include, but not limited to incurrence of additional debt, capital expenditure limitations, dividend restrictions, limitations on management fees and compensation, no changes in key management without Lender consent, compliance with a cash collateral budget, no waste of, deterioration in, or material adverse event, relating to the collateral, and other negative covenants as are customary in this type of transaction. |
| **Events of Default** | The loan documentation will contain customary events of default including, without limitation, the following events of default:<br><br>• failure of the Bankruptcy Court to enter the Interim Order on or before July 1, 2011;<br><br>• failure of the Bankruptcy Court to enter a Final Order in form and substance reasonably satisfactory to DIP Lender within 90 days of the Closing Date;<br><br>• the approval by the Bankruptcy Court of the sale of any assets of the Borrower other than as permitted under the DIP Loan documents;<br><br>• dismissal of the Chapter 11 Case or conversion of any Chapter 11 Case to a chapter 7 case or the merger, sale of stock, change of control, or sale of substantially all of the assets of Borrower;<br><br>• appointment of a chapter 11 trustee or examiner with expanded powers or other person with expanded powers in the Chapter 11 Case; |

BACCHUS CAPITAL

| | |
|---|---|
| | • granting of relief from the automatic stay to permit foreclosure on any material assets of Borrower; |
| | • reversal, vacation or stay of the effectiveness of either the Interim Order or the Final Order; |
| | • failure of liens or super-priority claims granted with respect to the DIP Financing to be valid, perfected and enforceable in all respects; |
| | • a variance of disbursements and net receipts from those reflected in the Approved Budget for such monthly period, which variance amount shall be set forth in the definitive DIP Loan documents; |
| | • any violation of covenants in the loan documentation, including without limitation, no material adverse changes in the finances, operations, assets, collateral or other matters of Borrower; and |
| | • other event of defaults customary for a secured lender of a debtor in possession loan. |
| | The DIP Lender will have customary rights and remedies for a secured lender as specified in the definitive loan documents. |
| **Budget and Reporting** | The Borrower shall provide the following periodic reports: |
| | The Borrower and the DIP Lender shall agree upon a budget (the "**Approved Budget**") prior to the Closing Date projecting operations for the Term ("**Budget Period**") in a form reasonably satisfactory to the DIP Lender.  On a monthly basis, the Borrower shall provide to the DIP Lender an updated budget for the Budget Period in substantially the same form as the previous budget and which upon acceptance by the DIP Lender, shall become the Approved Budget. |
| | The Borrower shall provide the DIP Lender with monthly variance reports reflecting the actual cash receipts and disbursements for each monthly period within seven (7) business days after the end of such monthly period, and showing the percentage variance of actual receipts and disbursements from those reflected in the Approved Budget for such period. |
| | The Borrower shall provide the DIP Lender with weekly |

SV 346,702,013v6 5-27-11

| | |
|---|---|
| | variance reports reflecting the actual cash receipts and disbursements for each weekly period within three (3) business days after the end of such weekly period.<br><br>In addition, Borrower shall provide all financial reports requested by Lender, including without limitation, (i) internally prepared financial statements within thirty (30) days of each calendar month end; and (ii) a compliance certificate issued monthly and weekly executed by the chief financial officer or other senior member of management acceptable to the Lender, certifying compliance with covenants contained in the Legal Documentation. All monthly financial reports should include a balance sheet, income statement and statement of cash flows prepared in accordance with customary, past accounting practices, accompanied by a management discussion and analysis of the appropriate reporting period, compared to the previous year and the budget. |
| **Indemnification** | The loan documentation will contain an indemnification provision customary for loans of this size, type and purpose. |
| **Lender Expenses** | The Borrower shall pay all reasonable and documented out of pocket costs and expenses of the DIP Lender, (including all reasonable and documented fees, expenses and disbursements of counsel, financial advisors and consultants) incurred in connection with the DIP Financing, including, without limitation in connection with the preparation, execution and delivery of the loan documentation and the funding of the DIP Financing and any amendment or waiver of any provision of the loan documentation. At the execution this term sheet, Borrower will submit a $30,000 non-refundable deposit to cover expenses of the Lender (which deposit is not an estimate or cap of Lender expenses), and such deposit shall be delivered to Lender prior to the Petition Date and commencement of the Borrower's Chapter 11 Case. |
| **Governing Law** | State of California, except as governed by the Bankruptcy Code. |
| **Indemnification** | Borrower agrees (a) to indemnify and hold harmless Lender and its affiliates and controlling persons and their respective officers, directors, employees, agents, attorneys, members and successors and assigns of each of the foregoing (each, an "Indemnified Person") from and against any and all losses, claims, damages, liabilities and expenses, joint or several, to which any such Indemnified |

BACCHUS CAPITAL

|  | Person may become subject arising out of or in connection with this Term Sheet, the transactions contemplated hereby or any related transaction, or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any such Indemnified Person is a party thereto, and to reimburse each such Indemnified Person upon demand for any reasonable legal or other expenses incurred in connection with investigating or defending any of the foregoing; provided that the foregoing indemnity will not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent they are found in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such Indemnified Person, and (b) to reimburse each Lender from time to time, upon presentation of a summary statement, for all reasonable out-of-pocket costs and expenses (including but not limited to costs and expenses of the Lenders' due diligence, travel expenses, reasonable fees, disbursements and other charges of counsel to the Lenders), in each case incurred in connection with the transactions contemplated hereby or any related transaction and the preparation of this Term Sheet or the loan documentation, and the administration, amendment, modification or waiver thereof (or any proposed amendment, modification or waiver thereof), whether or not closing of the transactions contemplated hereby occurs or any loan documentation is executed and delivered.<br><br>No Indemnified Person shall be liable for any indirect, special, punitive or consequential damages in connection with its activities related to this Term Sheet or the transactions contemplated hereby. |
| **Confidentiality / Non-Binding** | Each party hereto will keep and will cause each of its affiliates and representatives to keep the terms set forth herein confidential and shall not use or disclose such terms (other than with or to current directors, officers, shareholders, partners, members, employees, counsel, accountants and advisors for purposes of negotiating and finalizing and terms and transactions contemplated herein) without the express written consent of the other party hereto. |
| **Break-Up Fee** | If the Borrower (or its equity holders) (a) determines for any reason not to proceed with the closing of the DIP Financing as contemplated herein and proceeds with an alternate credit facility or loan in lieu thereof, (b) enters into a merger, sale of stock, change of control, |

|  |  |
|---|---|
|  | recapitalization or sale of substantially all of the assets of Borrower, or any other debt or equity issuance by the Borrower, or any other transaction similar to the foregoing with a third party other than Lender or (c) violates or breaches the "Exclusivity" provision herein, the Borrower shall immediately pay a break-up fee of $125,000 (the "**Break-Up Fee**") on the earliest date of the foregoing, or that the Borrower enters into, or announces its intention to enter into, such agreement, including any commitment letter, term sheet, letter of intent regarding the same. The Break-Up Fee shall be the sole and exclusive remedy for a default hereunder as the full, agreed upon and liquidated damages, and not as a penalty, and all other damages or remedies are hereby waived. The payment of such amount as liquidated damages is not intended as a forfeiture or penalty, but is intended to constitute liquidated damages. |
| **Exclusivity** | Upon acceptance of this Term Sheet, the Borrower, its employees, shareholders and representatives agree that they will not enter into or continue discussions or negotiations with any alternative sources of capital or debt, or enter into any agreements regarding alternative sources of capital or debt. This exclusivity period will lapse on July 1, 2011 if a firm commitment to lend has not been agreed to between Lender and Borrower. |
| **Expiration Date** | 7:00 pm P.S.T. on May 27, 2011, or earlier at the option of Lender if the Lender determines that it no longer has an interest in the transaction. All parties will endeavor to close this transaction promptly upon the entry of the Interim Order. |

*The paragraphs of this Indicative Term Sheet entitled "Confidentiality," "Indemnification", "Lender's Expenses", "Break-Up Fee" and "Exclusivity" are intended to be binding and enforceable. All other proposed terms and understandings set forth in this Indicative Term Sheet are intended only to provide a framework upon which to draft definitive loan documents and are not intended to be binding or enforceable. By signing this letter, both parties acknowledge that: (i) this letter is not a binding commitment on the part of any person to provide or arrange for financing on the terms and conditions set forth herein or otherwise; (ii) any such commitment on the part of the Lender would be in a separate written instrument signed by the Lender following satisfactory completion of the conditions contained herein; (iii) this letter supersedes any and all discussions and understandings, written or oral, between or among the Lender an any other person as to the subject matter hereof; and (iv) the Lender may, at any level of its approval process, decline any further consideration of the proposed financing, and terminate its approval process. Under no circumstances would the Lender or any of its affiliates be liable for any punitive, exemplary, consequential or indirect damages which may be alleged to result from this letter, or the proposed financing or any other related financing.*

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

SV 346,702,013v6 5-27-11

BACCHUS CAPITAL

IN WITNESS WHEREOF, this Term Sheet has been entered into as of this 27th day of May, 2011.

**DIP LENDER:**

**BACCHUS CAPITAL, L.P.**

By:  SBG Wines Capital GP LLC,
        its general partner

By: _____
Name: *Michael Balistreri*
Title: *Vice President*

**BORROWER:**

**OLSEN AGRICULTURAL
ENTERPRISES LLC**

By: _____
Name: JAMES OLSEN
Title: MANAGER

Exhibit B – Proposed Form of Interim Order

See attached.

1

2

3

4

5

6

7

8

9                      UNITED STATES BANKRUPTCY COURT

10                              DISTRICT OF OREGON

11   In re                                    )   Case No. 11-62723-fra11
                                              )
12   Olsen Agricultural Enterprises LLC,      )   Chapter 11
     an Oregon limited liability company,     )
13                                            )   INTERIM ORDER (I)
                          Debtor.             )   AUTHORIZING DEBTOR TO
14                                            )   OBTAIN POSTPETITION SECURED
                                              )   FINANCING, (II) GRANTING
15                                            )   ADEQUATE PROTECTION TO
                                              )   PREPETITION SECURED PARTIES
16                                            )   AND (III) SCHEDULING A FINAL
                                              )   HEARING
17

18          Olsen Agricultural Enterprises LLC  (the "Debtor")[1] having filed its motion

19   [Dkt #___] (the "Motion") for interim and final debtor in possession financing orders

20   authorizing it to, among other things, (i) incur postpetition secured indebtedness, (ii)

21   grant security interests and superpriority claims, and (iii) grant adequate protection,

22   pursuant to sections 105(a), 362, and 364(c), (d), and (e) of Title 11 of the United States

23   Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002,

24   _____

25          [1] Capitalized terms not otherwise defined herein shall have the meanings ascribed
     to them in the Preliminary Indicative Term Sheet for Debtor in Possession Credit Loan
26   dated May 27, 2011 (the "Term Sheet").

\7095\p Interim Order.Financing.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

2  and having sought the following relief:

3        (a)    This Court's authorization, pursuant to Bankruptcy Code sections 105(a),

4  362, and 364(c), (d), and (e) and Bankruptcy Rules 2002, 4001 and 9014, for the Debtor

5  to enter into a debtor in possession credit agreement pursuant to the terms and conditions

6  of the Term Sheet (a copy of which is attached to the Motion as Exhibit A) with Bacchus

7  Capital, L.P. (the "DIP Lender") for a loan (the "DIP Loan") in the aggregate principal

8  amount of $3,000,000 in accordance with the terms and conditions set forth in the DIP

9  Loan Documents. As used herein, the term "DIP Loan Documents" shall refer

10  collectively to the Term Sheet, the Interim Order, the DIP Credit Agreement dated June

11  __, 2011 and the Final Order (as defined below);

12        (b)    This Court's authorization to grant to the DIP Lender (i) superpriority

13  administrative expense status pursuant to section 364(c)(1) of the Bankruptcy Code with

14  respect to all obligations of the Debtor under the DIP Loan Documents, the Interim Order

15  and the Final Order (collectively, the "DIP Loan Obligations"), (ii) liens pursuant to

16  Bankruptcy Code sections 364(c)(2) and 364(c)(3), and (iii) priming liens pursuant to

17  section 364(d) of the Bankruptcy Code;

18        (c)    This Court's approval, pursuant to Bankruptcy Code sections 361 and 364,

19  of the form and manner of adequate protection set forth herein to be provided to (i) Rabo

20  Agrifinance, Inc. ("Rabo"); (ii) BFS International, LLC ("BFS"); (iii) United States of

21  America, acting by and through the Internal Revenue Service (the "IRS"); (iv) Ledeboer

22  Seed, LLC ("Ledeboer"); and (v) Callisons, Inc. d/b/a I.P. Callisons and Sons

23  ("Callisons") (collectively, the "Existing Secured Creditors" and the respective liens of

24  the Existing Secured Creditors, the "Existing Liens");

25        (d)    This Court's scheduling of an interim hearing (the "Interim Hearing")

26  pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an interim order in the

\7095\p Interim Order.fin.060711.wpd
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  form hereof (this "<u>Interim Order</u>") which, among other things, (i) approves, on an interim

2  basis, the postpetition secured financing to be made pursuant to the DIP Loan

3  Documents, (ii) authorizes the Debtor to execute the DIP Loan Documents and to obtain

4  advances on an interim basis in accordance with the DIP Loan Documents in the

5  aggregate principal amount of $500,000, and (iii) grants adequate protection to the

6  Existing Secured Creditors;

7      (e)    This Court's scheduling of a final hearing (the "<u>Final Hearing</u>") to consider

8  entry of a final order (the "<u>Final Order</u>") which, among other things, (i) approves, on a

9  final basis, the DIP Loan Documents, (ii) authorizes, on a final basis, the DIP Loan to be

10  made pursuant to the DIP Loan Documents in the aggregate principal amount of

11  $3,000,000 for the purposes of funding expenditures consistent with the budget attached

12  hereto as <u>Exhibit A</u> (the "<u>Approved Budget</u>"), subject to the variances permitted herein,

13  and (iii) grants, on a final basis, adequate protection to the Existing Secured Creditors;

14  and

15      (f)   This Court's finding that notice of the Interim Hearing was sufficient and

16  adequate, and no other or further notice being required.

17      The Interim Hearing having been held on June 13, 2011; and based upon all of the

18  pleadings filed with this Court, the evidence presented at the Interim Hearing and the

19  entire record herein; and this Court having heard and resolved or overruled all objections

20  to the interim relief requested in the Motion; and this Court having noted the appearances

21  of all parties in interest; and it appearing that the relief requested in the Motion is in the

22  best interests of the Debtor and its estate; and after due deliberation and consideration,

23  and sufficient cause appearing therefor,

24  / / /

25  / / /

26

\7095\p Interim Order final.wpd    GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

**IT IS HEREBY FOUND:**[2]

A.    <u>Petition Date</u>.  On June 1, 2011 (the "<u>Petition Date</u>"), the Debtor filed herein a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing in the management and possession of its business and properties as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been requested or appointed in this case, and the United States trustee has not appointed an official committee of creditors.

B.    <u>The Debtor's Prepetition Merger</u>.  The Debtor is the surviving entity of a merger transaction that was consummated on June 1, 2011.  In the merger transaction, Olsen Agricultural Company, Inc., an Oregon corporation ("<u>OAC</u>"), Jenks-Olsen Land Co., an Oregon general partnership ("<u>JOLC</u>"), Olsen Vineyard Company, LLC, an Oregon limited liability company ("<u>OVC</u>"), and The Olsen Farms Family Limited Partnership ("<u>OFFLP</u>") were merged with and into the Debtor.  OAC, JOLC, OVC and OFFLP were co-borrowers under the term loan originally made by AXA Equitable Life Insurance Company and subsequently purchased by Rabo, and OAC, JOLC and OVC were co-borrowers under the line of credit loans made by Rabo Agrifinance, Inc.  In connection with the merger transaction, other related parties that pledged real estate collateral to support the line of credit loans agreed to contribute such property to the Debtor in exchange for the right to receive ownership interests in the Debtor.

C.    <u>The Debtor's Business</u>.   The Debtor operates an agricultural enterprise on approximately 7,762 acres of owned and leased land located in Benton, Linn and Polk Counties.  Its business is  comprised principally of three divisions:  (a) Olsen Seed Company, which produces and sells a variety of grass seed and grains on approximately

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

\7095\p Interim Order Financing.wpd

1   5,934 acres; (b) Olsen Agriculture, which grows and sells peppermint, nursery stock,

2   squash, hazelnuts and blueberries on approximately 1,334 acres; and (c) Olsen Family

3   Vineyards, which grows a variety of grapes on approximately 494 acres and produces

4   and sells quality wines under the "Viridian" label as well as private labels.  As of the date

5   hereof, the Debtor has 45 employees, including management personnel.

6       D.      Jurisdiction; Venue.  This Court has jurisdiction over this matter pursuant

7   to 28 U.S.C. §§157 and 1334 and LR 2100.1.  This is a core proceeding pursuant to 28

8   U.S.C. §157(b)(2)(D).  Venue is proper under 28 U.S.C. § 1408.

9       E.      Debtor's Stipulations.  In requesting postpetition financing under the DIP

10  Loan Documents, the Debtor acknowledges, represents, stipulates, and agrees that:

11          (i)      in entering into the DIP Loan Documents, and as consideration

12  therefor, the Debtor hereby agrees that until such time as all DIP Loan Obligations are

13  indefeasibly paid in full in cash and the commitments related thereto are terminated in

14  accordance with the terms of the DIP Loan Documents, the Debtor shall not in any way

15  grant, seek to grant, or cause to be granted any lien and/or claim that is senior to or *pari*

16  *passu* with any of the liens, security interests and claims provided under this Interim

17  Order to the DIP Lender, including, without limitation, by offering a subsequent lender or

18  any other party a superior or *pari passu* lien or claim pursuant to Bankruptcy Code

19  section 364(d), or otherwise, except with respect to the Carve-Out; and

20          (ii)     the DIP Lender is not and shall not be deemed to be a control person

21  or insider of the Debtor by virtue of any of the actions taken by such parties in respect of

22  or in connection with the DIP Loan Obligations.

23      F.      Purpose and Necessity of Financing.  The Debtor requires the financing

24  described in the Motion to fund the necessary and critical ordinary course expenses of

25  maintaining and preserving its business consistent with the terms set forth in the DIP

26  Loan Documents, and for other purposes permitted by the DIP Loan Documents.  If the

Page 5 of 27 -   INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED
                 FINANCING, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
                 AND (III) SCHEDULING A FINAL HEARING

\7095\p Interim Order.doc

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1    Debtor does not obtain authorization to borrow under the DIP Loan Documents and the

2    DIP Loan is not approved, the Debtor will suffer immediate and irreparable harm.  The

3    Debtor is unable to obtain adequate unsecured credit allowable as an administrative

4    expense under Bankruptcy Code section 503, or other financing under Bankruptcy Code

5    sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP

6    Loan Documents based on the totality of the circumstances.  Moreover, loan advances in

7    the amount provided by the DIP Loan Documents are not available to the Debtor without

8    granting the DIP Lender superpriority claims, priming liens, and security interests,

9    pursuant to Bankruptcy Code sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), as

10    provided in this Interim Order and the DIP Loan Documents.  After considering all

11    alternatives, the Debtor determined, in the exercise of its prudent business judgment, that

12    the DIP Loan provided under the DIP Loan Documents represents the best financing

13    package available to it and is in the best interests of the estate.  The adequate protection

14    provided herein and other benefits and privileges contained herein are consistent with and

15    authorized by the Bankruptcy Code and adequately protect any non-consenting parties'

16    interests in the Collateral.

17        G.    Good Faith.  The DIP Loan Documents have been negotiated in good faith

18    and at arms' length by the Debtor and the DIP Lender.  The DIP Loan and/or other

19    financial accommodations made to the Debtor by the DIP Lender pursuant to this Interim

20    Order and/or the DIP Loan Documents shall be deemed to have been extended by the

21    DIP Lender in good faith, as that term is used in Bankruptcy Code section 364(e), and the

22    DIP Lender shall be entitled to all protections afforded thereunder, including, without

23    limitation, the full protection of Bankruptcy Code section 364(e) in the event that this

24    Interim Order or any provision thereof is vacated, reversed or modified, on appeal or

25    otherwise.  The terms of the DIP Loan Documents are fair and reasonable, reflect the

26    Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and

\7095\p Interim Order.doc 06/07/11
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  are supported by reasonably equivalent value and fair consideration.

2       H.    <u>Consideration</u>.  The Debtor will receive and has received fair and

3  reasonable consideration in exchange for access to the DIP Loan and all other financial

4  accommodations provided under the DIP Loan Documents and this Interim Order.

5       I.    <u>Notice</u>.  Sufficient and adequate notice of the Interim Hearing and the entry

6  of this Interim Order have been given in accordance with Bankruptcy Rule 4001, and no

7  other or further notice need be given for entry of this Interim Order.

8       J.    <u>Immediate Entry of Interim Order</u>.  The Debtor has requested immediate

9  entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  The Motion and this

10  Interim Order comply with Local Bankruptcy Rule 4001-2.  The permission granted

11  herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary

12  to avoid immediate and irreparable harm to the estate.  Entry of this Interim Order is in

13  the best interests of the Debtor's estate as its implementation will provide for payment of

14  the necessary and critical ordinary course expenses of maintaining and preserving the

15  Debtor's business and will further enhance the Debtor's prospects for a successful

16  reorganization.

17       Based upon the foregoing findings, acknowledgements, and conclusions, and good

18  and sufficient cause appearing therefor,

19  **IT IS HEREBY ORDERED:**

20       1.    <u>Disposition</u>.  The Motion is granted on an interim basis, subject to the terms

21  set forth herein, and the terms and provisions of the DIP Loan Documents are approved

22  in all respects.  Any objections to the Motion that have not previously been withdrawn or

23  resolved are hereby overruled on their merits.  This Interim Order shall be valid, binding

24  on all parties in interest, and fully effective immediately upon entry notwithstanding the

25  possible application of Bankruptcy Rules 6004(h), 7062, and 9014.  The terms and

26  provisions of the DIP Loan Documents are approved on an interim basis.

\7095\p Interim Order Financing.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    2.    <u>Authorization</u>.  The Debtor is hereby authorized to immediately obtain a

2   DIP Loan, pursuant to the terms of this Interim Order and subject to the terms of the DIP

3   Loan Documents, in the aggregate principal amount of $500,000.  Advances under the

4   DIP Loan Documents shall be used by the Debtor to fund, in accordance with the DIP

5   Loan Documents, its expenses in accordance with the Approved Budget (and the

6   variances permitted thereto).

7    3.    <u>Authority to Execute and Deliver Necessary Documents</u>.

8        (a)    The Debtor is authorized to negotiate, prepare, enter into, and

9   deliver the DIP Loan Documents, in each case including any amendments thereto.  The

10  Debtor is further authorized and directed to negotiate, prepare, enter into and deliver any

11  UCC financing statements, pledge and security agreements, and mortgages or deeds of

12  trust encumbering all of the Collateral and securing all of the DIP Loan Obligations.

13       (b)    The Debtor is hereby further authorized to (i) perform all of its

14  obligations under the DIP Loan Documents, and such other agreements as may be

15  required by the DIP Loan Documents to give effect to the terms of the financing provided

16  for therein and in this Interim Order, and (ii) perform all acts required under the DIP

17  Loan Documents and this Interim Order, including, without limitation, the payment of

18  loan fees and the reimbursement of present and future costs and expenses (including,

19  without limitation, the DIP Lender's attorneys' and other advisors' fees and expenses),

20  paid or incurred by the DIP Lender as provided for in the DIP Loan Documents.  All such

21  unpaid fees, costs, and other expenses shall be included and constitute part of the

22  principal amount of the DIP Loan Obligations and be secured by the Collateral (as

23  defined below) as provided in the DIP Loan Documents and this Interim Order.

24       (c)    All DIP Loan Obligations shall constitute valid and binding

25  obligations of the Debtor, enforceable against it and its successors and assigns (including,

26  without limitation, any trustee or other estate representative in this Chapter 11 case or in

\7095\p Interim Order.mm 6/6/11       GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  any superseding Chapter 7 case), in accordance with the terms of the DIP Loan

2  Documents and the terms of this Interim Order, and no obligation, payment, transfer or

3  grant of security under the DIP Loan Documents or this Interim Order shall be voidable

4  or recoverable under the Bankruptcy Code or under any other applicable law or subject to

5  any avoidance, recharacterization, subordination (whether equitable, contractual or

6  otherwise), or any other challenges under the Bankruptcy Code or any other applicable

7  law or regulation by any person or entity.

8       4.    DIP Lender's Superpriority Claim.  The DIP Lender is hereby granted an

9  allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant

10  to Bankruptcy Code section 364(c)(1) for all DIP Loan Obligations, having priority over

11  any and all other administrative expense claims, now existing or hereafter arising, of any

12  kind whatsoever, including, without limitation, all administrative expenses of the kinds

13  specified in or arising or ordered under Bankruptcy Code sections 503(b), 507(b), or

14  otherwise, subject and subordinate in priority of payment only to the payment of the

15  Carve-Out.  Except as set forth herein, no other superpriority administrative expense

16  claims under Bankruptcy Code section 364(c)(1) shall be granted or allowed in this

17  Chapter 11 case.

18       5.    DIP Liens.

19            (a)    The DIP Loan Obligations shall be secured by:

20                 (i)    valid, properly perfected, first priority senior liens on all now

21  existing and hereafter acquired (whether before or after the Petition Date) assets of the

22  Debtor of any nature whatsoever, real and personal, tangible and intangible, including,

23  without limitation, accounts receivable, general intangibles, payment intangibles,

24  supporting obligations, investment property, development orders, environmental permits

25  or other approvals to develop any real property, machinery, equipment, subsidiary capital

26  stock, chattel paper, documents, instruments, deposit accounts, contract rights, tax

Page 9 of 27 -   INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED
                FINANCING, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
                AND (III) SCHEDULING A FINAL HEARING                              \7095\p Interim Order.6.3.2011.wpd

                                                                    GREENE & MARKLEY, P.C.
                                                                    1515 S.W. Fifth Avenue, Suite 600
                                                                    Portland, OR 97201
                                                                    Telephone: (503) 295-2668
                                                                    Facsimile: (503) 224-8434

1 refunds, and all rights, claims, and other causes of action of the Debtor and the Debtor's

2 estate (including any actions asserted by the Debtor or any subsequently appointed

3 trustee or representative of the Debtor's estate under any section of the Bankruptcy Code,

4 and in each case, all proceeds resulting therefrom, excluding, however, avoidance actions

5 under sections 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code)

6 (collectively, the "Collateral") pursuant to section 364(d)(1) of the Bankruptcy Code,

7 with such liens securing the DIP Loan Obligations to prime and be senior in priority to all

8 existing security interests in and liens on the Collateral other than (A) statutory liens that

9 secure claims of governmental units for ad valorem property taxes or similar impositions,

10 and (B) validly perfected purchase money security interests in equipment extant as of the

11 Petition Date (collectively, the "Non-Primed Liens"); provided, however, if it is

12 determined that the Debtor has an interest in any commercial tort claims or tax refunds

13 that are property of the Debtor's estate, the proceeds of such interests shall be part of the

14 Collateral;

15         (ii)    perfected, first-priority senior liens, pursuant to Section

16 364(c)(2) of the Bankruptcy Code, on that portion of the Collateral that is unencumbered

17 property of the Debtor; and

18         (iii)    perfected, second-priority liens, pursuant to Bankruptcy Code

19 section 364(c)(3), on that portion of the Collateral subject to any Non-Primed Liens.

20         (b)    In each case, the Collateral shall also include any and all rents,

21 issues, products, offspring and profits generated by any item of Collateral, without the

22 necessity of any further action or any kind or nature by the DIP Lender in order to claim

23 or perfect such interests.

24         (c)    The DIP Liens shall not at any time be (i) made subject or

25 subordinate to, or made *pari passu* with, any other lien, security interest or claim existing

26 as of the Petition Date, or created under Bankruptcy Code section 364(d) or otherwise,

\7095\p Interim Order re DIP Financing
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1    other than the Non-Primed Liens, or (ii) subject to any lien or security interest that is

2    avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code

3    section 551.

4              (d)    The DIP Liens, Superpriority Claim, and other rights and remedies

5    granted under this Interim Order to the DIP Lender shall continue in this Chapter 11 case

6    and in any superseding Chapter 7 case, and such liens and security interests shall

7    maintain their priority as provided in this Interim Order until all the DIP Loan

8    Obligations have been indefeasibly paid in full in cash and completely satisfied and the

9    DIP Lender's commitments have been terminated in accordance with the DIP Loan

10   Documents.

11      6.    <u>Fees</u>.  The Debtor is hereby authorized to pay all such interest, fees, costs,

12   and expenses in accordance with the terms of the DIP Loan Documents and this Interim

13   Order, without the DIP Lender or its counsel having to file any further application with

14   this Court for approval or payment of such fees, costs or expenses; provided, however,

15   that the DIP Lender shall furnish summary documentation (which may be redacted in

16   part) of the same to the U.S. Trustee or any official committee of unsecured creditors

17   ("<u>Committee</u>") appointed in this Chapter 11 case upon written request.  For the avoidance

18   of doubt, such fees include the Commitment Fee (as described in the Term Sheet) and an

19   exit fee equal two percent (2%) of the maximum principal amount of the DIP Loan,

20   which shall be fully earned and due and payable upon the Maturity Date.

21      7.    <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtor and the

22   DIP Lender may enter into any non-material amendments, consents, waivers or

23   modifications to the DIP Loan Documents, including amendments to the Approved

24   Budget, in each case without the need for further notice and hearing or any order of this

25   Court; <u>provided</u>, <u>however</u>, that no such amendment or waiver shall increase the amount

26   of the DIP Lender's lending commitment.

\7095\p Interim Order.doc/jh3004    **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1    8.    Term.  All DIP Loan Obligations shall be due and payable, and repaid in

2    full, in cash, on the date (the "Maturity Date") that is the first to occur of: (i) February 15,

3    2012; (ii) the effective date of a plan of reorganization confirmed in this Chapter 11 case;

4    (iii) conversion or dismissal of this Chapter 11 case; (iv) appointment of a trustee in this

5    Chapter 11 case; or (v) the occurrence of an Event of Default under and as defined in the

6    DIP Loan Documents.

7    9.    Interest on DIP Loan Obligations.  Interest on the DIP Loan Obligations

8    shall accrue at twelve percent (12%) per annum and be payable monthly in arrears.  The

9    default rate of interest will be four percent (4%) higher than the rate otherwise payable.

10    10.    Adequate Protection for Existing Secured Creditors.  The Existing Secured

11    Creditors have not consented to the incurrence of the DIP Loan Obligations by the

12    Debtor under the DIP Loan Documents and the Debtor's granting of priming liens in

13    connection therewith.  The Debtor acknowledges and stipulates that the Existing Secured

14    Creditors are entitled, pursuant to Bankruptcy Code sections 361 and 364(d)(1), to

15    adequate protection of their respective interests in the Debtor's prepetition property (the

16    "Prepetition Collateral"), in exchange for the priming of their respective security interests

17    in and liens on the Prepetition Collateral by the DIP Liens being granted to the DIP

18    Lender pursuant to the DIP Loan Documents and this Interim Order.  As adequate

19    protection, the Existing Secured Creditors are hereby granted the protections described in

20    clauses (a) and (b) below:

21    (a)    Adequate Protection Liens.  Pursuant to Bankruptcy Code sections

22    361 and 364(d), as adequate protection of the respective interests of the Existing Secured

23    Creditors in the Prepetition Collateral against any diminution in the value of their

24    interests in the Prepetition Collateral resulting from the grant of the DIP Liens, each of

25    the Existing Secured Creditors is hereby granted a continuing valid, binding, enforceable

26    and perfected postpetition lien on the Collateral (the "Adequate Protection Liens").  The

\7095\p Interim Order.doc (SMM)
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  Adequate Protection Liens shall be junior in priority only to: (i) the DIP Liens, (ii) the

2  Replacement Liens granted under the Interim Order Authorizing Debtor to Use Cash

3  Collateral entered herein on June 3, 2011, as Document #23 (the "Interim Cash Collateral

4  Order") and under any subsequent cash collateral orders, and (iii) all validly perfected

5  and enforceable security interests in and liens on the Collateral extant as of the Petition

6  Date; and will have the same validity, enforceability and relative priorities as the

7  respective prepetition security interests and liens of the Existing Secured Creditors.

8          (b)     Adequate Protection Claims.  As further adequate protection of the

9  respective interests of the Existing Secured Creditors in the Prepetition Collateral against

10  any diminution in the value of their interests in the Prepetition Collateral resulting from

11  the grant of the DIP Liens, each of the Existing Secured Creditors shall have an

12  administrative expense claim under Bankruptcy Code section 503(b) that will have

13  superpriority as provided in Bankruptcy Code section 507(b) (the "Adequate Protection

14  Claims").  The Adequate Protection Claims shall be junior in priority to (i) the DIP

15  Lender's Superpriority Claim, and (ii) the superpriority administrative expense claims

16  awarded to the Existing Secured Creditors under the Interim Cash Collateral Order and

17  under any subsequent cash collateral orders.

18          11.    Carve-Out.

19          Notwithstanding anything to the contrary in the Approved Budget or

20  otherwise, prior to the occurrence of an Event of Default, the allowed fees and expenses

21  incurred by estate professionals that may be paid prior to the occurrence of an Event of

22  Default shall be subject to an aggregate cap of $600,000.  Upon the occurrence and

23  during the continuance of an Event of Default with respect to which the DIP Lender

24  provides written notice to counsel for the Debtor of the cessation of funding under the

25  DIP Loan Documents (the "Carve-Out Trigger Notice"), to the extent unencumbered

26  funds are not available to pay allowed administrative expenses in full, the DIP Liens, the

\7095\p Interim Order Financing.wpd
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1   Superpriority Claim, the Adequate Protection Claims and the Adequate Protection Liens

2   shall be subject to the payment of the Carve-Out.  For purposes of this Interim Order, the

3   "Carve-Out" shall mean (i) an amount not to exceed $300,000 on account of all allowed

4   professional fees and expenses incurred by the estate professionals prior to delivery of the

5   Carve-Out Trigger Notice, but which fees and expenses shall not exceed the amounts set

6   forth in the Approved Budget for such items through the date of such notice less any

7   amounts actually paid to or on account of such professionals with respect to such period

8   of time, plus (ii) $50,000 for the payment of allowed professional fees and expenses

9   (including those of a Chapter 7 trustee and its professionals) incurred by the estate arising

10  after delivery of the Carve-Out Trigger Notice; plus (iii) fees incurred pursuant to 28

11  U.S.C. § 1930(a)(6) and fees payable to the clerk of the Bankruptcy Court, to the extent

12  such fees were incurred prior to delivery of the Carve-Out Trigger Notice.  All amounts

13  payable as part of the Carve-Out shall only be paid to the extent subsequently allowed by

14  order of this Court.

15          (a)      No portion of the Carve-Out may be used in connection with the

16  investigation (including discovery proceedings), initiation or prosecution of any claims,

17  causes of action, objection or other litigation against the DIP Lender.

18          (b)      The DIP Lender shall not be responsible for the direct payment or

19  reimbursement of any fees or disbursements of any professionals incurred in connection

20  with this Chapter 11 case or any superseding Chapter 7 case.  Nothing in this Interim

21  Order or otherwise shall be construed to obligate the DIP Lender in any way to pay

22  compensation to or reimburse expenses of any professional in this case, or to guarantee

23  that the Debtor has sufficient funds to pay such compensation or reimbursement, except

24  to the extent of the Carve-Out.

25          (c)      No liens, claims, interests or priority status, other than the Carve-

26  Out, having a lien or administrative priority superior to *pari passu* with that of the DIP

\7095\p Interim Order re DIP Fin.wpd
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  Liens or the Superpriority Claim granted by this Interim Order, shall be granted while

2  any portion of the DIP Loan Obligations remain outstanding, or any commitment under

3  the DIP Loan Documents remains in effect, without the prior written consent of the DIP

4  Lender.

5       (d)    Effective upon entry of this Interim Order, during the period

6  between entry of this Interim Order and entry of the Final Order, no party shall be

7  entitled, directly or indirectly, to (i) charge the Carve-Out or the Collateral, whether by

8  operation of Bankruptcy Code sections 105, 506(c) or 552(b) or otherwise, or (ii) direct

9  the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal

10  or otherwise control the disposition of Collateral after an Event of Default under the DIP

11  Loan Documents, or termination or breach under the DIP Loan Documents.  Effective

12  upon entry of the Final Order, no party shall be entitled, directly or indirectly, to (i)

13  charge the Carve-Out or the Collateral, whether by operation of Bankruptcy Code

14  sections 105, 506(c) or 552(b) or otherwise, or (ii) direct the exercise of remedies or seek

15  (whether by order of this Court or otherwise) to marshal or otherwise control the

16  disposition of Collateral after an Event of Default under the DIP Loan Documents, or

17  termination or breach under the DIP Loan Documents.

18       12.    Release.  Upon entry of the Final Order, the Debtor, on behalf of itself and

19  its estate (including any successor trustee or other estate representative in the Bankruptcy

20  Case or Successor Case), forever and irrevocably (i) releases, discharges, and acquits the

21  DIP Lender, and each of its respective former, current or future officers, employees,

22  directors, agents, representatives, owners, members, partners, financial advisors, legal

23  advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and

24  predecessors in interest of and from any and all claims, demands, liabilities,

25  responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of

26  every type, including, without limitation, any so-called "lender liability" or equitable

\7095\p Interim Order.doc 6/7/2011

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1   subordination claims or defenses, solely with respect to or relating to the negotiation and

2   entry into the DIP Loan Documents, and (ii) waives any and all defenses (including,

3   without limitation, offsets and counterclaims of any nature or kind) as to the validity,

4   perfection, priority, enforceability and nonavoidability of the DIP Liens and

5   Superpriority Claim.

6       13.    <u>Limitation on Additional Surcharges</u>.  No action, inaction or acquiescence

7   by the DIP Lender, including funding the Debtor's ongoing operations under this Interim

8   Order, shall be deemed to be or shall be considered as evidence of any alleged consent by

9   the DIP Lender to a charge against the Collateral pursuant to Bankruptcy Code sections

10  506(c), 552(b) or 105(a), and as provided in paragraph 11(d) above, no such costs, fees or

11  expenses shall be so charged against the Collateral without the prior written consent of

12  the DIP Lender, to the extent of its interests in such Collateral.  The DIP Lender shall not

13  be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar

14  doctrine with respect to the Collateral.

15      14.    <u>Additional Perfection Measures</u>.  The DIP Liens and the Adequate

16  Protection Liens shall be perfected by operation of law immediately upon entry of this

17  Interim Order.  None of the Debtor, the DIP Lender, or the Existing Secured Creditors

18  shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee

19  waivers, warehouseman waivers or other waiver or consent, or to file or record financing

20  statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar

21  instruments in any jurisdiction, or obtain consents from any licensor or similarly situated

22  party in interest, or take any other action in order to validate and to perfect the DIP Liens

23  or the Adequate Protection Liens.

24          (a)    The DIP Lender and the Existing Secured Creditors may, but shall

25  not be obligated to, obtain consents from any landlord, licensor or other party in interest,

26  file mortgages, financing statements, notices of lien or similar instruments, or otherwise

\7095\p Interim Order Final.wpd    GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1    record or perfect such security interests and liens, in which case:

2            (i)    all such documents shall be deemed to have been recorded

3    and filed as of the time and on the date of entry of this Interim Order; and

4            (ii)    no defect in any such act shall affect or impair the validity,

5    perfection and enforceability of the liens granted hereunder.

6            (b)    In lieu of obtaining such consents or filing any such mortgages,

7    financing statements, notices of lien or similar instruments, the DIP Lender and Existing

8    Secured Creditors may, but shall not be obligated to, file a true and complete copy of this

9    Interim Order in any place at which any such instruments would or could be filed,

10   together with a description of Collateral or Prepetition Collateral, as applicable, and such

11   filings by the DIP Lender and the Existing Secured Creditors shall have the same effect

12   as if such mortgages, deeds of trust, financing statements, notices of lien or similar

13   instruments had been filed or recorded at the time and on the date of entry of this Interim

14   Order.

15       15.    <u>Events of Default</u>.  The occurrence of any of the following shall constitute

16   an Event of Default under this Interim Order upon five (5) business days' written notice

17   to the Debtor by the DIP Lender:

18           (a)    the failure to pay the DIP Loan Obligations in cash in full upon the

19   Maturity Date, or when due if prior to the Maturity Date;

20           (b)    breach by the Debtor of any of its representations, warranties or

21   covenants under the DIP Loan Documents, which breach is not cured within ten (10)

22   business days of written notice by the DIP Lender to the Debtor of such breach and

23   written notice shall also be provided to the U.S. Trustee and any Committee appointed in

24   this case;

25           (c)    the filing of a plan of reorganization for the Debtor that does not

26   provide for the payment in cash in full of the DIP Loan Obligations;

\7095\p Interim Order.Final.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1      (d)    entry of an order to recover from any portion of the Collateral any

2   costs or expenses of preserving or disposing of such Collateral under Bankruptcy Code

3   section 506(c);

4      (e)    the occurrence of a Material Adverse Effect as that term is defined in

5   the DIP Loan Agreement; or

6      (f)    the commencement of litigation which, if successful, would have a

7   material adverse impact on the Debtor's ability to repay the DIP Loan Obligations or

8   which would challenge in any respect the DIP Loan Obligations or the DIP Liens.

9      16.    <u>Automatic Stay Vacated and Modified</u>.

10     (a)    Upon the occurrence of an Event of Default, (x) the automatic stay

11  of Bankruptcy Code section 362 is hereby vacated and modified to the extent necessary

12  to permit the DIP Lender to immediately (A) deliver a notice of an Event of Default, and

13  (B) terminate or suspend any outstanding advances or use thereof, and (y) after five (5)

14  business days' written notice from the DIP Lender of an Event of Default (within which

15  period the Debtor may only dispute the DIP Lender's declaration of an Event of Default

16  on the basis of the events described in paragraph 15(b) or 15(e) above in the Bankruptcy

17  Court on an expedited basis), the automatic stay shall terminate, without further order of

18  the Court and without the need for filing any motion for relief from the automatic stay or

19  any other pleading, for the limited purpose of permitting the DIP Lender to do any one or

20  more of the following:  (A) charge the default rate of interest on the DIP Loan

21  Obligations, and (B) declare the principal of and accrued interest, fees and expenses

22  constituting the DIP Loan Obligations to be due and payable.  Upon and after the

23  occurrence of an Event of Default, except as provided in the preceding sentence, the DIP

24  Lender shall be required to file a motion seeking relief from the automatic stay (a "<u>Stay</u>

25  <u>Motion</u>") to enforce any of its other rights or remedies, which motion shall be heard on

26  no more than five (5) days' notice and the only issue to be adjudicated on the Stay

\7095\p Interim Order.docx.mm.wpd
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1    Motion shall be whether an Event of Default occurred under the DIP Loan Documents.

2    The Debtor is deemed to waive any right under Bankruptcy Code section 105 to enjoin

3    the exercise of the rights and remedies by the DIP Lender following an Event of Default.

4              (b)       The rights and remedies of the DIP Lender specified herein are

5    cumulative and not exclusive of any rights or remedies that the DIP Lender may have

6    under the DIP Loan Documents or otherwise.  The Debtor shall cooperate fully with the

7    DIP Lender in its exercise of rights and remedies, whether against the Collateral or

8    otherwise.

9              (c)       This Court shall retain exclusive jurisdiction to hear and resolve any

10   disputes and enter any orders required by the provisions of this Interim Order and relating

11   to the application, re-imposition or continuance of the automatic stay of Bankruptcy

12   Code section 362(a) or other injunctive relief requested.

13             17.     <u>Loan Advances, Budget and Reporting</u>.

14             (a)       Proceeds from the DIP Loan shall be used exclusively for funding

15   the expenses (collectively, the "<u>Approved Expenses</u>") which are set forth in the

16   Approved Budget. The Debtor may make expenditures in excess of the amounts set forth

17   in the Approved Budget so long as the total variance does not exceed, on a line-item

18   basis, 10 percent of the total budgeted expenses (exclusive of legal or professional fees

19   and expenses) through the end of the applicable period, and shall be permitted to carry

20   forward from a prior four-week period to the next two succeeding four-week periods any

21   unused portion of the aggregated actual amounts attributable to the prior four-week

22   period.  For the avoidance of doubt, no portion of the DIP Loan, the Collateral securing

23   the DIP Loan, the proceeds of the DIP Loan or the Carve-Out may be used in connection

24   with discovery proceedings, initiation or prosecution of any claims, causes of action,

25   objection or other litigation against the DIP Lender or with respect to the DIP Loan

26   Obligations.

\7095\p Interim Order.re-drafted    GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

(b)      On each Friday of every week, beginning June 24, 2011, the Debtor

shall deliver:  (i) a variance report detailing (x) the cash expenditures for the prior week

and a comparison to the Approved Budget for that week, (y) the cumulative cash

expenditures for all of the prior weeks since the Conversion Date and as compared to the

Approved Budget for such weeks, and (z) a narrative explanation of the variances

between the actual weekly expenditures and the budgeted weekly expenditures; and (ii)

an updated weekly cash flow forecast for the then remaining period of the Approved

Budget (the "Updated Budget"), consistent with the Approved Budget (collectively, the

"Weekly Reports").  The Weekly Reports shall be in form and substance satisfactory to

the DIP Lender.  Subject to the approval of the DIP Lender, which shall not be

unreasonably withheld and which shall not require any further Bankruptcy Court

approval, the Updated Budget shall be deemed the Approved Budget.  Compliance with

the Approved Budget shall be measured on a weekly basis.

(c)      The Debtor shall additionally provide to the DIP Lender the

following reports and information:

(i)      monthly financial statements, operating reports, and budget

and operating plans for each such monthly period (the "Monthly Reports"); and

(ii)      on an as-requested basis all such other reports and

information respecting the Debtor' business, financial condition or prospects as the DIP

Lender from time to time reasonably requests.

(d)      The delivery of the Weekly Reports and the Monthly Reports shall

be accompanied by a certification from the Debtor that such Weekly Reports and

Monthly Reports are true and correct in all material respects.

18.      Access.  The DIP Lender and its respective agents and advisors shall have

full access, upon reasonable notice during normal business hours, to the Debtor' business

records, business premises, and to the Collateral to enable the DIP Lender or its agents

\7095\p Interim Order.final.wpd
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1 and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral,

2 (b) inspect and review the financial records and all other records of the Debtor

3 concerning the operation of the Debtor's business and the Collateral, and (c) evaluate the

4 Debtor's overall financial condition and all other records relating to the operations of the

5 Debtor and the Collateral. The Debtor shall fully cooperate with the DIP Lender

6 regarding such reviews, evaluations, and inspections, and shall make their employees and

7 professionals available to the DIP Lender and its professionals and consultants to conduct

8 such reviews, evaluations, and inspections.

9     19.    Insurance Policies. Upon entry of this Interim Order, the DIP Lender shall

10 be, and shall be deemed to be, without any further action or notice, named as additional

11 insureds and loss payees, as applicable, on each insurance policy maintained by the

12 Debtor which in any way relates to the Collateral. The Debtor is authorized and directed

13 to take any actions necessary to have the DIP Lender be added as an additional insured

14 and loss payee on each insurance policy.

15     20.    Indemnification. The Debtor shall indemnify and hold harmless the DIP

16 Lender, its affiliates and each of the respective officers, directors, members, partners,

17 employees, agents, advisors, attorneys and representatives of each (each, an "Indemnified

18 Party") from and against any and all claims, damages, losses, liabilities and expenses

19 (including, without limitation, reasonable fees and disbursements of counsel), joint or

20 several, that may be incurred by or asserted or awarded against any Indemnified Party

21 (including, without limitation, in connection with or relating to any investigation,

22 litigation or proceeding or the preparation of any defense in connection therewith), in

23 each case arising out of or in connection with or by reason of the DIP Loan, the Interim

24 Order, the Final Order, or any of the transactions contemplated thereby, or any actual or

25 proposed use of the proceeds of the DIP Loan, except to the extent such claim, damage,

26 loss, liability or expense is found in a final judgment by a court of competent jurisdiction

\7095\p Interim Order re Borrowing
GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1   to have resulted from such Indemnified Party's gross negligence or willful misconduct.

2   In the case of an investigation, litigation or other proceedings to which the indemnity in

3   this paragraph applies, such indemnity shall be effective whether or not such

4   investigation, litigation or proceeding is brought by the Debtor, any of its managers,

5   equity owners or creditors, an Indemnified Party or any other person, or an Indemnified

6   Party is otherwise a party thereto and whether or not the transactions contemplated by the

7   DIP Loan Documents are consummated.  The Debtor further agrees that no Indemnified

8   Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to

9   the Debtor or any of its equity owners or creditors for or in connection with the

10  transactions contemplated by the DIP Loan Documents, except for direct damages (as

11  opposed to special, indirect, consequential or punitive damages (including, without

12  limitation, any loss of profits, business or anticipated savings)) determined in a final

13  judgment by a court of competent jurisdiction to have resulted from such Indemnified

14  Party's gross negligence or willful misconduct.

15      21.  <u>Successors and Assigns</u>.  The DIP Loan Documents and the provisions of

16  this Interim Order shall be binding upon the Debtor, the DIP Lender, the Existing

17  Secured Creditors, and each of their respective successors and assigns, and shall inure to

18  the benefit of the Debtor, the DIP Lender, the Existing Secured Creditors and each of

19  their respective successors and assigns, including, without limitation, any trustee,

20  responsible officer, estate administrator or representative, or similar person appointed in a

21  case for the Debtor under any chapter of the Bankruptcy Code.  Upon entry of the Final

22  Order, the provisions of the DIP Loan Documents, the Interim Order and the Final Order

23  shall also be binding on all of the Debtor's creditors, equity owners, and all other parties

24  in interest.

25      22.  <u>Binding Nature of Agreement</u>.  Each of the DIP Loan Documents to which

26  the Debtor is or will become a party shall constitute legal, valid, and binding obligations

\7095\p Interim Order.the.8.wpd    GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents

2  have been or will be properly executed and delivered to the DIP Lender by the Debtor as

3  soon as is practicable after entry of this Interim Order.  The rights, remedies, powers,

4  privileges, liens, and priorities of the DIP Lender provided for in this Interim Order and

5  in the DIP Loan Documents shall not be modified, altered or impaired in any manner by

6  any subsequent order (including a confirmation order), by any plan in this Chapter 11

7  case, or by the dismissal or conversion of this Chapter 11 case or any superseding

8  Chapter 7 case unless and until the DIP Loan Obligations have first been indefeasibly

9  paid in full in cash and completely satisfied and the commitments terminated in

10  accordance with the DIP Loan Documents.

11    23.    <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered

12  pursuant to Bankruptcy Code section 364, and Bankruptcy Rule 4001(c), granting the

13  DIP Lender all protections afforded by Bankruptcy Code section 364(e).  If any or all of

14  the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed,

15  that action will not affect (i) the validity of any obligation, indebtedness or liability

16  incurred hereunder by the Debtor to the DIP Lender, prior to the date of receipt by the

17  DIP Lender of written notice of the effective date of such action, or (ii) the validity and

18  enforceability of any lien or priority authorized or created under this Interim Order or

19  pursuant to the DIP Loan Documents.  Notwithstanding any such reversal, stay,

20  modification or vacatur, any postpetition indebtedness, obligation or liability incurred by

21  the Debtor to the DIP Lender prior to written notice to the DIP Lender of the effective

22  date of such action shall be governed in all respects by the original provisions of this

23  Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges,

24  and benefits granted herein and in the DIP Loan Documents with respect to all such

25  indebtedness, obligations or liability.

26    24.    <u>Restriction on Use of DIP Lender's Funds</u>.  The Superpriority Claim, the

\7095\p Interim Order.doc (WR)     GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  DIP Liens and the Adequate Protection Liens shall be valid and binding liens and claims,

2  enforceable in accordance with the provisions hereof, and no proceeds from the DIP

3  Loan, Collateral or proceeds thereof, or any portion of the Carve-Out may be used to pay

4  any claims for services rendered by any of the professionals retained by the Debtor (or

5  any successor trustee or other estate representative in this Chapter 11 case or in any

6  superseding Chapter 7 case), any creditor or party in interest, any Committee or any other

7  party to (a) request authorization to obtain postpetition loans or other financial

8  accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other

9  than from the DIP Lender; and/or (b) investigate, assert, join, commence, support or

10  prosecute any action for any claim, counter-claim, action, proceeding, application,

11  motion, objection, defense, or other contested matter seeking any order, judgment,

12  determination or similar relief against, or adverse to the interests of, in any capacity, the

13  DIP Lender or any of its respective officers, directors, employees, agents, attorneys,

14  affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or

15  action, including, without limitation, (i) any so-called "lender liability" claims and causes

16  of action; (ii) any action with respect to the validity and extent of the DIP Loan

17  Obligations or the validity, extent, and priority of the DIP Liens; (iii) any action seeking

18  to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens; and/or

19  (iv) any action that has the effect of preventing, hindering or delaying (whether directly

20  or indirectly) the DIP Lender's assertion, enforcement or realization on the Collateral in

21  accordance with the DIP Loan Documents or this Interim Order.

22      25.  Priming and Subordination of Liens.  For avoidance of doubt, and

23  notwithstanding anything to the contrary herein, all liens on the Collateral in existence on

24  the date hereof (except the Non-Primed Liens) shall be primed by the DIP Liens and the

25  Adequate Protection Liens and shall be subordinate to the DIP Liens and the Adequate

26  Protection Liens.

1    26.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a

2  waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard

3  on any matter brought before this Court.

4    27.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Lender to seek

5  relief or otherwise exercise their rights and remedies under this Interim Order, the DIP

6  Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of

7  any of the rights thereunder, or otherwise of the DIP Lender.

8    28.    <u>Limits on DIP Lender's Liability</u>.  Nothing in this Interim Order or in any

9  of the DIP Loan Documents or any other documents related to this transaction shall in

10  any way be construed or interpreted to impose or allow the imposition upon the DIP

11  Lender of any liability for any claims arising from any and all activities by the Debtor in

12  the operation of its business or in connection with its restructuring efforts.

13    29.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the

14  express terms or provisions of any of the DIP Loan Documents, the Motion, any other

15  order of this Court, or any other agreements, on the one hand, and (b) the terms and

16  provisions of this Interim Order, on the other hand, unless such term or provision herein

17  is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan

18  Documents, the terms and provisions of this Interim Order shall govern.

19    30.    <u>No Third Party Beneficiary</u>.  Except as expressly set forth herein, no rights

20  are created hereunder for the benefit of any third party, any creditor or any direct, indirect

21  or incidental beneficiary.

22    31.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded

23  to the DIP Lender and the Existing Secured Creditors under this Interim Order, and any

24  actions taken pursuant thereto, shall survive the entry of an order (i) dismissing this

25  Chapter 11 case, or (ii) converting this Chapter 11 case to a case under Chapter  7, and

26  (b) the DIP Liens, the Adequate Protection Liens, the Superpriority Claim, and the

\7095\p Interim Order final 6.6.11.wpd

1   Adequate Protection Claims shall continue in this Chapter 11 case, in any superseding

2   Chapter 7 case or after any such dismissal.  Except as otherwise provided herein, the DIP

3   Liens and the Adequate Protection Liens shall maintain their priorities as provided in this

4   Interim Order and in the Final Order, and shall not be modified, altered or impaired in

5   any way by any other financing, extension of credit, incurrence of indebtedness (except

6   with respect to any additional financing to be provided by the DIP Lender in accordance

7   with the Final Order), or any conversion of this Chapter 11 case to a case under Chapter 7

8   or dismissal of the Chapter 11 case, or by any other act or omission until all DIP Loan

9   Obligations are indefeasibly paid in full in cash and completely satisfied, and the

10  commitments under the DIP Loan Documents are terminated in accordance therewith.

11      32.    Final Hearing Date.  The Final Hearing shall be held in Courtroom #6 on

12  _____, 2011, commencing at ____ _.m., at the Wayne L. Morse Courthouse, 405

13  E. 8th Avenue, Eugene, OR.

14      33.    Proof of Claim.  The DIP Lender is hereby relieved of the requirement to

15  file a proof of claim with respect to any DIP Loan Obligations and any other claims or

16  liens granted hereunder or created hereby.

17      34.    Entry of Interim Order; Effect.  This Interim Order shall take effect

18  immediately upon execution hereof, notwithstanding the possible application of

19  Bankruptcy Rules 6004(h), 7062, 9014, or otherwise.

20      35.    Retention of Jurisdiction.  This Court shall retain jurisdiction over all

21  matters pertaining to the implementation, interpretation and enforcement of this Interim

22  Order and/or the DIP Loan Documents.

23      36.    Binding Effect of Interim Order.  The terms of this Interim Order shall be

24  binding on any trustee appointed under Chapter 7 or Chapter 11 in this case.

25

26                          # # #

\7095\p Interim Order.doc 8/31/2010

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1

2   Presented by:

3
          /s/  David A. Foraker
4   David A. Foraker, OSB #812280
    Greene & Markley, P.C.
5   1515 SW Fifth Avenue, Suite 600
    Portland, OR  97201
6   Telephone:  (503) 295-2668
    Facsimile:    (503) 224-8434
7   E-mail: david.foraker@greenemarkley.com
    Attorneys for Debtor
8
    cc:     List of Interested Parties
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

\7095\p Interim Order Financing.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1        <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that the foregoing Debtor's Motion for Authorization to Obtain Secured

3   Credit on Interim and Final Basis was served on all parties requesting notice through the ECF

    System by electronic notice and on the parties listed on the attached List of Interested Parties by

4   the methods indicated therein.  Unless another method of service is indicated, service was made

5   by placing a copy thereof in a sealed, first-class, postage prepaid envelope, addressed to each

    party's last known address and depositing the same into the United States mail at Portland,

6   Oregon on the date set forth below.

7        Dated: June 7, 2011.

8
                                    /s/ David A Foraker
9                                   David A. Foraker, OSB #812280
                                    Attorney for Debtor
10

11   \7095\P COS P Motion Auth Interim Credit.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

<u>List of Interested Parties</u>

(Olsen Agricultural Enterprises LLC)

<u>Secured Creditors (Special List):</u>

BFS International, LLC                                          (Via First Class Mail)
c/o David E. Grein, Esq.
Registered Agent
1030 SW Morrison St.
Portland, OR 97205

Tim Miller                        (Via First Class Mail and E-mail: tim@beaverfreight.com)
BFS International, LLC
3835 NE Hancock St. Ste. 203
Portland, OR 97212

David E. Grein, Esq.                              (Via E-mail: dgrein@pfglaw.com)
Parsons Farnell & Grein
1030 SW Morrison St.
Portland, OR 97205
        Attorneys for BFS International, LLC

Internal Revenue Service                                      (Via First Class Mail)
PO Box 7346
Philadelphia, PA 19101-7346

The Attorney General of the United States                     (Via First Class Mail)
Department of Justice
10th & Constitution NW
Washington, DC 20530

US Attorney for the District of Oregon                        (Via First Class Mail)
1000 SW 3rd Ave., #600
Portland, OR 97204

Susan Anderson, Specialist        (Via First Class Mail and Facsimile (541) 302-0971)
Internal Revenue Service
211 E. 7th Ave., Ste. 301
Eugene, OR 97401

\7095\O Interim Order Finance -- List of Interested Parties.wpd

Callisons, Inc. (dba I.P. Callisons and Sons)                    (Via First Class Mail)
c/o CT Corporation System
Registered Agent
388 State St., Ste. 420
Salem, OR 97301-3581

Richard Robinson                                                (Via First Class Mail)
I.P. Callisons and Sons
2400 Callison Rd NE
Lacey, WA 98516

Charles C. Robinson, Esq.          (Via First Class Mail and E-mail: crobinson@gsblaw.com)
Garvey Schubert Barer
1191 Second Ave., 18th Floor
Seattle, WA 98101-2939
        Attorneys for I.P. Callisons and Sons

20 Largest Unsecured Creditors (Via First Class Mail):

Kim Bible
Oregon Vineyard Supply Co.
2700 St. Joseph Rd.
McMinnville, OR 97128

Susan Anderson
Internal Revenue Service
211 E 7th Ave., Ste. 301
Eugene, OR 97204

Howard Pope
ORCO, Inc.
12680 SW Pacific Hwy
Monmouth, OR 97361

David Stork
Jeld-Wen Tradition Foundation
3250 Lakeport Blvd
Klamath Falls, OR 97601

Julie Springer
Davis Wright Tremaine
1300 SW 5th Ave., Ste. 2300
Portland, OR 97201

Justin Fisher
Peter Jacobsen's Legends of Oregon
2727 Leo Harris Pkwy
Eugene, OR 97401

Linda Collins
HSR Architecture LLC
838 NW Bond St., Ste. 2
Bend, OR 97701

Eric Rogers
Eola Hills Wine Cellars
501 S Pacific Hwy
Rickreall, OR 97371

Dennis Combs
Dennis Combs AG Consultants, Inc.
POB 1051
Lake Oswego, OR 97034

Travis Hill
Silver Dome Farms
7091 Springhill Dr.
Albany, OR 97321

John Coleman
255 SW Madison Ave.
Corvallis, OR 97333

Dean Underwood
Underwood Farms
8756 Springhill Dr.
Albany, OR 97321

Employment Department
c/o Carolyn G. Wade, Esq.
Department of Justice
1162 Court St. NE
Salem, OR  97301

Jeffrey O'Banion
NW Natural Gas
222 NW 2nd
Portland, OR 97208

ODR Bkcy
c/o Carolyn G. Wade, Esq.
Department of Justice
1162 Court St. NE
Salem, OR 97301

Collotype Labels
c/o Greg Pfister, Esq
720 SW Washington St., Ste. 750
Portland, OR 97205

Jane Anderson
Credit Collections Services Inc
POB 755
Yankton, SD 57078

Tony Blair
Brenner & Company
POB 907
Salem, OR 97308

Ben C. Fetherston, Jr.
Fetherston Edmonds LLP
POB 2206
Salem, OR 97308

Tom Bracken
Sunridge Nurseries, Inc.
441 Vineland Rd
Bakersfield, CA 93307

**Page 4 of 4**    List of Interested Parties (Master Service List)