**James Ray Streinz,** OSB No. 794107
   Direct Dial: (503) 412-3512
   E-mail:   rays@mcewengisvold.com
**Barry L Groce,** OSB No. 802477
   Direct Dial: (503) 412-3501
   E-mail:   barryg@mcewengisvold.com
**McEWEN GISVOLD LLP**
1600 Standard Plaza
1100 SW Sixth Avenue
Portland, Oregon 97204

Of Attorneys for Rabo Agrifinance, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Olsen Agricultural Enterprises LLC,<br>an Oregon limited liability company,<br><br>                        Debtor. | Bankruptcy Case No. 11-62723<br><br>**RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT** |

     Rabo Agrifinance, Inc. ("Rabo") files this Memorandum in Opposition to Debtor's Motion for Authorization to Use Cash Collateral on Interim and Final Basis ("Motion to Use Cash Collateral") and Debtor's Motion for Authorization to Obtain Secured Credit on Interim and Final Basis ("Motion to Obtain Credit"). Rabo is a creditor holding claims against the debtor in excess of $30,000,000, secured by liens on virtually all of Debtor's property, and it is Rabo's cash collateral that the Debtor is

Page 1 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

attempting to use and Rabo's priority lien in the Debtor's property that Debtor is attempting to set aside by granting priority to another lender.  While Rabo did not oppose the interim use of cash collateral to temporarily pay expenses associated with operation of the Debtor's business (the "Business"), Rabo is opposed to the continued use of cash collateral because it is not adequately protected from the continued use of its cash to fund a Debtor that will admittedly lose money over the remainder of this year.  While Rabo has no objection to another lender providing funds to the Debtor and taking a second lien on the Debtor's property or being allowed a priority administrative expense claim, Rabo is opposed to the proposed loan from Bacchus Capital, L.P. ("Bacchus"). Rabo opposes this loan because it grants Bacchus a lien superior to Rabo's security interest in the Debtor's property without providing Rabo adequate protection.  Rabo further objects to the Bacchus loan because it will fund an operation which will lose money.  Because the issues surrounding both of these motions are the same, Rabo has joined its opposition to each in this Memorandum.  However, there are issues that are limited to one motion.

## FINAL HEARING ON CASH COLLATERAL

The Order Allowing Interim Use of Cash Collateral scheduled the final hearing on the use of cash collateral for June 13, 2011, to accommodate the vacation schedule of Debtor's principal counsel and to fit into the Court's busy schedule.  However, that scheduling violates F.R.Bank.P. 4001(b)(2), which provides that the final hearing on a motion to use cash collateral may be commended "no earlier than 14 days after service of the motion."  The Motion to Use Cash Collateral was served on June 1, 2011.  Therefore,

Page 2 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

a final hearing on June 13th violates the Rule. Pursuant to F.R.Bank.P. 9006(c)(2), the 14 days cannot be reduced by the Court.

Rabo assumes that the Court will consider the cash collateral motion at the hearing on June 13, and so addresses it here. However, Rabo is opposed to a final hearing on cash collateral until the requisite time has expired.

## BACKGROUND

As admitted by Debtor, Rabo holds two substantial secured claims against the Debtor, secured by essentially all of Debtor's assets, including the accounts, profits, rents crops and proceeds generated by the Business. These revenues from the Business are the cash collateral at issue herein.

The first claim is based upon a loan to the Debtor's predecessors (the "Borrowers") made by AXA Equitable Life Insurance Company ("AXA") in September, 2007. The loan, evidenced by a promissory note (the "AXA Note") in the principal sum of $15,000,000 (Exhibit 109), was secured by Oregon Deeds of Trust, Security Agreement, Fixture Filing and Financing Statement ("AXA Trust Deeds") covering certain real property (the "Real Property") in Benton, Linn, and Polk Counties, Oregon, all building materials, fixtures, fittings, and personal property used or useful in the operation of the Real Property, and all rents, accounts, farm products, crops and proceeds derived from the Real Property. (Exhibits 110, 111 and 112) On March 2, 2011, Rabo purchased the AXA Note from AXA (Exhibit 113) and took assignment of AXA's interest in the AXA Trust Deeds. (Exhibits 114, 115 and 116)

Page 3 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

The AXA loan went into default due to the failure of the Borrowers to make a January 1, 2011, payment in the amount of $635,000. The Borrowers failed to cure the default and the balance due on the loan was accelerated on May 10, 2011. As of that date there was due and owing principal, default interest, attorneys' fees, prepayment penalties, costs and expenses in the amount of $14,883,600.65 (the "AXA Debt"). Default interest accrues on the AXA Debt at the rate of $4,754.48 per diem from and after May 10, 2011. (Exhibit 117)

The second claim is based upon a credit agreement (the "Credit Agreement") that Rabo made with the Borrowers, whereby Rabo agreed to loan the principal sum of $10,000,000 upon the terms and conditions set forth in the Credit Agreement. (Exhibit 118) The Credit Agreement was supported by a Security Agreement (Exhibit 119) and a Line of Credit Note. (Exhibit 120) The Credit Agreement was modified by a Forbearance Agreement dated November 28, 2008 (Exhibit 121) and an Agreement dated July 23, 2009. (Exhibit 122) The Credit Agreement, as amended, is referred to herein as the "Original Rabo Loan."

To secure repayment of the Original Rabo Loan, the Borrowers provided Rabo with an Oregon Line of Credit Deed of Trust, Security Agreement, Fixture Filing and Financing Statement (the "First Rabo Trust Deed") covering a portion of the Debtor's real property in Polk County, Oregon, all building materials, fixtures, fittings, and personal property used or useful in the operation of the such real

Page 4 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

property, and all rents, accounts, farm products, crops and proceeds derived from such real property. (Exhibit 123)

The Borrowers promptly defaulted on the Original Rabo Loan. On or about October 22, 2009, Rabo and the Borrowers entered into another agreement (the "Restated Agreement") ( Exhibit 124) whereby Rabo agreed to forebear from exercising its remedies against the Borrowers for defaults under the Original Rabo Loan and agreed to loan the Borrowers up to the principal sum of $14,641,757.21 (the "Restated Rabo Loan") upon the terms and conditions set forth in the Restated Agreement. As part of the Restated Rabo Loan, the Borrowers made an Amended and Restated Line of Credit Note in favor of Rabo in the principal amount of $14,641,757.21. (Exhibit 125)

The Restated Agreement was amended on November 3, 2009 (Exhibit 126), again on January 1, 2010, at the Borrowers' request, when the Borrowers failed to make a $300,000 payment due December 30, 2009 (Exhibit 127) and on May 18, 2010, again at the Borrowers' request, when the Borrowers failed to make a $175,000 payment due April 30, 2010. (Exhibit 128)

As additional security for the Restated Rabo Loan the Debtor's predecessors, executed for Rabo Oregon Line of Credit Deeds of Trust, Security Agreement, Fixture Filing and Financing Statement ("Second Rabo Trust Deeds") covering the Real Property in Benton, Linn, and Polk Counties, Oregon which secured the AXA

Page 5 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

loan. (Exhibits 129, 130 and 131)  The First Rabo Trust Deed also secures repayment of the Restated Rabo Loan.

Despite the repeated modification of the Restated Rabo Loan, the Borrowers once again defaulted on the loan in the following ways:

(a)    By failing to make the weekly remittances of cash receipts as required by the Restated Agreement, beginning with the payment due October 25, 2010, and continuing weekly thereafter, except for a payment of $10,000 received February 28, 2011.  The aggregate amount of unpaid and past due weekly remittances, as of the week of April 25, 2011, was $ 757,207.48; and

(b)    By failing to make monthly payments due under the Restated Agreement in the months of August 2010 through December 2010, in the aggregate amount of $1,249,279.77.

On April 25, 2011, Rabo made demand on the Borrowers to pay the delinquent amounts on or before May 10, 2011. The Borrowers failed to pay and the Restated Rabo Loan was accelerated.  As of May 10, 2011, there was due and owing principal, default interest, attorneys' fees and costs expenses in the amount of $15,595,339.20 (the "Rabo Debt"). The Rabo Debt accrues default interest at a rate of $5,631.65 per diem from May 10, 2011. (Exhibit 132)

The Debtor has a long and predictable history of not performing on its obligations to Rabo.  Although Debtor claims the going concern value of its assets is $50 million, Rabo will present evidence at the hearing that the appraised value of its

Page 6 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile  (503) 243-2687

collateral, the real property, fixtures and personal property, even at fair market value with no pressure to sell, is approximately $33 million. The liquidation value of Rabo's collateral is less than $25 million.

The real property and fixtures were appraised earlier this year by three different appraisers. Each provided a market value (a one year period in which the property is "exposed to the market") and a liquidation value or range (a 180 day exposure period).

Robert Hugie appraised ten parcels in Linn, Benton and Polk Counties used primarily for grass seed. (Exhibit 101) His fair market and liquidation values are set forth below:

| Property Description | Acres | Fair Market Value | Liquidation Value |
|---|---|---|---|
| Koos Brownsville Farm | 373.08 | $ 1,450,000 | $ 1,233,000 |
| Koos Brownsville Dev. | 20.88 | $ 522,000 | $ 261,000 |
| Koos Seven Mile Lane | 156.18 | $ 1,420,000 | $ 1,207,000 |
| Sweetbriar Farm | 252.64 | $ 1,170,000 | $ 995,000 |
| Kester Farm South | 598.00 | $ 2,155,000 | $ 1,832,000 |
| Kester Farm North | 121.45 | $ 700,000 | $ 595,000 |
| Flicks (Kennel) Farm | 120.03 | $ 905,000 | $ 770,000 |
| Robison Farm | 398.99 | $ 1,478,000 | $ 1,256,000 |
| East Edwards Farm | 151.0 | $ 636,000 | $ 541,000 |
| Independence Property | 66.49 | $ 625,000 | $ 313,000 |
| TOTAL | | $11,061,000 | $ 9,003,000 |

Page 7 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

Carl Stillman of Stillman & Associates appraised three parcels in Polk County. (Exhibit 102) A portion of each of these parcels was planted as vineyard or were planned to be so planted. His fair market value and liquidation value ranges are:

| Property Description | Fair Market Value | Liquidation Value Range |
|---|---|---|
| Mulkey Hill | $ 2,500,000 | $ 2,125,000 to $ 1,875,000 |
| Edwards | $ 3,550,000 | $ 3,017,500 to $ 2,662,500 |
| Massey-Wells [1] | $ 4,910,000 | $ 4,173,500 to $ 3,682,500 |
| TOTAL | $10,960,000 | $ 9,316,000 to $ 8,220,000 |

Melvin Brush of Brush & Associates appraised five parcels of property in Polk County. (Exhibits 103, 104, 105, 106 and 107). These were primarily mixed use parcels. His market value and liquidation value ranges are:

| Property Description | Fair Market Value | Liquidation Value Range[2] |
|---|---|---|
| Headquarters Farm | $ 1,546,000 | $ 1,314,100 to $ 1,159,500 |
| Home Place Farm | $ 2,116,000 | $ 1,798,600 to $ 1,587,000 |
| Mulkey Tracks Farm[3] | $ 766,000 | $ 689,400 to $ 651,100 |
| Nut Ranch | $ 1,613,000 | $ 1,451,700 to $ 1,290,400 |
| Todd Farms | $ 887,000 | $ 798,300 to $ 709,600 |
| TOTAL | $ 6,928,000 | $ 6,052,100 to $ 5,397,600 |

---

[1] The appraiser provided values as if Massey-Wells were irrigated or not irrigated, based upon the fact that the Debtor has irrigated the land but has no easements to the diversion points at which it obtains water. For purposes of this Memorandum, we have used the greater, irrigated, value. This increases the fair market value by $410,000.

[2] Mr. Brush provided a range of percentage discounts in his letter to Barry Groce of March 4, 2011 (Ex. 108). These percentages have been applied to the fair market value to put the liquidation value in dollars.

[3] Mulkey Tracks has the same irrigation issue as Massey-Wells (Ex.105, p. 33.) We have used the appraiser's fair market value in which he did not assume the ability to irrigate. If irrigation easements were obtained, the value would increase by $54,600.

Page 8 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

The appraisers valued the fixtures located on some of the properties. The remaining personal property has been valued by the Debtor, and then verified by Rabo in an inspection. The personal property has consistently been over valued by Debtor. Examples of some of the problems have been including older or damaged grass seed at full value, failing to eliminate uncollectable accounts receivable and failure to remove the value of work-in-process ("WIP") product that has been sold. In the most recent Collateral Inspection Report by Rabo, dated April 6, 2011, based on a March 19, 2011 inspection, and valuing the personal property as of February 28, 2011, the Debtor's records valued the personal property as $6,942,000. However, when bad accounts receivables and inventory which could not be sold were deducted, and all account payables on collateral were included, the actual value of the personal property was $4,618,000. (Exhibit 133, without attachments)

The Debtor has also failed to be consistent in reporting its personal property, both from month to month and internally. For example, the report for January 2011 valued personal property as $7,493,670.25. (Exhibit134) A month later the value had shrunk by over one million dollars to $6,485,472.58. (Exhibit 135) The main change was a dramatic decrease in inventory, with only a small gain in accounts receivable. Also, the February report, which was prepared on May 2, 2011, valued the personal property by approximately $450,000 less than the Debtor had reported to Rabo for the Collateral Inspection Report in March.

Page 9 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

Based on the fair market values in the appraisals and Rabo's personal property valuation, the collateral securing Debtor's loans to Rabo is worth $33,567,000. The liquidation value would be between $28,989,100 and $27,238,600.[4] As of June 13, 2011, Rabo is owed $30,832,068, not including attorney fees incurred since May 10, 2011.

## DISCUSSION

With respect to the Motion to Use Cash Collateral, Debtor has admitted that the revenues from the Business which it intends to use are "cash collateral", and that Rabo has an interest in the cash collateral. Although the other creditors with an interest in cash have not objected, Rabo does now object to any further use of cash collateral. So the issue is whether the Debtor has satisfied the test to allow it to use cash collateral when an entity with an interest in the cash collateral does not consent.

In order to use cash collateral over the objection of the secured party, the debtor must provide adequate protection for the use of the cash. In this case, Debtor has offered to provide two forms of adequate protection – a "replacement lien" on the same kinds or categories of personal property that the creditor had prepetition and a "superpriority" administrative expense claim subject to major exceptions, including the liens to be granted to Bacchus - neither of which is any protection at all.

With respect to the Motion to Obtain Credit under 11 U.S.C. §364(d), the test is the same. The Debtor has proposed to grant Bacchus a senior lien on the same collateral which now secures Rabo's lien. Assuming that Debtor can present evidence sufficient to

---

[4] This assumes that the personal property would maintain its value in a liquidation, which is very unlikely.

Page 10 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

establish that it has been "unable to obtain such credit otherwise"[5], the Debtor will have to establish that there is adequate protection of Rabo's interest. *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1993). In its motion, Debtor claims that adequate protection will be provided to Rabo through a priority administrative expense claim (but junior to Bacchus' administrative expense claim) and perfected liens on all property of the estate, except for claims under Chapter 5 and junior to Bacchus and the replacement liens granted for the use of cash collateral. (Motion to Obtain Credit, at 3:5-21)

      The "replacement lien" for the use of cash collateral is no lien at all. Rabo's current security interests already includes all post-petition property pursuant to 11 USC §552(b)(1) since its security agreement specifically includes all property of the estate and to proceeds, products and profits of such property. Giving Rabo what it already has is not adequate protection. The Sixth Circuit Bankruptcy Appellate Panel recently answered "no" to the question of "whether a lender is adequately protected by a replacement lien on rents in which the lender has an independent security interest." *In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 565-67 (6th Cir. B.A.P. 2010). *See also, In re Griswold Bldg., LLC*, 420 B.R. 666, 699-700 (Bankr. E.D. Mich. 2009) (Emphasizing that where the lender is undersecured, the debtor's use of rents decreases the value of the collateral and that decrease must be protected by funds or security from another source).

---

[5] It is interesting to note that in February Bacchus was considering putting in "capital in the $3-5 million area." The proposed loan is far from a capital investment.

Page 11 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

The superpriority administrative expense claim offered for both the use of cash collateral and obtaining credit is no more comforting as adequate protection. As Debtor has noted, Rabo "has a blanket security interest in essentially all of the Debtor's assets." By (properly) excepting claims of the estate under Chapter 5 of the Bankruptcy Code, there are no assets to pay the administrative expense claim.

Finally, offering the "Adequate Protection Liens" is another empty gesture since they are behind all other liens, and since Rabo already has a security interest in virtually all the collateral. Taken together these offers to grant adequate protection are meaningless. Debtor indirectly acknowledges this fact by focusing its argument that adequate protection exists due to an alleged "equity cushion".

While it is true that the equity cushion can provide adequate protection, the courts have recognized that the cushion must really be "adequate" to protect the secured creditor. As one judge recognized:

> "Under the 'equity cushion' theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected.

*In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987)

The Bankruptcy Court in Montana noted how quickly an equity cushion can disappear:

> "In this case, Debtors have an $ 18,705.69 equity cushion in the Gorman Group's collateral, which equates to an equity cushion of roughly 11%. Debtors have an equity cushion of $ 22,685.69 in Wallace/Purdy's collateral, which equates to an equity cushion of roughly 13%. While an equity cushion of 11 or 13% may at first blush

Page 12 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

> appear adequate, in this case, that equity cushion could quickly be eroded by accruing interest. For example, the Wallace/Purdy Promissory Note accrues interest at the rate of $ 17,760.00 per year. Thus, as of June 16, 2010, the amount owed on the Promissory Note, not including fees or costs, will be $ 179,074.31, thereby reducing Debtors' equity cushion to a mere 3%. Given Debtors lack of any provision for payment of adequate protection payments, the Court finds that an insufficient equity cushion exists in the Gorman Group's collateral and in the Wallace/Purdy collateral to constitute adequate protection, and finds that a risk of economic harm to the Gorman Group and Wallace/Purdy arises from further delay in allowing them to recover from their collateral."

*In re Saarel*, 2009 Bankr. LEXIS 1918, 26-27 (Bankr. D. Mont. July 2, 2009)

The bankruptcy courts have generally agreed with the *Saarel* court, finding that an equity cushion of 20% or more constitutes adequate protection, an equity cushion under 11% is insufficient to constitute adequate protection. *Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.)*, 416 B.R. 483, 527-529 (Bankr. E.D. Va. 2009), and cases cited therein. Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection. *Id.*

The Debtor quotes a statement from *In re Heatron, Inc*, 6 B.R. 493, 496 (Bankr. WD Mo. 1980) that the "[c]ourt is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." But the Debtor conveniently ignores the court's following admonishment: "At the same time, the Court cannot allow the security to be diminished." *Id.* In this case the equity cushion is not sufficient to support either the cash collateral to be used by the Debtor nor the new loan, and to allow either will cause Rabo's security to be diminished.

Page 13 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

Using the market values from the appraisals, there is at most an equity cushion of $2,734,932. Although the figure seems large, it is a small cushion in percentage terms, being a cushion of only 8.87%. (If liquidation values are used, there is no equity cushion.[6]) That is below that amount considered to be adequate by almost every court. Since the Debtor is proposing no payments to Rabo until the end of October 2011, and with interest accruing at over $10,000 a day, the equity cushion will soon be exhausted if Debtor is allowed to use cash collateral.

If the Debtor is allowed to borrow funds on the terms proposed, the entire loan of $3 million will eliminate the equity cushion. Even the $500,000 loan will reduce the equity cushion to a mere 7.25%. This is not a sufficient cushion to adequately protect Rabo's interest.

The Debtor's other argument to establish adequate protection is that the cash collateral and the loan are necessary to continue the Debtor's business and preserve the going concern value of the property. That would be fine except the going concern value of the property barely protects Rabo now, and Rabo will be undersecured if the Debtor is allowed to borrow the entire $3 million on a senior lien basis. It also ignores several key facts, from Debtor's own motion, about Debtor's "business":

First, Debtor had total revenues of $6,428,880 in 2010, and LOST $5,791,310 (page 8). How does Debtor expect to avoid another loss this year, even with higher

---

[6] In *In re Phoenix Steel Corporation*, 39 B.R. 218 (D. Del. 1984), the Court used a value half way between fair market and liquidation values to determine if there was an equity cushion. In this case, such a value would virtually eliminate the equity cushion.

Page 14 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

prices for its products? Prices will have to increase by approximately 90% for the Debtor to merely break even.

Second, Debtor admits that its expenses for the remainder of this year will be approximately $6.2 million and its revenues will be approximately $4.3 million (page 9). So the Debtor proposes to lose another $1.9 million, even on its rosy predictions.

Rabo has retained a crop consultant to review the debtor's crops and projections, and Rabo expects that he will testify that crop yields will be substantially lower than those projected by the Debtor, so the losses will be even greater than the Debtor expects. No matter how much the loss, any loss means there is no adequate protection. Protection from projected business operations is not an accepted form of adequate protection.

In the *Swedeland* case, *infra*, which was also cited by the Debtor, the bankruptcy court approved a priority lien to the debtor to allow it to continue construction. The Third Circuit, affirming the district court's reversal of the bankruptcy court, noted that the "bankruptcy court apparently believed that the construction of the development and the potential sales increased the value of the property…" 16 F.3d at 566. The Third Circuit went on the state:

> "We reject the notion that development property is increased in value simply because a debtor may continue with construction which might or might not prove to be profitable."

*Id.*

Other courts have recognized that adequate protection "should be premised on facts, or on projections grounded on a firm evidentiary basis." *In re Mosello*, 195 B.R.

Page 15 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon  97204
Telephone (503) 226-7321
Facsimile   (503) 243-2687

277, 292 (Bankr. SDNY 1996). Thus, priority financing has been rejected where the record does not support the debtor's assumptions, *In re First South Savings Assoc.,* 820 F.2d 700, 712 (5th Cir. 1987), or the "assumptions are mere expectations". *In the Matter of St. Petersburg Hotel Associates Ltd.*, 44 B.R. 944, 946 (Bank. M.D. Fla. 1984).

In this case the Debtor is asking Rabo and Bacchus to exchange places. Instead of providing capital, and becoming an investor with the risk of loss, Bacchus is totally protected, and, by having veto power over the Plan, is in a very strong position. Rabo now has the risk of loss of an investor if things go bad, but no corresponding opportunity for gain. In rejecting a motion for financing from MAC with priority over an existing lien to Acquvest, one court stated:

> "In this case, Acquvest will bear the entire risk of loss on the MAC financing and the debtor's scheme to develop and sell the Thornwood Property building lots. The risk in this speculative venture is obviously great. Acquvest is asked to underwrite this risk for the sole benefit of unsecured creditors and the debtors with no offsetting compensation or opportunity to benefit if the project is successful and with no control whatever over the funding or the work. Not surprisingly, the courts have not endorsed similar requests."

*In re Mosello*, 195 B.R. at 293. *See also In re Chevy Devco*, 78 B.R. 585 (Bankr. C.D. Cal. 1987).

The most striking condemnation of using projections of future gain as proof of adequate protection came from the Third Circuit in the *Swedeland* case:

> "We cannot close this portion of our opinion without pointing out that what happened here is quite disturbing. There, of course, is no doubt that the policy underlying Chapter 11 is quite important. Nevertheless, Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an

Page 16 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

MCEWEN GISVOLD LLP
Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

opportunity to recoup dependent upon the success of a business with inherently risky prospects. We trust that in the future bankruptcy judges in this circuit will require that adequate protection be demonstrated more tangibly that was done in this case."

*In re Swedeland Development Group, Inc.,* 16 F.3d at 567.

Given that the Debtor lost a staggering $5.8 million in 2010, and its consistent failure to make good on its loan obligations to AXA and Rabo, borrowing $3 million on a priority basis, mainly to spend $1.3 million on professional fees in the next 6 months, seems little more than a fool's errand. The Court should deny the motion to obtain secured credit, and stop the use of cash collateral.

## CONCLUSION

Since Debtor cannot show that Rabo is adequately protected if the Debtor is allowed to continue to use cash collateral, and that Rabo clearly is not adequately protected by borrowing funds on a priority basis, both motions before the Court should be denied.

Dated: June 9, 2011

**Respectfully submitted,**

**McEwen Gisvold LLP**

By /s/ *James Ray Streinz*
    James Ray Streinz, OSB No. 794107
       Telephone: (503) 412-3512
       E-mail: rays@mcewengisvold.com
   Attorneys for Creditor Rabo Agrifinance, Inc.

Page 17 of 17 – **RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT**

Attorneys at Law
1100 SW Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone (503) 226-7321
Facsimile (503) 243-2687

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **CREDITOR RABO AGRIFINANCE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTIONS FOR USE OF CASH COLLATERAL AND TO OBTAIN CREDIT** was served on all parties requesting notice through the ECF System by electronic notice on the date set forth below.

Dated: June 9, 2011.

### MCEWEN GISVOLD LLP

By  /s/ J*ames Ray Streinz*
James Ray Streinz, OSB No. 794107
Telephone:  (503) 412-3512
E-mail: rays@mcewengisvold.com
Attorneys for Creditor Rabo Agrifinance, Inc.

,

CERTIFICATE OF SERVICE