David A. Foraker, OSB #812280
Sanford R. Landress, OSB #814382
Greene & Markley, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434
E-mail: david.foraker@greenemarkley.com
E-mail: sanford.landress@greenemarkley.com

      Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| | ) Case No. 11-62723-fra11 |
| Olsen Agricultural Enterprises LLC, | ) |
| an Oregon limited liability company, | ) Chapter 11 |
| | ) |
| Debtor. | ) DEBTOR'S MOTION FOR |
| | ) AUTHORIZATION TO SELL REAL |
| | ) PROPERTY OUTSIDE THE ORDINARY |
| | ) COURSE OF BUSINESS FREE AND |
| | ) CLEAR OF LIENS |
| | ) |
| | ) (Koos Brownsville Farm) |
| | ) |

      Olsen Agricultural Enterprises LLC (the "Debtor"), as debtor in possession, hereby

moves this Court for entry of an order authorizing it to sell the real property and improvements

located in Brownsville, Linn County, Oregon, consisting of approximately 373.58 acres and

known as the Koos Brownsville Farm (the "Property"), free and clear of liens, in accordance

**Page 1 of 8 -** DEBTOR'S MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY OUTSIDE THE
        ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS

      \7095\P Debtor Motion Auth Sell Outside Ordinary.doc

with the terms and conditions set forth in the Real Estate Sale Agreement dated June 20, 2011 (a copy of which is attached hereto as <u>Exhibit A</u>, the "Sale Agreement").  In support of this motion, the Debtor represents:

Background

1.      On June 1, 2011 (the "Petition Date"), the Debtor filed herein a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing in the management and possession of its business and properties as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  On June 9, 2011, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States trustee.  As of the date hereof, no trustee or examiner has been requested or appointed in this case.

2.      The Debtor operates an agricultural enterprise on approximately 7,762 acres of owned and leased land located in Benton, Linn and Polk Counties.  Its business is comprised principally of three divisions:  (a) Olsen Seed Company, which produces and sells a variety of grass seed and grains on approximately 5,934 acres; (b) Olsen Agriculture, which grows and sells peppermint, nursery stock, squash, hazelnuts and blueberries on approximately 1,334 acres; and (c) Olsen Family Vineyards, which grows a variety of grapes on approximately 494 acres and produces and sells quality wines under the "Viridian" label as well as private labels.  As of the date hereof, the Debtor has 45 employees, including management personnel.

3.      The Debtor is the surviving entity of a merger transaction that was consummated on June 1, 2011.  In the merger transaction, Olsen Agricultural Company, Inc.,  an Oregon corporation ("OAC"), Jenks-Olsen Land Co., an Oregon general partnership ("JOLC"), Olsen Vineyard Company, LLC, an Oregon limited liability company ("OVC") and The Olsen Farms

Family Limited Partnership, an Oregon limited partnership ("OFFLP") were merged with and into the Debtor.

4.    On June 23, 2011, the Court entered herein (i) a Final Order Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection to Prepetition Secured Parties [Dkt #96] (the "Cash Collateral Order"), and (ii) a Final Order Authorizing Debtor to Obtain Postpetition Secured Financing and Granting Adequate Protection to Prepetition Secured Parties [Dkt #95] (the "DIP Financing Order").

5.    The Property, which consists of approximately 373.58 acres and is more specifically described in the attached Exhibit B, is farmland that presently is used by the Debtor to grow grass seed.  The improvements on the Property include irrigation pumps and panels. According to an appraisal made on January 20, 2011, the fair market value of the Property and its liquidation value are $1,450,000 and $1,233,000, respectively.

6.    The Property is subject to and encumbered by, among other interests, the following:

(a)    Statutory liens that secure claims of Linn County and other governmental units for property taxes, assessments and similar impositions (collectively, "Governmental Impositions").

(b)    DIP Liens, as that term is defined in the DIP Financing Order, in favor of Rabo Agrifinance, Inc. ("Rabo") that secure the DIP Loan Obligations under the DIP Financing Order.

(c)    First-priority prepetition trust deed lien in favor of Rabo that secures a claim for a term loan originally made by AXA Equitable Life Insurance Company to OAC,

**Page 3 of 8 -** DEBTOR'S MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS

\7095\P Debtor Motion Auth Sell Outside Ordinary.doc

JOLC, OVC and OFFLP.  As of the Petition Date, the amount of this secured claim was approximately $14,243,000.

(d)    Second-priority prepetition trust deed lien in favor of Rabo that secures a claim for line of credit loans made by Rabo to OAC, OVC, JOLC, James E. Olsen, Robin P. Olsen and Robin G. Olsen.  As of the Petition Date, the amount of this secured claim was approximately $15,587,000.

(e)    Third-priority Replacement Liens, as that term is defined in the Cash Collateral Order, in favor of Rabo, BFS International LLC ("BFS"), United States of America, acting by and through the Internal Revenue Service (the "IRS"), Ledeboer Seed, LLC ("Ledeboer Seed"), and Callisons, Inc. d/b/a Callisons and Sons ("Callisons").

(f)    Fourth-priority Adequate Protection Liens, as that term is defined in the DIP Financing Order, in favor of Rabo, BFS, the IRS, Ledeboer Seed, Callisons, and West Coast Bank.

7.    Julian Lafayette (the "Buyer") desires to purchase the Property from the Debtor, and the Debtor desires to sell the Property to the Buyer, in accordance with the terms and conditions set forth in the Sale Agreement.  Under the terms of the Sale Agreement, among other things, (i) the purchase price for the Property is $1,575,000, payable in cash at the closing, (ii) the Property will include all irrigation pumps and panels located thereon, (iii) the Debtor will retain ownership of the growing crops, which must be harvested by September 1, 2011, (iv) the Debtor will transfer to the Buyer all of its water rights relating to the Property, (v) the Debtor will grant to the Buyer an access easement, 40 feet in width, which will expire when a public right of way is created, and (vi) the Debtor will lease to the Buyer the adjoining farmland of

approximately 21.7 acres, at an annual rental of $1,000, for a term that will expire upon the commencement of the development of the leased property.

8.      The Buyer is not an insider of the Debtor.

9.      The Debtor has employed Terry Silbernagel of Agri-Business Real Estate Services, a licensed real estate broker, as its exclusive selling agent for the Property.  Under the terms of the listing agreement, the broker will be entitled to a commission equal to the lesser of (a) five percent of the purchase price, or (b) the amount that is the difference between (i) the proceeds from the sale of the Property (net of amounts paid on account of escrow fees and other closing costs payable by the Debtor in connection therewith), and (ii) $1,500,000, which will be earned and become payable at the closing.  The other closing costs payable by the Debtor in connection with the contemplated sale transaction (including premiums for a seller's title insurance policy and escrow fees) are estimated not to exceed $4,238.00.

10.     The Debtor has determined, in the reasonable exercise of its business judgment, that the sale of the Property prior to the confirmation of a plan of reorganization is in the best interest of the estate.  Among other things, (i) the Property is not necessary to an effective reorganization, and (ii) the Debtor needs additional cash to fund its projected restructuring costs or to pay down the debtor in possession loan facility (the "DIP Loan") that was approved by the DIP Financing Order.  The Sale Agreement is the product of arms-length negotiations.  The Debtor believes that the purchase price is fair and that the other terms of the Sale Agreement are commercially reasonable.  As the Debtor is taxed as a partnership for federal income tax purposes, the contemplated sale transaction will not give rise to an income tax liability for which the estate will become obligated to pay.

<u>Jurisdiction</u>

11.     This Court has jurisdiction over this matter pursuant to 28 USC §§ 157 and 1334

and LR 2100.1.  Consideration of this motion constitutes a core proceeding within the meaning

of 28 USC § 157(b)(2)(N).  The statutory predicates for the relief sought by this motion are

sections 363(b)(1) and 363(f) of the Bankruptcy Code.  Venue is proper under 28 USC § 1408.

<u>Relief Requested</u>

12.     By this motion, the Debtor seeks entry of an order (i) approving the Sale

Agreement, as it may be amended or supplemented from time to time with the written consent of

the Committee, (ii) authorizing the Debtor to sell the Property to the Buyer or its assigns free and

clear of all liens other than Governmental Impositions, and (iii) authorizing the Debtor to take all

actions that are reasonably necessary or appropriate to fulfill its obligations under the Sale

Agreement and to consummate the transactions contemplated thereby.  The Debtor further

requests that the order on this motion become effective immediately upon its entry,

notwithstanding any stay under Bankruptcy Rule 6004(h).

<u>Points and Authorities</u>

13.     Section 363(b)(1) of the Bankruptcy Code provides generally that a debtor in

possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  That statute allows a debtor in possession, subject to court

approval, to sell property of the estate outside the ordinary course of business where the

proposed sale is a sound exercise of the debtor's business judgment.  *See, e.g., Committee of*

*Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F2d 1063, 1070 (2d Cir

1983); *In re Ernst Home Center, Inc*., 209 BR 974, 980 (Bankr WD Wash 1997).  When a debtor

in possession articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 BR 612, 616 (Bankr SD NY 1986).

14.     The Debtor's decision to sell the Property pursuant to the Sale Agreement before a plan is confirmed has substantial business justification.  The Property is not necessary to an effective reorganization and the Debtor needs additional cash to fund its projected restructuring costs or to pay down the DIP Loan.  The Debtor believes that the purchase price to be paid by the Buyer for the Property is the highest and best obtainable in the circumstances and that the other terms of the Sale Agreement are commercially reasonable.

15.     Under section 363(f) of the Bankruptcy Code, the Debtor is granted the statutory power to sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of five enumerated conditions can be satisfied.  These conditions include "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; [or] (2) such entity consents."  Either or both of these conditions is satisfied as to each lien that encumbers the Property.

16.     The liens of Rabo, BFS, the IRS, Ledeboer Seed, Callisons and West Coast Bank will attach to the proceeds realized from the sale of the Property (net of amounts paid on account of Governmental Impositions, real estate commissions, escrow fees and other closing costs payable by the Debtor in connection therewith) to the same extent, with the same validity and in the same order of priority as such liens exist against the Property.

<u>Notice</u>

17.    Notice of this motion has been given to all creditors and other parties entitled to notice under Bankruptcy Rule 2002(a) in accordance with the requirements of LBR 2002-1.

WHEREFORE, the Debtor requests entry of an order granting the relief requested herein and such other and further relief as is appropriate.

Dated:  June 30, 2011.

Greene & Markley, P.C.

By _____/s/ Sanford R. Landress_____.
      Sanford R. Landress, OSB #814382
      Attorneys for Debtor

Exhibit A – Sale Agreement



Sale Agreement # TS2011-601-1

### FINAL AGENCY ACKNOWLEDGMENT

1  Both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Disclosure Pamphlet, and hereby acknowledge and consent
2  to the following agency relationships in this transaction: (1)  **Terry Silbernagel**  (Name of Selling Licensee)
3  of  **Agri-Business Real Estate Services**  (Name of Real Estate Firm) is the agent of (check one):
4  ☐ Buyer exclusively ("Buyer Agency"). ☒ Seller exclusively ("Seller Agency"). ☐ Both Buyer and Seller ("Disclosed Limited Agency").
5  (2)  **Terry Silbernagel**  (Name of Listing Licensee)
6  of  **Agri-Business Real Estate Services**  (Name of Real Estate Firm) is the agent of (check one):
7  ☒ Seller exclusively ("Seller Agency"). ☐ Both Buyer and Seller ("Disclosed Limited Agency").
8  (3)If both parties are each represented by one or more Licensees in the same Real Estate Firm, and the Licensees are supervised by the same
9  principal broker in that Real Estate Firm, Buyer and Seller acknowledge that said principal broker shall become the disclosed limited agent for both
10 Buyer and Seller as more fully explained in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller and
11 Licensee(s).
12 Buyer shall sign this acknowledgment at the time of signing this Agreement before submission to Seller. Seller shall sign this acknowledgment at
13 the time this Agreement is first submitted to Seller, even if this Agreement will be rejected or a counter offer will be made. Seller's signature to this
14 Final Agency Acknowledgment shall not constitute acceptance of this Agreement or any terms therein.

15 Buyer _____  Print **Julian Lafayette** ___ Date **6/25/11** ←
16 Buyer _____  Print _____ Date _____ ←
17 Seller _____  Print _____ Date _____ ←
18 Seller _____  Print **Olsen Agricultural Enterprises L** Date **6/25/11** ←

## FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT

19  **This Agreement is intended to be a legal and binding contract.**
20  **If it is not understood, seek competent legal advice before signing. Time is of the essence of this Agreement.**

21  **1. DEFINITIONS:** All references in this Agreement to "Licensee" and "Firm" shall refer to Buyer's and Seller's real estate agents licensed in the
22 State of Oregon and the respective real estate companies with which they are affiliated. Licensee(s) and Firm(s) identified in the Final Agency
23 Acknowledgment Section above are not parties to this Agreement, except as may be expressly applicable. Unless otherwise provided herein: (1)
24 Time calculated in days after the date Buyer and Seller have signed this Agreement shall start on the first full business day after the date of Seller's
25 signature indicating acceptance of Buyer's offer or counteroffer, or Buyer's signature indicating acceptance of Seller's counteroffer; (2) Written
26 notices required or permitted under this Agreement be delivered to Buyer or Seller may be delivered to their respective Licensee with the same
27 effect as if delivered to that Buyer or Seller; (3) A "business day" shall mean Monday through Friday, except recognized legal holidays as
28 enumerated in ORS 187.010 and 187.020.

29  **2.1 PRICE/PROPERTY DESCRIPTION:** Buyer (print name(s))  **Julian Lafayette**
30
31 offers to purchase from Seller (print name(s))  **, Olsen Agricultural Enterprises LLC**
32
33 the following described real property, consisting of  **373**  acres, more or less (hereinafter "the Property") situated in the State of Oregon, County
34  **Linn** , and commonly known as (insert street address, city, zip code, tax identification number, lot/block
35 description, etc.).
36  **Township 14 South, Range 3 West, Section 1 and 12 tax lots 1100,2200,2600**
37 (Buyer and Seller agree that if it is not provided herein, a complete legal description as provided by the title insurance company in accordance with
38 Section 5, below, shall, where necessary, be used for purposes of legal identification and conveyance of title.)
39 for the Purchase Price (in U.S. currency) of ..................................................................................... A $  **1,575,000.00**
40 on the following terms: Earnest money herein receipted for .................... B $  **50,000.00**
41 on _____ , as additional earnest money, the sum of ............ C $ _____
42 at or before Closing, the balance of down payment ................... D $ _____
43 at Closing and upon delivery of ☒ DEED ☐ CONTRACT  the balance of the Purchase Price ..................... E $  **1,525,000.00**
                                                                        (Lines B, C, D and E should equal Line A)

Buyer Initials ___ Date **6/25/11**          Seller Initials ___ Date **6-25-11**

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE          **OREF 005**
© Oregon Real Estate Forms, LLC  **Rev 01/11**    No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT – Page 1 of 10

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



44  **2.2 BALANCE OF PURCHASE PRICE.** *(Select A or B)*

45  A. ☐ **This is an all cash transaction.** Buyer to provide verification ("Verification") of readily available funds at time of submission of this
46  Agreement to Seller or Listing Licensee. Seller may notify Buyer or Buyer's Licensee, in writing, of Seller's unconditional disapproval of the
47  Verification within _____ business days (five [5] if not filled in) ("Disapproval Period") following its receipt by Seller or Listing Licensee, in which case,
48  all earnest money deposits shall be promptly refunded and this transaction shall be terminated. **If Seller fails to provide Buyer or Selling**
49  **Licensee with written unconditional disapproval of the Verification by Midnight of the Disapproval Period, Seller shall be deemed to have**
50  **approved the Verification.**

51  B. ☒ Balance of Purchase Price to be financed as follows *(Select only one):* ☐ Conventional; ☐ FHA; ☐ Federal VA;
52  ☐ Other *(Describe details of loan to be obtained):* <u>This offer is subject to the property and the buyer qualifying</u>
53  <u>for new financing on terms and conditions acceptable to the buyer.</u>                    (collectively "Lender").

54  **2.3 PRE-APPROVAL LETTER.** ☐ Buyer has attached a copy of a Pre-Approval Letter from Buyer's Lender or mortgage broker; ☒ Buyer does
55  not have a Pre-Approval Letter at the time of making this offer; ☐ Buyer agrees to secure a Pre-Approval Letter as follows: _____
56  _____

57  **3.1 BUYER REPRESENTATIONS:** As of the date of signing this Agreement, Buyer makes the following representations to Seller: (1) Buyer
58  shall apply for a loan not later than <u>7</u> business days (three [3] if not filled in) following the date Buyer and Seller have signed this Agreement,
59  and will thereafter complete all reasonably necessary papers in a timely manner and exercise best efforts (including payment of all application,
60  appraisal and processing fees, where applicable) to obtain the loan; (2) Buyer shall make a good faith effort to secure the ordering of the Lender's
61  appraisal no later than expiration of the Inspection Contingency Period in Section 15 of this Agreement, or if the Professional Inspection Addendum
62  (OREF-058) is used, expiration of the Negotiation Period. (3) Buyer currently has liquid and available funds for the earnest money deposit and
63  down payment, sufficient to Close the transaction described herein, and is not relying upon any contingent source of funds (e.g., from loans, gifts,
64  sale or Closing of other property, 401K disbursements, etc.), except as follows *(describe):*
65  _____
66  _____
67  (4) Buyer authorizes Buyer's Lender or mortgage broker to provide non-confidential information to Listing and Selling Licensees regarding Buyer's
68  loan application status. (5) Buyer shall promptly notify Seller or Seller's Licensee if, after signing this Agreement, Buyer substitutes another lender
69  or loan program for any reason. (6) Buyer agrees to keep Seller promptly informed of all other material non-confidential developments regarding
70  Buyer's financing and the timing of Closing.

71  **3.2 INSURANCE.** If the Property is located in a designated flood zone, Buyer acknowledges that flood insurance may be required as a condition of
72  the new loan. Buyer is encouraged to promptly verify the availability and cost of property/casualty insurance that will be secured for the Property.

73  **3.3 FINANCING CONTINGENCIES.** If Buyer is financing any portion of the Purchase Price, this transaction is subject to the following financing
74  contingencies: (1) Buyer and the Property to qualify for the loan from Lender; (2) Lender's appraisal shall not be less than the Purchase Price; and,
75  (3) Other *(Describe):* _____.
76  _____.

77  All Financing Contingencies are solely for Buyer's benefit and may be waived by Buyer in writing at any time.

78  **3.4 FAILURE OF FINANCING CONTINGENCIES.** If Buyer receives actual notification that any Financing Contingencies identified above have
79  failed or otherwise cannot occur, Buyer and Seller shall have _____ business days (two [2] if not filled in) following the day of such notification to
80  either (a) Terminate this transaction by signing a Termination Agreement (OREF-057) or such other similar form as may be provided by Escrow; or
81  (b) Reach a written mutual agreement upon such price and terms that will permit this transaction to continue. Neither Seller nor Buyer is required
82  under the preceding provision (b) to reach such agreement. If (a) or (b) fail to occur within the time period identified herein, this transaction shall be
83  automatically terminated and all earnest money shall be promptly refunded to Buyer. Buyer understands that upon termination of this transaction,
84  Seller shall have the right to immediately place the Property back on the market for sale upon any price and terms as Seller determines, in Seller's
85  sole discretion.

86  **4. ADDITIONAL PROVISIONS:** <u>The agreement and contemplated sale are subject to bankruptcy court</u>
87  <u>approval after notice to creditors.</u>
88  <u>Lines #359 to #405 of this sales agreement are hereby stricken. Disputes between the company</u>
89  <u>(seller) and the buyer will be resolved by the bankruptcy court. This offer does hereby</u>
90  <u>terminate and replace the offer # TS2011-601.</u>               . For additional provisions, see Addendum <u>ONE</u>.

91  **5. TITLE INSURANCE:** Unless otherwise provided herein, this transaction is subject to Buyer's review and approval of a preliminary title report
92  and the recorded covenants, conditions and restrictions ("the Report and CC&Rs") showing the condition of title to the Property. **(If not fully**
93  **understood, Buyer should immediately contact the title insurance company for further information or seek competent legal advice.**
94  **Neither the Listing nor Selling Licensee is qualified to advise on specific legal or title issues.)** Upon signature and acceptance of this

Buyer Initials _____ Date 6/25/11        Seller Initials _____ Date 6.25.11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE                    OREF 005

© Oregon Real Estate Forms, LLC **Rev 01/11**    No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 2 of 10

Sale Agreement # TS2011-601-1

95   Agreement by Buyer and Seller, Seller will, at Seller's sole expense, promptly order the Report and CC&Rs from an Oregon title insurance
96   company and furnish them to Buyer. Upon receipt of the Report and CC&Rs, Buyer shall have _____ business days (five [5] if not filled in) within
97   which to notify Seller, in writing, of any matters disclosed in the Report and CC&Rs which is/are unacceptable to Buyer ("the Objections"). Buyer's
98   failure to timely object, in writing, to any matters disclosed in the Report and/or CC&Rs shall constitute acceptance of the report and/or CC&Rs.
99   However, Buyer's failure to timely object shall not relieve Seller of the duty to convey marketable title pursuant to Section 7 below. If, within _____
100  business days (five [5] if not filled in) following receipt of the Objections, if any, Seller fails to remove or correct the matters identified in the
101  Objections, or does not give written assurances reasonably satisfactory to Buyer that they will be removed or corrected, all earnest money shall be
102  promptly refunded to Buyer and this transaction shall be terminated. This contingency is solely for Buyer's benefit and may be waived by Buyer in
103  writing. Within thirty (30) days after Closing, Seller shall furnish to Buyer an owner's standard form policy of title insurance insuring marketable title
104  in the Property to Buyer in the amount of the purchase price, free and clear of the Objections and all other title exceptions agreed to be removed as
105  a part of this transaction. *(Note: This Section 5 provides that Seller will pay for Buyer's standard owner's policy of title insurance. In some*
106  *areas of the country, such a payment might be regarded as a "seller concession." Under the amended Real Estate Settlement*
107  *Procedures Act ("RESPA"), effective on January 1, 2010 there are limitations, regulations and disclosure requirements on "seller*
108  *concessions" unless the product or service paid by the Seller was one customarily paid by the Seller. In Oregon, sellers customarily and*
109  *routinely pay for their buyer's standard owner's policy of title insurance. Accordingly, unless the terms of this Section 5 are modified in*
110  *writing by Buyer and Seller, the parties acknowledge, agree and so instruct Escrow, that in this transaction, Seller's payment of Buyer's*
111  *standard owner's policy of title insurance is not a "seller concession" under RESPA or any other federal or state law.)*

112  **6. IRC 1031 EXCHANGE:** In the event Buyer or Seller elects to complete an IRC 1031 exchange in this transaction, the other party agrees to
113  cooperate with them and the accommodator, if any, in a manner necessary to complete the exchange, so long as it will not delay the Close of
114  escrow or cause additional expense or liability to the cooperating party. Unless otherwise provided herein, this provision shall not become a
115  contingency to the Closing of this transaction.

116  **7. DEED:** Seller shall convey marketable title to the Property by statutory warranty deed (or good and sufficient personal representative's or
117  trustee's or similar legal fiduciary's deed, where applicable) free and clear of all liens of record, *except* property taxes which are a lien but not yet
118  payable, zoning ordinances, building and use restrictions, reservations in Federal patents, easements of record which affect the Property,
119  covenants, conditions and restrictions of record, and those matters accepted by Buyer pursuant to Section 5 above.

120  **8. ADDITIONAL LAND SALE CONTRACT/TRUST DEED/MORTGAGE/OPTION AGREEMENTS:** If this transaction is to include a land sale
121  contract, trust deed, mortgage, or option agreement between Buyer and Seller, the parties shall agree upon the terms and conditions of such
122  document not later than __N/A__ business days (ten [10] if not filled in) after the date Buyer and Seller have signed and accepted this Sale Agreement.
123  Upon failure of Buyer and Seller to reach agreement as to the terms and conditions of the document within said time period, this transaction shall
124  automatically terminate, all parties shall cooperate in signing such documentation reasonably necessary to effect a termination of this transaction
125  and a refund of all deposits, if any, to Buyer. *Caveat: The additional documents identified in this Section 8 can have legally binding*
126  *consequences, and Buyer and Seller are strongly encouraged to secure competent legal advice before entering into such agreements. If*
127  *Escrow (as defined in Section 23) is instructed to prepare the note and trust deed or mortgage to be used in this transaction, state*
128  *statute requires that Buyer and Seller receive from Escrow, at least three (3) days prior to Closing (as defined in Section 24), a statutory*
129  *notice and a copy of the proposed documents. This requirement cannot be waived by Buyer or Seller without the approval of both of*
130  *their respective Oregon-licensed attorneys.*

131  **9. UCC FILINGS:** All UCC filings on any crops, livestock, and/or equipment being purchased as part of this transaction shall be terminated by
132  Seller on or before the Closing Date.

133  **10. FIXTURES:** All fixtures (including remote controls and essential related equipment) are to be left upon the Property. Fixtures shall include but
134  not be limited to: Built-in appliances; attached floor coverings; drapery rods and curtain rods; window and door screens; storm doors and windows;
135  system fixtures (irrigation, plumbing, ventilating, cooling and heating); annually affixed irrigation pumps; water heaters; attached electric lights and
136  bathroom fixtures; light bulbs, fluorescent lamps; window blinds; awnings; fences and gates; all planted shrubs, plants and trees; and affixed trade
137  equipment and machinery (e.g., electric fence chargers, all water troughs, above ground storage tanks, etc.) EXCEPT: _____
138  _____
139  _____
140  _____

141  **11. PERSONAL PROPERTY:** Only the following personal property, in "AS-IS" condition is included in the purchase price **Any irrigation**
142  **pumps and panels currently located on the property.**
143  _____ at a value $ _____
144  See Addendum _____ for list of personal property. All personal property transfers will be by good and sufficient bill of sale.

145  **12. ALARM SYSTEM:** ☒ NONE ☐ OWNED ☐ LEASED. If leased, Buyer ☐ will ☐ will not assume the lease at Closing.

146  **13. WOODSTOVE/FIREPLACE INSERT:** Does the Property contain a woodstove or fireplace insert? ☐ Yes ☐ No  If yes, Seller to provide
147  Buyer with OREF-046 Woodstove/Fireplace Insert Addendum if device is uncertified.

Buyer Initials _____ Date 6/25/11          Seller Initials _____ Date 6-25-11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service by Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE                    **OREF 005**

© Oregon Real Estate Forms, LLC **Rev 01/11**    No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Sale Agreement # TS2011-601-1

**14. CROPS/TIMBER:** All currently growing crops (including timber) and any crops planted before Closing, are to be the property of ☐ Buyer ☒ Seller ☐ Leaseholder. Prior to Closing, the responsibility for maintaining said crops shall belong to ☐ Buyer ☒ Seller ☐ Leaseholder. If crops belong to Seller or Leaseholder and are to remain the property of Seller or Leaseholder after Closing, harvesting of said crops shall be not later than *(insert date)* ___September 1,2011___ . Any outstanding contracts for crops grown or to be grown on the Property shall belong to ☐ Buyer ☐ Seller ☐ Leaseholder. All provisions of this clause shall be subject to ORS 91.230 - Farm Tenant's Right to Emblements. The parties agree to abide by forestry regulations for harvesting and reforestation.

**15. PUBLIC AND PRIVATE GRAZING RIGHTS:** All public lands grazing permit(s)/lease(s) (collectively "public grazing rights"), if any, are included in this purchase. Provided however, Buyer understands that Buyer may be required to make application to the Bureau of Land Management or U.S. Forest Service for approval of the transfer of all public grazing rights to Buyer. All private leases and/or grazing contracts (collectively "private grazing rights") associated with the Property ☐ are ☐ are not included in this transaction. If such public or private grazing rights are to be acquired by Buyer, this transaction is subject to Buyer's review and approval of all such rights, including but not limited to grazing permits, leases or contracts to be acquired as a part of this transaction. Upon execution of this Agreement by Buyer and Seller, Seller shall promptly obtain and furnish to Buyer copies of those documents reasonably describing the public and/or private grazing rights affecting the Property. Upon receipt thereof, Buyer shall have ___ business days (five [5] if not filled in) thereafter within which to notify Seller, in writing, of Buyer's disapproval of such public and/or private grazing rights and election to terminate this transaction, in which case, all earnest money shall be promptly refunded to Buyer and this transaction shall be terminated. **Buyer's failure to notify Seller in writing of Buyer's dissatisfaction with such public or private grazing rights within the time identified in this Section 15, shall constitute approval of such rights.**

**16. LENDER SHARES:** If, as part of this transaction, Buyer will be assuming a loan from an entity that requires purchase of shares in said entity, such as Farm Credit Services, then those shares ☐ shall ☒ shall not be a part of the purchase price identified at Section 2 above. If said shares are not a part of the purchase price, Buyer and Seller shall reach mutual written agreement as to such price and stock ownership requirements within ___ business days (ten [10] if not filled in) from the date this Agreement is signed by Buyer and Seller.

**17. RANCH NAME/REGISTERED BRAND(S):** The ranch or business name shall: ☒ remain with Seller; ☐ transfer to Buyer. The registered Ranch Brand(s) shall: ☐ remain with Seller; ☐ transfer to Buyer.

**18. SELLER REPRESENTATIONS:** Subject to other written disclosures made by Seller as a part of this transaction, Seller makes the following representations to Buyer:

**(1) The primary dwelling(s), if any, is/are connected to** *(check all that apply):* ☐ a public sewer system; ☐ an on-site sewage system; ☐ a public water system; ☐ a private well and/or shared well; ☐ other (e.g., surface springs, cistern, etc.).

**(2) At the earlier of possession or Closing Date, the dwelling will have one or more operating smoke alarms, smoke detectors and carbon monoxide detectors as required by law. (See, http://www.oregon.gov/OSP/SFM/)**

**(3) Seller has no knowledge of any hazardous substances in or about the Property other than substances (if any) contained in appliances and equipment. Buyer acknowledges that asbestos commonly exists in insulation, ceilings, floor coverings and other areas in residential housing and may exist in the Property.**

**(4) Seller knows of no material defects in or about the Property.**

**(5) All electrical wiring, heating, cooling, plumbing and irrigation equipment and systems and the balance of the Property, including the yard, personal property, crops, and other assets included in the purchase shall be in substantially its present condition at the time Buyer is entitled to possession.**

**(6) Seller has no notice of any liens or assessments to be levied against the Property.**

**(7) Seller has no notice from any government agency of any violation of law relating to the Property.**

**(8) Seller has no knowledge of any of the following matters affecting the use or operation of the Property: (a) past or present non-resource uses (e.g. cemeteries, landfills, dumps, etc.); (b) unrecorded access easements or agreements (e.g. for harvesting, fishing, hunting, livestock movement and pasture, etc.); (c) state or federal agreements/requirements regarding crops, grazing, reforestation, etc.; (d) supplier agreements, production processing commitments or other similar contracts.**

**(9) Well(s), water source(s), and/or water district resources have been adequate under Seller's current usage of the Property.**

**(10) Water rights (e.g., irrigation, agricultural), for not less than _292_ acres, have been utilized and applied for beneficial use within the last five (5) years and are current and shall be transferred to Buyer at Closing. Water rights may be subject to certain conditions. Buyer should verify compliance with appropriate agency.**

**(11) Seller is not a "foreign person" under the Foreign Investment in Real Property Tax Act ("FIRPTA") as defined in this Agreement.**

**(12) Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping, structures, driveways, and other such improvements) currently existing on the Property offered for sale and the legal description of the Property.**

**Seller agrees to promptly notify Buyer, if prior to Closing, Seller receives actual notice of any event or condition which could result in making any previously disclosed material information relating to the Property substantially misleading or incorrect. These representations are made to the best of Seller's knowledge. Seller may have made no investigation.**
Exceptions to items (1) through (12) are: _____

Buyer Initials ___ Date 6/25/11     Seller Initials ___ / Date 6.25.11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE     **OREF 005**
© Oregon Real Estate Forms, LLC **Rev 01/11**     No portion may be reproduced without permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 4 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Sale Agreement # TS2011-601-1

203
204
205 Buyer acknowledges that the above representations are not warranties regarding the condition of the Property and are not a substitute
206 for, nor in lieu of, Buyer's own responsibility to conduct a thorough and complete independent investigation, including the use of
207 professionals, where appropriate, regarding all material matters bearing on the condition of the Property, its value and its suitability for
208 Buyer's intended use. Neither the Listing nor Selling Licensee shall be responsible for conducting any inspection or investigation of any
209 aspects of the Property.

210 **19. "AS-IS":** Except for Seller's express written agreements and written representations contained herein, and Seller's Property
211 Disclosure, if any, Buyer is purchasing the Property "AS-IS," in its present condition and with all defects apparent or not apparent. This
212 provision shall not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon law.

213 **20. PRIVATE WELL:** If applicable, Seller represents that the private water well located on or serving the Property has provided an adequate
214 supply of water throughout the year for household use. To the best of Seller's knowledge, the water is fit for human consumption and the continued
215 use of the well and water is authorized by and complies with the laws of the State of Oregon and appropriate governmental agencies. No other
216 representation is made concerning the water supply and well except as expressly stated in this Agreement. If the well provides water for domestic
217 purposes, upon Seller's acceptance of Buyer's offer, Seller at Seller's expense, will have the well tested for arsenic, nitrates and total coliform
218 bacteria and for such other matters as are required by the Oregon Health Division. Upon receipt, Seller shall submit the test results to the Oregon
219 Health Division and Buyer within forty-eight (48) hours. At Buyer's expense, Buyer may have the well water tested for quantity or quality by a
220 qualified tester, and obtain a written report of such test(s), showing the deficiencies (if any) in the well and the standards required to correct the
221 deficiencies, all within _____ business days (seven [7] if not filled in) after the date Buyer and Seller have signed this Agreement. If the written report
222 of any test made by Buyer or Seller shows a substantial deficiency in quantity or quality of the water, then Buyer may terminate this transaction by
223 delivering written notice of termination, together with a copy of the test report to Seller or the Listing Licensee within twenty-four (24) hours after the
224 receipt by Buyer of the written test report unless, within twenty-four (24) hours after Buyer's delivery of notice of termination, Seller agrees in writing
225 to correct the deficiencies shown on the report. Any report obtained by Buyer will show what deficiencies, if any, are substantial. In the event any
226 wells located upon the Property are not currently registered with the applicable governmental agency, Seller agrees to assist Buyer, at Buyer's sole
227 expense, in registering them. The preceding sentence shall survive Closing of this transaction. For additional well provisions see OREF Private
228 Well Addendum #082, or Addendum _____ is attached to this Agreement.
229 ☐ OREF-082 Private Well Addendum is attached to this Agreement.

**INSPECTIONS:** (CHECK ONLY ONE BOX)

230 **21. INSPECTIONS:** Buyer understands that it is advisable to have a complete inspection of the Property by qualified professional(s)
231 relating to such matters as structural condition, soil condition/compaction/stability, environmental issues, survey, zoning, operating
232 systems, and suitability for the Buyer's intended purpose. Neither Listing nor Selling Licensee is qualified to conduct such inspections
233 and shall not be responsible to do so. For further details, Buyer is encouraged to review the Buyer Advisory at
234 "http://www.rea.state.or.us/" or at "http://www.oregonrealtors.org".

235 ☐ **PROFESSIONAL INSPECTIONS:** At Buyer's expense, Buyer may have the Property and all elements and systems thereof inspected by one
236 or more professionals of Buyer's choice. Provided, however, Buyer must specifically identify in this Agreement any desired inspections which may
237 include testing or removal of any portion of the Property. Buyer understands that Buyer is responsible for the restoration of the Property following
238 any inspection(s)/test(s) performed by Buyer or on Buyer's behalf. Buyer shall have _____ business days (ten [10] if not filled in), after the date Buyer
239 and Seller have signed this Agreement, (hereinafter "the Inspection Period") in which to complete all inspections **and** negotiations with Seller
240 regarding any matters disclosed in any inspection report. However, during the Inspection Period, Seller shall not be required to modify any terms of
241 this transaction already reached with Buyer. Unless a written and signed modification is reached, at any time during the Inspection Period, Buyer
242 may notify Seller or Listing Licensee, in writing, of Buyer's unconditional disapproval of the Property based on any inspection report(s), in which
243 case, all earnest money deposits shall be promptly refunded and this Agreement shall be terminated. Buyer shall promptly provide a copy of all
244 reports to Seller only if requested by Seller. **If Buyer fails to provide Seller or Listing Licensee with written unconditional disapproval of any**
245 **inspection report(s) by Midnight of the final day of the Inspection Period, Buyer shall be deemed to have accepted the condition of the**
246 **Property.**
247 ☒ **ALTERNATIVE INSPECTION PROCEDURES:** OREF-058 PROFESSIONAL INSPECTION ADDENDUM OR OTHER INSPECTION
248 **ADDENDUM** _____ is attached to this Agreement.
249 ☐ **BUYER'S WAIVER OF INSPECTION CONTINGENCY:** Buyer represents to Seller and all Licensees and Firms that Buyer is fully satisfied
250 with the condition of the Property and all elements and systems thereof and **knowingly and voluntarily** elects to waive the right to have any
251 inspections performed as a contingency to the Closing of this transaction. Buyer's election to waive the right of inspection is solely Buyer's decision
252 and at Buyer's own risk.

253 **22. LEAD-BASED PAINT CONTINGENCY PERIOD:** If the Property was constructed before 1978, a Lead-Based Paint Disclosure
254 Addendum (hereinafter "the Disclosure Addendum") shall be promptly signed by Buyer, Seller and Listing and Selling Licensees, and
255 become a part of this Agreement. Buyer shall also be provided with a pamphlet entitled "Protect Your Family From Lead in Your Home."

Buyer Initials _____ Date 6/25/11          Seller Initials _____ / _____ Date 6.25.11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
LINES WITH THIS SYMBOL ★ REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
© Oregon Real Estate Forms, LLC **Rev 01/11**          No portion may be reproduced without permission of Oregon Real Estate Forms, LLC          **OREF 005**

Sale Agreement # TS2011-601-1

256 Buyer shall have _____ calendar days (ten [10] unless a greater number is filled in) within which to conduct a lead-based paint assessment
257 or inspection (hereinafter referred to as "the Lead-Based Paint Contingency Period"), which shall commence immediately when Buyer
258 and Seller sign the Disclosure Addendum. Unless the opportunity to conduct a risk assessment or inspection is expressly waived in the
259 Disclosure Addendum, Buyer may, in writing, unconditionally cancel this transaction during the Lead-Based Paint Contingency Period
260 and receive a prompt return of all earnest money deposits. Buyer understands that the failure to give timely written notice of
261 cancellation prior to Midnight on the last day of the Lead-Based Paint Contingency Period shall constitute acceptance of the condition of
262 the Property as it relates to the presence of lead-based paint or lead-based paint hazards.
263 ☐ OREF-021 Lead-Based Paint Disclosure Addendum is attached to this Agreement.

264 **23. ESCROW:** This transaction shall be Closed at **Fidelity National Title**
265 ("Escrow"), a neutral escrow located in the State of Oregon. Costs of Escrow shall be shared equally between Buyer and Seller, unless Buyer is
266 financing through Federal VA, in which case Seller shall pay all Escrow costs.
267 Unless otherwise provided herein, the parties agree as follows: Seller authorizes Listing Firm to order a preliminary title report and owner's title
268 policy at Seller's expense and further authorizes Escrow to pay out of the cash proceeds of sale the expense of furnishing such policy, Seller's
269 recording fees, Seller's Closing costs and any encumbrances on the Property payable by Seller on or before Closing. Buyer shall deposit with
270 Escrow sufficient funds necessary to pay Buyer's recording fees, Buyer's Closing costs, and lender's fees, if any. Real estate fees, commissions or
271 other compensation for professional real estate services provided by Listing and/or Selling Firms shall be paid at Closing in accordance with the
272 listing agreement, buyer service agreement or other written agreement for compensation.

273 **24. CLOSING:** Closing shall occur on a date mutually agreed upon by Buyer and Seller, but in no event later than __September 2,2011__
274 ("the Closing Deadline"). The terms "Closing", "Closed", or "Closing Date" shall mean when the deed or contract is recorded and funds
275 are available to Seller. Buyer and Seller acknowledge that for Closing to occur by the Closing Deadline it may be necessary to execute
276 documents and deposit funds in Escrow prior to that date. *Caveat: Section 8 above requires three (3) days prior to the Closing Deadline*
277 *if Escrow is to prepare a note and a deed of trust or mortgage.*

278 **25. POSSESSION:** Seller shall remove all personal property (including trash and debris) that is not a part of this transaction and deliver
279 possession of the Property to Buyer (*select one*):
280     (1) ☒ by 5:00 p.m. on Closing;
281     (2) ☐ by _____ ☐ a.m. ☐ p.m. _____ days after Closing;
282     (3) ☐ by _____ ☐ a.m. ☐ p.m. on the _____ day of _____ , _____ .
283 If a tenant is currently in possession of the Property (*check one*): ☐ Buyer will accept tenant at Closing; ☐ Seller shall have full responsibility for
284 removal of tenant prior to Closing.

285 **26. SELLER POSSESSION AFTER CLOSING:** In the event that Buyer and Seller have agreed that Seller will deliver possession after Closing,
286 Seller shall pay as consideration $ _____ per day for each day after Closing that Seller is to remain in possession of the Property. Such
287 payment shall be made by Seller through Escrow at the time of Closing and no landlord-tenant relationship shall be created thereby, so long as
288 Seller's possession does not exceed ninety (90) days after the date of Closing.
289 ☐ OREF-054 Agreement to Occupy After Closing or Addendum _____ , is attached to this Agreement.

290 **27. PRORATIONS:** Prorates for tenant rents, irrigation fees, grazing rights fees, leases, current year's taxes, interest on assumed obligations, and
291 other prepaid expenses attributable to the property shall be as of: (*check one*) ☒ the Closing Date; ☐ date Buyer is entitled to possession; or
292 ☐ (*insert date*) _____ . Income from land leases and/or government contracts, such as Conservation Reserve Program (CRP)
293 set-aside, shall be prorated for the current year. Unless otherwise agreed, all subsequent payments from such mentioned contracts made after
294 Closing, shall be paid to Buyer.

295 **28. UTILITIES/FUEL:** Seller shall pay all utility bills accrued to date Buyer is entitled to possession. Buyer shall pay Seller for fuel (e.g., heating
296 oil, gas, diesel, propane, etc.) then on premises, at Seller's supplier's rate on the possession date. Payment for fuel shall be handled between
297 Buyer and Seller (*check one*) ☐ at Closing ☐ outside of Escrow.

298 **29. PROPERTY TO REMAIN INSURED:** Seller shall keep the Property fully insured, including but not limited to casualty and liability insurance
299 for crops currently being fully insured and included in the purchase. Seller to maintain all insurance policies currently in force on any property being
300 purchased until date Buyer is entitled to possession.

301 **30. HOME WARRANTIES:** Home warranty plans may be available to help cover homeowner costs to repair/replace certain home systems and
302 appliances. (See specific plan for details.) Will a plan be purchased for Buyer as a part of this transaction? ☐ Yes ☒ No
303 If yes, identify plan and cost: $ _____ To be paid at Closing by: ☐ Buyer ☐ Seller

304 **31. ESCROW DEPOSIT:** Escrow is hereby instructed by Buyer and Seller as follows: (1) Upon your receipt of a copy of this Agreement marked
305 "rejected" by Seller or upon Listing Firm's written advice that the offer is "rejected" by Seller, you are to refund all earnest money to Buyer. (2) Upon
306 your receipt of a copy of this Agreement signed by Buyer and Seller set up an escrow account and proceed with Closing in accordance with the
307 terms of this Agreement. If you determine that the transaction cannot be Closed for any reason (whether or not there is then a dispute between

Buyer Initials _____ / Date 6/25/11          Seller Initials _SG_ / _____ Date G·25·11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE          **OREF 005**
© Oregon Real Estate Forms, LLC **Rev 01/11**          No portion may be reproduced without permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 6 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



308 Buyer and Seller), subject only to Section 46 below, you are to hold all earnest money deposits until you receive written instructions from Buyer and
309 Seller, or a final ruling from a court or arbitrator, as to disposition of such deposits.

310 **32. EARNEST MONEY PAYMENT/REFUND:** If (1) Seller does not approve this Agreement; or (2) Seller signs and accepts this Agreement but
311 fails to furnish marketable title; or (3) Seller fails to complete this transaction in accordance with this Agreement, or perform any other act as herein
312 provided; or (4) any condition which Buyer has made an express contingency in this Agreement (and has not been otherwise waived) fails through
313 no fault of Buyer, then all earnest money shall be promptly refunded to Buyer. However, acceptance by Buyer of the refund shall not constitute a
314 waiver of other legal remedies available to Buyer. If Seller signs and accepts this Agreement and title is marketable and: (1) Buyer has
315 misrepresented Buyer's financial status; or (2) Buyer's bank does not pay, when presented, any check given as earnest money; or (3) Buyer fails to
316 redeem, when due, any note given as earnest money; or (4) Buyer fails to complete this transaction in accordance with this Agreement, or perform
317 any other act as herein provided, then all earnest money paid or agreed to be paid shall be paid to Seller either as liquidated damages or as
318 otherwise allowed under Oregon law, and this Agreement shall be terminated. **It is the intention of the parties that Seller's sole remedy against**
319 **Buyer for Buyer's failure to Close this transaction shall be limited to the amount of earnest money paid or agreed to be paid herein**

320 **33. BINDING EFFECT/CONSENT:** This Agreement is binding upon the heirs, personal representatives, successors and assigns of Buyer and
321 Seller. However, Buyer's rights under this Agreement or in the Property are not assignable without prior written consent of Seller.

322 **34. SELLER ADVISORY: TAX WITHHOLDING OBLIGATIONS:** Seller is advised that upon Closing, Federal and State law may require
323 Escrow to withhold a portion of Seller's proceeds. Under Federal law, the Foreign Investment in Real Property Tax Act ("FIRPTA") requires every
324 person who purchases real property located within the United States from a "foreign person" to deduct and withhold from Seller's proceeds ten
325 percent (10%) of the gross sales price, with certain exceptions, and to pay the amount withheld to the Internal Revenue Service. A "foreign person"
326 includes a non-resident alien individual, foreign corporation, foreign partnership, foreign trust and foreign estate. Additionally, subject to certain
327 exceptions, Escrow is required to withhold a portion of Seller's proceeds if they are a non-resident individual or corporation as defined under
328 Oregon law. Buyer and Seller agree to execute and deliver, as appropriate, any instrument, affidavit or statement, and to perform any acts
329 reasonable or necessary to carry out the provisions of FIRPTA. If Seller is a foreign person as defined by FIRPTA, or a non-resident individual or
330 corporation as defined under Oregon law, Buyer and Seller instruct Escrow to take all necessary steps to comply therewith.

331 **35. AGRICULTURAL FOREIGN INVESTMENT DISCLOSURE ACT:** Any foreign person who acquires or transfers agricultural land that is
332 situated in the United States must report the transaction within ninety (90) days after the date of acquisition or transfer. In the event this transaction
333 applies to either Buyer or Seller, that party agrees to comply with this Act.

334 **36. APPROVED USES:** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT
335 PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS, THAT, IN FARM OR FOREST
336 ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR
337 FOREST PRACTICES AS DEFINED IN ORS 30.930 IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON
338 TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO
339 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS
340 2009. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD
341 CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING
342 TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN OREF 92.010 OR 215.010, TO VERIFY THE APPROVED
343 USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE
344 RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO
345 11, CHAPTER 424, OREGON LAWS 2007 AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.

346 **37.1 LEVY OF ADDITIONAL PROPERTY TAXES:** The Property *(check one)*: ☒ is ☐ is not specially assessed for property taxes (e.g., farm,
347 forest or other) in a way which may result in levy of additional taxes in the future. If it is specially assessed, Seller represents that the Property is
348 current as to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this
349 transaction, the Property either is disqualified from special use assessment or loses its deferred property tax status, unless otherwise specifically
350 provided in this Agreement, Buyer shall be responsible for and shall pay when due, any deferred and/or additional taxes and interest which may be
351 levied against the Property and shall hold Seller completely harmless therefrom. However, if as a result of Seller's actions prior to Closing, the
352 Property either is disqualified from its entitlement to special use assessment or loses its deferred property tax status, Buyer may, at Buyer's sole
353 option, promptly terminate this transaction and receive a refund of all deposits paid by Buyer in anticipation of Closing; or Close this transaction and
354 hold Seller responsible to pay into Escrow all deferred taxes and/or next subsequent assessment of additional taxes and interest which may be
355 levied or recaptured against the Property and hold Buyer completely harmless therefrom. The preceding shall not be construed to limit Buyer's or
356 Seller's available remedies or damages arising from a breach of this Section 37.1.

357 **37.2 HISTORIC PROPERTY DESIGNATION:** If the Property described in this instrument is subject to special assessment under ORS 358.505,
358 Seller to provide OREF-045 Historic Property Addendum.

Buyer Initials _____ / _____  Date 6/25/11        Seller Initials _____ / _____  Date 6-25-11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE                    **OREF 005**
© Oregon Real Estate Forms, LLC **Rev 01/11**      No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 7 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



Sale Agreement # TS2011-601-1

## DISPUTE RESOLUTION INVOLVING BUYERS AND SELLERS ONLY

359  **38. DISPUTE RESOLUTION BETWEEN BUYER AND SELLER:** Buyer and Seller agree that all claims, controversies and disputes between
360  them, including those for rescission (hereinafter collectively referred to as "Claims"), relating directly or indirectly to this transaction, shall be
361  resolved in accordance with the procedures set forth herein, which shall expressly survive Closing or earlier termination of this Agreement.
362  Provided, however, the following matters shall not constitute Claims: (1) any proceeding to collect, interpret or enforce any mortgage, trust deed,
363  land sale contract or recorded construction lien; or (2) a forcible entry and detainer action (eviction.) The filing in court for the issuance of any
364  provisional process or similar remedy described in the Oregon or Federal Rules of Civil Procedure shall not constitute a waiver of the right or duty
365  to utilize the dispute resolution procedures specified herein.

366  **39. SMALL CLAIMS BETWEEN BUYER AND SELLER:** Notwithstanding the following Sections, Buyer and Seller agree that all Claims that are
367  within the jurisdiction of the Small Claims Court shall be brought and decided there, in lieu of mediation, arbitration or litigation in any other forum.

368  **40. MEDIATION BETWEEN BUYER AND SELLER:** If Buyer or Seller were represented in this transaction by a Licensee whose principal
369  broker is a member of the National Association of REALTORS®, all Claims shall be submitted to mediation in accordance with the procedures of the
370  Home Seller/Home Buyer Dispute Resolution System of the National Association of REALTORS®, or other organization-adopted mediation
371  program (collectively "the System"). Provided, however, if the Licensee's principal broker is not a member of the National Association of
372  REALTORS® or the System is not available through the principal broker's Association of REALTORS®, then all Claims shall be submitted to
373  mediation either through: (1) the special mediation program administered by Arbitration Service of Portland ("ASP"), or (2) any other impartial
374  private mediator(s) or program(s) so long as such services are available in the county where the Property is located, as selected by the party first
375  filing for mediation.

376  **41. ARBITRATION BETWEEN BUYER AND SELLER:** All Claims that have not been resolved by mediation, or otherwise, shall be submitted to
377  final and binding private arbitration in accordance with Oregon laws. Filing for arbitration shall be treated the same as filing in court for purposes of
378  meeting any applicable statutes of limitation or for purposes of filing a lis pendens. Buyer or Seller may file Claims either with ASP or, alternatively,
379  with any other professional arbitration service that has existing rules of arbitration, provided that the selected alternative service also uses
380  arbitrators who are in good standing with the Oregon State Bar, with expertise in real estate law and who can conduct the hearing in the county
381  where the Property is located. The arbitration service in which the Claim is first filed shall handle the case to its conclusion. BY CONSENTING TO
382  THIS PROVISION BUYER AND SELLER ARE AGREEING THAT DISPUTES ARISING UNDER THIS AGREEMENT SHALL BE HEARD AND
383  DECIDED BY ONE OR MORE NEUTRAL ARBITRATORS AND BUYER AND SELLER ARE GIVING UP THE RIGHT TO HAVE THE MATTER
384  TRIED BY A JUDGE OR JURY. THE RIGHT TO APPEAL AN ARBITRATION DECISION IS LIMITED UNDER OREGON LAW.

385  **42. ATTORNEY FEES IN CLAIMS BETWEEN BUYER AND SELLER:** The prevailing party in any suit, action or arbitration (excluding those
386  Claims filed in Small Claims Court) between Buyer and Seller shall be entitled to recovery of all reasonable attorney fees and costs and
387  disbursement as defined in ORCP 68 (including all filing and mediator fees paid in mediation). Provided, however, if a mediation service was
388  available to Buyer or Seller when the Claim arose, the prevailing party shall not be entitled to any award of attorney fees unless it is established to
389  the satisfaction of the arbitrator(s) or judge that the prevailing party offered or agreed in writing to participate in mediation prior to, or promptly upon,
390  the filing in arbitration or court.

## DISPUTE RESOLUTION INVOLVING LICENSEES OR FIRMS

391  **43. SMALL CLAIMS COURT AND ARBITRATION:** All claims, controversies or disputes relating to this transaction, including those for
392  rescission, in which a Licensee or Firm identified in the Final Agency Acknowledgment Section above is named or included as a party, shall be
393  resolved exclusively as follows: (1) If within the jurisdictional limit of Small Claims Court, the matter shall be brought and decided there, in lieu of
394  arbitration or litigation in any other forum. (2) All other claims, controversies or disputes involving such Licensee or Firm shall be resolved through
395  final and binding arbitration using the arbitration selection process described in Section 41 above. Filing for arbitration shall be treated the same as
396  filing in court for purposes of meeting any applicable statutes of limitation or for purposes of filing a lis pendens. This Section 43 shall be in lieu of
397  litigation involving such Licensee or Firm in any other forum. Such Licensee or Firm may voluntarily participate in formal or informal mediation at
398  any time, but shall not be required to do so under this Section 43. This Section 43 shall not apply to those matters in which: (a) The claim,
399  controversy or dispute is exclusively between REALTORS® and is otherwise required to be resolved under the Professional Standards Arbitration
400  provisions of the National Association of REALTORS®; (b) Licensee or Firm has agreed to participate in alternative dispute resolution provision of a
401  prior written listing, service or fee agreement with Buyer or Seller, or (c) Licensee or Firm is the Buyer or Seller in this transaction (in which case,
402  Sections 38-42 shall apply). This Section 43 shall expressly survive Closing or earlier termination of this Agreement. **In the event that one or
403  more Licensees and/or Firms have been named or included in any claims, controversies or disputes that also include Buyer and/or
404  Seller, the alternative dispute resolution and attorney fee provisions of Sections 38-42 above shall continue to apply to Buyer and/or
405  Seller, and this Section 43 shall apply exclusively to Licensees and/or Firms.**

406  **44. RECEIPT FOR EARNEST MONEY:** Selling Firm acknowledges receipt of earnest money from Buyer in the sum of $ 50,000.00
407  evidenced by *(check one)* ☐ CASH ☐ CHECK ☒ PROMISSORY NOTE payable as follows:
408  ☒ ___60___ ☐ business ☒ calendar *(check one)* days after mutual acceptance of this Agreement; or
409  ☐ on or before _____ , _____ ;
410  ☐ Other form of Earnest Money: _____

Buyer Initials _____ Date 6/25/11          Seller Initials _____ / Date 6-25-11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE

OREF 005

© Oregon Real Estate Forms, LLC **Rev 01/11**      No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 8 of 10

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



411 **45. EARNEST MONEY INSTRUCTIONS:** Buyer instructs Selling Firm, and Selling Firm agrees, to handle the earnest money as follows
412 *(check all that apply)*:
413 ☐ Hold any earnest money that is in the form of a check undeposited pending mutual acceptance of this Agreement and all agreed-upon counter
414 offers, after which time deposit it as provided herein within three (3) banking days. ☐ Deposit any earnest money funds redeemed under a
415 promissory note with _____ ☐ Deposit in Selling Firm's client trust account, and thereafter/or
416 ☒ Deposit with Escrow. In the event the earnest money is deposited in Selling Firm's trust account or with Escrow (collectively "the Deposit
417 Holder"), and the Deposit Holder has arranged to have interest on such deposit transferred to a qualified public benefit corporation for distribution to
418 organizations and individuals for first time home-buying assistance and development of affordable housing pursuant to ORS 696.241(6) or ORS
419 696.578(3), all parties acknowledge and agree that any interest accruing on the earnest money so deposited shall be transferred in accordance
420 with this provision. The preceding sentence shall be subject to any other statutes or regulations governing the disposition of earnest money
421 deposits.
422 SELLING LICENSEE AND SELLING FIRM SHALL HAVE NO FURTHER LIABILITY WITH RESPECT TO EARNEST MONEY WHICH THE
423 PARTIES HAVE AUTHORIZED TO BE TRANSFERRED TO A THIRD PARTY.

424 **Agri-Business Real Estate Services**_____    _____ ←
425                             Selling Firm                                                   Selling Licensee Signature

426 Office Address **4675 Deon Lane SE, Salem, OR  97317**    Phone **(503)371-6409**    FAX _____

427 **46. PROPERTY DISCLOSURE/DISCLAIMER LAW:** Buyer and Seller acknowledge that unless this transaction is otherwise exempted,
428 Oregon law provides that Buyer has a right to revoke Buyer's offer by giving Seller written notice thereof (a) within five (5) business days
429 after Seller's delivery of Seller's Property Disclosure Statement ("the Statement"), or (b) at any time before Closing (as defined in the
430 Oregon Administrative Rules) if Buyer does not receive the Statement from Seller before Closing. Buyer may waive the right of
431 revocation only in writing. Seller authorizes the Listing Firm to receive Buyer's notice of revocation, if any, on Seller's behalf.

432 **47. COUNTERPARTS/ DELIVERY:** This Agreement may be signed in multiple counterparts with the same legal effect as if all parties signed the
433 same document. This shall mean that delivery (e.g., transmissions manually, by facsimile, electronic mail, overnight mail, first-class regular or
434 certified mail, etc.) of a **legible** true copy of a signed original of this Agreement, including but not limited to all addenda, counter offers, and legal
435 notices required thereunder, shall be treated the same as delivery of the original document.

436 **48. AGREEMENT TO PURCHASE:** Buyer agrees to purchase the Property upon the terms and conditions set forth in this Agreement.
437 **Buyer acknowledges receipt of a completely filled-in copy of this Agreement which Buyer has fully read and understands. Buyer**
438 **acknowledges that Buyer has not relied upon any oral or written statements made by Seller or any Licensee which are not expressly**
439 **contained in this Agreement. Neither Seller nor any Licensee(s) warrant the square footage of any structure or the size of any land being**
440 **purchased. If square footage or land size is a material consideration, all structures and land should be measured by Buyer prior to**
441 **signing, or should be made an express contingency in this Agreement**
442 Deed or contract shall be prepared in the name of **To be provided prior to the close of escrow** _____ .
443 This offer shall automatically expire on *(insert date)* ____**June 27, 2011**____ at _____ a.m. **5:00** p.m., (the "Offer Deadline"), if not
444 accepted by that time.
445 Buyer may withdraw this offer before the Offer Deadline any time prior to Seller's written acceptance. If Seller accepts this offer after the Offer
446 Deadline, it shall not be binding upon Buyer unless accepted by Buyer in writing within _____ business days (two [2] if not filled in) after the date of
447 Seller's acceptance by so indicating at Section 51 below. This offer may be accepted by Seller only in writing.

448 Buyer _____    Date **6/25   2011   9:** ☐ a.m. ☐ p.m. ←
       *Julian Lafayette*
449 Buyer _____    Date _____ , _____ a.m. p.m. ←

450 Address _____    Zip _____

451 Phone Home _____ Work _____ E-mail _____ Fax _____

---

**NO CHANGES OR ALTERNATIONS ARE PERMITTED TO ANY PORTION OF THE PRE-PRINTED FORMAT OR TEXT OF THIS FORM. ANY
SUCH PROPOSED CHANGES OR ALTERATIONS SHOULD BE MADE ON A SEPARATE DOCUMENT. CHANGES BY SELLER OR LISTING
LICENSEE TO THE TERMS OR PROVISIONS ABOVE BUYER'S SIGNATURE SHOULD ALSO BE ON A SEPARATE DOCUMENT.**

---

452 This offer was submitted to Seller for signature **25ᵗʰ** day of **June 2011** , at **10:00** a.m. _____ p.m.
453 By _____*Terry Silbernagel*_____    (Licensee(s) presenting offer).

┌─────────────────────────────────┐    ┌─────────────────────────────────┐
│ Buyer Initials __ / Date **6/25/11** │    │ Seller Initials __ / Date **6.25.11** │
└─────────────────────────────────┘    └─────────────────────────────────┘

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE                OREF 005
© Oregon Real Estate Forms, LLC **Rev 01/11**    No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 9 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



Sale Agreement # TS2011-601-1

454 **49. AGREEMENT TO SELL / ACKNOWLEDGEMENTS / DISPOSITION OF EARNEST MONEY:** Seller accepts Buyer's offer. Seller
455 acknowledges receipt of a completely filled-in copy of this Agreement, which Seller has fully read and understands. Seller
456 acknowledges that Seller has not relied upon any oral or written statements of Buyer or of any Licensee(s) which are not expressly
457 contained in this Agreement. Seller instructs that all earnest money distributable to Seller pursuant to Section 31 above, shall be
458 disbursed as follows after deduction of any title insurance and Escrow cancellation charges: *(check one)* ☐ First to Listing Firm to the
459 extent of the agreed commission just as if the transaction had been Closed, with residue to Seller, or ☐ _____ .

460 Seller _____ Date _____ , ____ __ a.m. __ p.m.←

461 Seller _____ Date 6.25.11 , 10 a.m. __ p.m.←
462    Olsen Agricultural Enterprises LLC
463 Address _____ Zip _____
Phone Home _____ Work _____ E-mail _____ Fax _____

464 **50. REJECTION/COUNTER OFFER:** *SELECT ONE:* ☐ Seller does not accept the above offer, but makes the attached counter offer.
465 ☐ Seller rejects Buyer's offer.

466 Seller _____ Date _____ , ____ __ a.m. __ p.m.←

467 Seller _____ Date _____ , ____ __ a.m. __ p.m.←
468    Olsen Agricultural Enterprises LLC
469 Address _____ Zip _____
Phone Home _____ Work _____ E-mail _____ Fax _____

470 **51. BUYER'S ACKNOWLEDGMENT:** Buyer acknowledges receipt of a copy of Seller's written response to this Agreement. If Seller's response
471 is an acceptance of Buyer's offer that occurred after the Offer Deadline identified at Section 48 above, Buyer *(select only one)* ☐ agrees ☐ does
472 not agree, to be bound thereby. **(The failure to check either box shall constitute rejection of Seller's acceptance after the Offer Deadline.)**

473 Buyer _____ Date 6/25/ 2011 1?:00 a.m. __ p.m.←
474    Julian Lafayette
Buyer _____ Date _____ , ____ __ a.m. __ p.m.←

475 **52. FIRMS/LICENSEES:**
476 Selling Licensee **Terry Silbernagel**    Selling Firm **Agri-Business Real Estate Services**
477 Selling Firm Office Address **4675 Deon Lane SE, Salem, OR  97317**
478 Phone **(503)371-6409** FAX _____ Selling Firm Principal Broker Initials/Date _____ / ___
479 Listing Licensee **Terry Silbernagel**    Listing Firm **Agri-Business Real Estate Services**
480 Listing Firm Office Address _____
481 Phone _____ FAX _____ Listing Firm Principal Broker Initials/Date _____ / ___

Buyer Initials ____ / ____ Date 6/25/11      Seller Initials ____ / ____ Date 6.25.11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE     **OREF 005**
© Oregon Real Estate Forms, LLC **Rev 01/11**    No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
FARMS, RANCHES, ACREAGE & NATURAL RESOURCE PROPERTY REAL ESTATE SALE AGREEMENT - Page 10 of 10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



## ADDENDUM TO REAL ESTATE SALE AGREEMENT

1   This is an Addendum to:   ☒ Real Estate Sale Agreement      ☐ Seller's Counter Offer      ☐ Buyer's Counter Offer
2   Re: Real Estate Sale Agreement No. <u>TS2011-601-1</u>   Dated   <u>June 20, 2011</u>   Addendum No. <u>One The buyer s</u>
3   Buyer: <u>Julian Lafayette</u>
4   Seller: <u>Olsen Agricultural Enterprises LLC</u>

5   The real property described as: <u>34645 Lake Creek Dr. , Brownsville, OR  97361</u>

6   **SELLER AND BUYER HEREBY AGREE THE FOLLOWING SHALL BE A PART OF THE REAL ESTATE SALE AGREEMENT REFERENCED**
7   **ABOVE.**

8   _____
9   This  offer does hereby terminate and  replace the offer # TS2011-601.
10  The seller to provide the buyer with a State of Oregon Approved affidavit of water usage showing
11  the beneficial use of the irrigation rights within the last five years.
12  The buyer shall a period of 60 calendar days from mutual acceptance to complete their due
13  diligence, including but not limited to: well flow tests, water quality tests, verification of
14  water rights, level environmental survey, personal inspection of all improvements and
15  professional inspections of the improvements if they feel it is necessary.
16   The seller is retaining approximately 20 acres on the eastern boundary of tax lot 2600. The
17  buyer shall be granted access easement over this parcel 40' wide and this easement shall self
18  extinguish at the time a public right of way is established. In addition to this esaement the
19  buyer shall have the right to use all existing easements currently of benefit to the property.
20  Seller to transfer all water rights currently held for the property to the buyer at the time of
21  closing.
22  _____
23  _____
24  _____
25  _____
26  _____

27  Buyer Signature _____   Date 6/25  2011   9 a.m. ___ p.m. ←
                    Julian Lafayette
28  Buyer Signature _____   Date _____ , _____ a.m. ___ p.m. ←

29  Seller Signature _____   Date 6-25 , 2011   10 a.m. ___ p.m. ←
                    Olsen Agricultural Enterprises LLC
30  Seller Signature _____   Date _____ , _____ a.m. ___ p.m. ←

31  Selling Licensee <u>Terry Silbernagel</u>          Listing Licensee <u>Terry Silbernagel</u>

32  Selling Firm Broker's Initials/Date _____ / _____   Listing Firm Broker's Initials/Date _____ / _____

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

© Oregon Real Estate Forms, LLC   **Rev 01/09**
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

OREF 002

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Page ____ of ____ Pages



# ADDENDUM TO REAL ESTATE SALE AGREEMENT

1   This is an Addendum to:    ☒ Real Estate Sale Agreement        ☐ Seller's Counter Offer        ☐ Buyer's Counter Offer
2   Re: Real Estate Sale Agreement No. <u>TS2001-601-1</u>    Dated <u>June 20, 2011</u>    Addendum No. <u>ONE page two</u>
3   Buyer: <u>Julian Lafayette</u>
4   Seller: <u>Olsen Agricultural Enterprises LLC</u>
5   The real property described as: <u>34645 Lake Creek Dr. , Brownsville, OR  97361</u>
6   SELLER AND BUYER HEREBY AGREE THE FOLLOWING SHALL BE A PART OF THE REAL ESTATE SALE AGREEMENT REFERENCED
7   ABOVE.

8   Buyer to have the right to farm the parcel,approximately 20 acres, being retained by the seller
9   for a price of $1,000. per year. This lease shall remain in effect until the seller proceeds
10  with the development of the property. The seller/landlord shall give notice to the buyer/tenant
11  when development will be commencing. If this notice comes after October 1 then the buyer shall
12  have the right to harvest one final crop.
13  The seller to be responsible for the buyer's closing costs exclusive of the buyer's loan costs.

27  Buyer Signature _Julian Lafayette_    Date 6/25 2011  9 a.m. ___ p.m. ←
28  Buyer Signature ___    Date ___ , ___ a.m. ___ p.m. ←
29  Seller Signature _Olsen Agricultural Enterprises LLC_    Date 6.25.2011 10 a.m. ___ p.m. ←
30  Seller Signature ___    Date ___ , ___ a.m. ___ p.m. ←
31  Selling Licensee <u>Terry Silbernagel</u>    Listing Licensee <u>Terry Silbernagel</u>
32  Selling Firm Broker's Initials/Date ___ / ___    Listing Firm Broker's Initials/Date ___ / ___

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
© Oregon Real Estate Forms, LLC   Rev 01/09
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC    OREF 002
Page ___ of ___ Pages
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com




## ADDENDUM TO REAL ESTATE SALE AGREEMENT

1  This is an Addendum to:    ☒ Real Estate Sale Agreement        ☐ Seller's Counter Offer        ☐ Buyer's Counter Offer

2  Re: Real Estate Sale Agreement No. TS2011-601-1 _____ Dated _____ June 25, 2011 _____ Addendum No. Two

3  Buyer: Julian Lafayette

4  Seller: Olsen Agricultural Enterprises LLC

5  The real property described as: 34645 Lake Creek Dr. , Brownsville, OR  97361

6  SELLER AND BUYER HEREBY AGREE THE FOLLOWING SHALL BE A PART OF THE REAL ESTATE SALE AGREEMENT REFERENCED
7  ABOVE.

8  The buyer and the seller agree that the property being sold is described as follows:

9  1. A parcel approximately 253.66 acres which is identified at Map 14S, Range 3W, Section 1, tax
10  lot 2600, which is approximately 274.04 acres in total but excludes 20.38 acres within the City
11  of Brownsville.

12  2. A parcel approximately 21.74 acres in size which is identified at Map 14S, Range 3W, Section
13  1, tax lot 2200.

14  3. A parcel approximately 98.18 acres in size which is identified at Map 14S, Range 3W, Section
15  1, tax lot 1100.

16  Together, the acreage is approximately 373.58 acres, more or less.

17
18
19
20
21
22
23
24
25
26

27  Buyer Signature _____  Date 6/29/11 , 9:30 _____ a.m. _____ p.m. ←
    Julian Lafayette

28  Buyer Signature _____  Date _____ , _____ a.m. _____ p.m. ←

29  Seller Signature _____  Date 6/29/11 , 9:30 _____ a.m. _____ p.m. ←
    Olsen Agricultural Enterprises

30  Seller Signature _____  Date _____ , _____ a.m. _____ p.m. ←

31  Selling Licensee Terry Silbernagel _____  Listing Licensee Terry Silbernagel _____

32  Selling Firm Broker's Initials/Date TS , 6/29/11  Listing Firm Broker's Initials/Date TS. , 6/29/11

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC
© Oregon Real Estate Forms, LLC    Rev 01/09
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC                    OREF 002

Page _____ of _____ Pages

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zip.ogix.com



| | Sale Agreement # TS2011-601-1 |
| --- | --- |
| | Addendum _____ |

## PROMISSORY NOTE FOR EARNEST MONEY

1  Buyer(s) __Julian Lafayette__
2  Seller(s) __, Olsen Agricultural Enterprises__ *LLC*
3  Property Address __34645 Lake Creek Dr. , Brownsville, OR  97361__

4  Buyer(s): __Julian Lafayette__
5  jointly and severally promise to pay to **(select only one payee)**:

6  ☐ Real Estate Firm: _____
7  ☒ Seller(s): __, Olsen Agricultural Enterprises__ *LLC*
8  the sum of $ __50,000.00__

9  1)  Upon redemption of this promissory note, funds shall be made payable to *(select only one)*:

10  ☐ Real Estate Firm Trust Account: _____
11  ☐ Seller(s): _____
12  ☒ Escrow / Title Company: __Fidelity National Title__

13  2)  This Note is due and payable **(select only one due date)**:

14  ☒ ____60____  ☐ business ☒ calendar *(Select one)* days after mutual acceptance of the Real Estate Sale Agreement;
15  ☐ on or before _____ .

16  3)  If this Note is not paid when due, Buyer(s) shall pay interest at the rate of ten percent (10%) per annum on the unpaid balance from the
17     due date until it is paid in full. **BUYER(S) UNDERSTAND(S) THAT TIME IS OF THE ESSENCE, AND THAT THE FAILURE TO PAY**
18     **THIS NOTE WHEN DUE, MAY CONSTITUTE A DEFAULT UNDER THE REAL ESTATE SALE AGREEMENT WITH SELLER.**

19  4)  If Real Estate Firm is named as the payee of this Note, and Note is not paid when due, Buyer(s) hereby consent(s) to Real Estate Firm
20     assigning and transferring it to Seller(s) for all purposes including collection.

21  5)  This Note is hereby incorporated into and made a part of the Real Estate Sale Agreement between Seller(s) and Buyer(s). In the event of
22     any dispute between said parties, the mediation, arbitration and attorney fee provisions therein shall expressly apply.

23  6)  If payment is not made on or before the due date, Buyer(s) understand that Principal Broker is instructed by Seller(s) to promptly assign
24     and transfer this Note to Seller(s), without recourse, and for all purposes, including collection. It is expressly understood and agreed that
25     neither Principal Broker nor Principal Broker's Firm, its owners, officers or directors, licensees, employees or representatives shall have
26     any duty (fiduciary or otherwise), responsibility or liability to Seller(s) to enforce collection of the Note, nor for any fees or costs associated
27     therewith.

28  Buyer _____ Date 6/25/11 ← Seller _____ Date _____ ←
         __Julian Lafayette__
29  Buyer _____ Date _____ ← Seller _____ Date 6·25·11 ←
                                                      __Olsen Agricultural Enterprises__ *LLC*

30  Selling Licensee __Terry Silbernagel__        Listing Licensee __Terry Silbernagel__
31  Selling Firm __Agri-Business Real Estate Services__    Listing Firm __Agri-Business Real Estate Services__

This form has been licensed for use by Terry Silbernagel solely in accordance with the Terms of Service per Oregon Real Estate Forms, LLC

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE
© Oregon Real Estate Forms, LLC  **Rev 01/10**
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

| Principal Broker's Initials _____ |
| --- |
| Date _____ |

OREF 060

Exhibit B – Legal Description of Property

# PRELIMINARY REPORT

(Continued)

Order No.: FT110030770-FTMWV01

# EXHIBIT "ONE"

Parcel 1:

Beginning at the Southeast corner of the Donation Land Claim of John McKinney and wife, in Section 12, Township 14 South, Range 3 West of the Willamette Meridian, Linn County, Oregon, the same being Notification No. 2135 and Claim No. 38 in said Township and Range; thence West 40 chains, thence North 25 chains, thence East 40 chains, thence South 25 chains to the place of beginning.

EXCEPTING THEREFROM, any portion of the above described premises lying within the limits of Linn County Road No. 508, (aka Lake Creek Drive).

Parcel 2:

Tract A:

Beginning at an iron bolt which  is on the West line of and North 53.00 chains distant from the Southwest corner of the Donation Land Claim of Alexander Kirk, being Notification No. 2136, and Claim No. 37 in Township 14 South, Range 3 West of the Willamette Meridian, Linn County, Oregon; thence East and parallel with the South line of said Claim 1979.62 feet to a 1 inch pipe; thence North 0 ° 16' West 801.15 feet to a 1/2 inch iron rod; thence South 85 ° 29' West 53.15 feet to a 1/2 inch iron rod; thence North 0 ° 29' East 213.10 feet to a 1/2 inch iron rod; thence North 9`° 4' East 133.4 feet to a 1 inch pin set at the Southwest corner of that certain tract as described in Volume 164, Page 633, Deed Records of Linn County, Oregon; thence North 2 ° 38' East 116.88 feet to a 1 1/4 inch pipe; thence North 89 ° 09' West 1258.30 feet to a point which is the Northeast corner of that certain tract as described Volume 225, Page 748, Deed Records of Linn County, Oregon; thence South 0 ° 05' West 387.41 feet to the Southeast corner of the above described tract; thence North 89 ° 09' West 698.22 feet to the East line of the John McKinney Donation Land Claim No. 38 of said Township and Range; thence South 87 ° 58' West 506.45 feet to a 5/8 inch bolt; thence South 81 ° 02' West 326.28 feet to a 1/2 inch rod; thence North 81 ° 09' West 118.90 feet to a 1/2 inch rod; thence South 86 ° 05' West 103.50 feet to a 1/2 inch bolt; thence South 48 ° 48' West 87.32 feet to a 1/2 inch bolt; thence South 77 ° 49' West 309.62 feet to a 1/2 inch bolt; thence South 89 ° 50' West 65.94 feet to a 1 inch rod on the Easterly right of way line of the Southern Pacific Railroad; thence South 33° 0' West along said right of way to a 1/2 inch pipe on the West line of said Claim No. 38; thence South 23.07 chains to an iron pipe which is North 25.00 chains distance from the Southwest corner of the East half of said Claim No. 38; thence East parallel with the South line of said claim, 40.00 chains to a stone 4 x 8 x 14 inches marked CS on the East line of said Claim No. 38; thence North 37.87 chains to the point of beginning.

Together with an easement for joint use of a roadway 20 feet in width as created by instrument recorded October 27, 1982 in Volume 322, Page 495, Microfilm Records of Linn County, Oregon.

Tract B:

Beginning at a point 41.575 chains North of the Southwest corner of the Donation Land Claim of Alexander Kirk and wife, Notification No. 2136, Claim No. 37, in Township 14 South, Range 3 West of the Willamette Meridian in Linn County, Oregon, and running thence North 11.425 chains; thence East 39.54 chains, to a point 30 feet West of the East boundary line of said Claim; thence south 1 rod; thence East 30 feet to the East boundary line of said Claim; thence South 1.965 chains; thence West 21.72 chains, to a point 18.28 chains East and 9.21 chains North

# PRELIMINARY REPORT
(Continued)

Order No.:  FT110030770-FTMWV01

of the place of beginning; thence South 9.21 chains; thence West 18.25 chains to the place of beginning.

Excepting therefrom, any portion of the above described premises lying within the limits of Linn County Road No. 770.

Together with a right of way over a strip of land described as follows:  Beginning at the Southwest corner of Tract II above described and being 41.575 chains North of the Southwest corner of said Donation Land Claim and running from thence East 18.28 chains; thence North 10.00 feet; thence East 21.72 chains to the East boundary of said claim; thence South 20.00 feet; thence West 40.0 chains to the West boundary of said Claim; thence North 10.00 feet to the place of beginning.

Tract C:

Beginning at a point 41.575 chains North and 18.28 chains East to the Southwest corner of the Donation Land Claim of Alexander Kirk and wife, Notification No. 2136, Claim No. 37 in Township 14 South, Range 3 West of the Willamette Meridian in Linn County, Oregon, and running from thence North 9.21 chains; thence East 21.72 chains to the East boundary of said Donation Land Claim; thence South along the East boundary of said Donation Land Claim, 9.21 chains; thence West 21.72 chains to the point of beginning, in Linn County, Oregon.

Excepting therefrom, any portion of the above described premises lying within the limits of Linn County Road No. 770.

Parcel 3:

Tract A:

Beginning at a point on the West boundary line of the Donation Land Claim of Alexander Kirk and wife, being Notification No. 2136 and Claim No. 37, in Township 14 South, Range 3 West of the Willamette Meridian, Linn County, Oregon, 27.50 chains North of the Southwest corner of said Claim, and running thence North 14.075 chains; thence East 480 feet; thence South 14.075 chains; the West 480 feet to the point of beginning, Linn County, Oregon.

Tract B:

Beginning at a point 41.575 chains North and 480 feet East of the Southwest corner of the Donation Land Claim of Alexander Kirk and wife, Notification No. 2136, and Claim No. 37 in Township 14 South, Range 3 West of the Willamette Meridian, Linn County, Oregon; and running from thence East 540 feet; thence South 14.075 chains; thence Wet 540 feet; thence North 14.075 chains to the place of beginning.

FDOR0212.rdw

1

<u>Certificate of Service</u>

2

3        I hereby certify that on June 30, 2011, I caused a copy of the Debtor's Motion for

4    Authorization to Sell Real Property Outside the Ordinary Course of Business Free and Clear of

5    Liens (Koos Brownsville Farm), and the Notice of Intent to Sell Real or Personal Property,

6    Compensate Real Estate Broker, and/or Pay any Secured Creditors' Fees and Costs; Motion for

7    Authority to Sell Property Free and Clear of Liens; and Notice of Hearing (which is being filed

8    simultaneously with the foregoing Motion) to be served on the parties indicated as "Non-ECF"

9    on the attached List of Interested Parties by the methods indicated.  Unless another method of

10   service is indicated, service was made by placing a copy thereof in a sealed, first-class postage

11   prepaid envelope, addressed to each party's last known address and depositing the same into the

12   United States mail at Portland, Oregon on the date set forth below.  The parties indicated as

13   "ECF" on the Court's  records were served through the ECF System by electronic notice.

        Dated: June 30, 2011.

14

15                                      Greene & Markley, P.C.

16                                      By /s/ Sanford R. Landress
                                          Sanford R. Landress, OSB #814382
17                                        Attorneys for Debtor

18

19

20

21

22

23

24

25

26

Page 1 of 1 -    CERTIFICATE OF SERVICE                      \6522\COS motion for sale delete.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  <u>List of Interested Parties</u>

2  (Olsen Agricultural Enterprises LLC)

3  <u>NON-ECF</u>

4  <u>11-62723-fra11 Notice will not be electronically mailed via ECF to:</u>

5  <u>Unsecured Creditors Committee:</u>

6  Kevin Chambers
   Chairperson
7  Oregon Vineyard Supply Co.
   2700 St. Joseph Rd.
8  McMinnville, OR 97128

9  Howard Pope
   ORCO, Inc.
10 12680 SW Pacific Hwy
   Monmouth, OR 97361
11
   John Ralston
12 HSR Architecture LLC
   838 NW Bond St., Ste. 2
13 Bend, OR 97701

14 <u>Parties Requesting Notice:</u>

15 Mary Ann Kilgore
   Union Pacific Railroad Company
16 1400 Douglas Street, STOP 1580
   Omaha, Nebraska  68179
17
   Shawn Lanka
18 Union Pacific Railroad Company
   1400 Douglas Street, STOP 1580
19 Omaha, Nebraska  68179

20 <u>Other Parties:</u>

21 BFS International, LLC
   c/o David E. Grein, Esq.
22 Registered Agent
   1030 SW Morrison St.
23 Portland, OR 97205

24 Tim Miller
   BFS International, LLC
25 3835 NE Hancock St. Ste. 203
   Portland, OR 97212
26

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**